CADES SCHUTTE
A Limited Liability Law Partnership

CALVERT G. CHIPCHASE     7757
LISA K. SWARTZFAGER       10867
1000 Bishop Street, Suite 1200
Honolulu, Hawaiʻi 96813-4212
Telephone: (808) 521-9200
Email: cchipchase@cades.com
        lswartzfager@cades.com
Attorneys for Plaintiffs
HELICOPTER ASSOCIATION
INTERNATIONAL and SAFARI
AVIATION, INC. d/b/a SAFARI
HELICOPTERS HAWAIʻI

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| HELICOPTER ASSOCIATION INTERNATIONAL, SAFARI AVIATION, INC. d/b/a SAFARI HELICOPTERS HAWAIʻI<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF HAWAIʻI; DEPARTMENT OF TRANSPORTATION, STATE OF HAWAIʻI; and EDWIN SNIFFEN, in his official capacity as Director of the Hawaiʻi Department of Transportation,<br><br>Defendants. | Civil No. 1:23-cv-00083<br><br>**COMPLAINT**<br><br>**EXHIBITS 1 - 3**<br><br>**DEMAND FOR JURY TRIAL** |

# EXHIBIT 1

## COMPLAINT

Plaintiffs Helicopter Association International and Safari Aviation, Inc., dba Safari Helicopters Hawaiʻi (together, "**Plaintiffs**"), allege for their claims for relief against Defendants State of Hawaiʻi; Department of Transportation, State of Hawaiʻi; and Edwin Sniffen, in his official capacity as Director of the Hawaiʻi Department of Transportation (collectively, "**Defendants**") as follows:

## Nature of the Case

1.     Plaintiffs bring this action for declaratory and injunctive relief challenging the monthly reporting requirement imposed in the amendments to Hawaiʻi Revised Statutes ("**HRS**") Chapter 261 set forth in Senate Bill ("**S.B.**") 3272 (codified as Session Act 311). *See* Ex. 1 (S.B. 3272), which is incorporated by reference.

2.     S.B. 3272 amends HRS Chapter 261 in the following two ways:

(1) By establishing an air noise and safety task force, which would be empowered to make recommendations but not to adopt any new requirements; and

(2) By adding to the list of regulations that the  Hawaiʻi Department of Transportation must adopt (specifically at Section 261-12(b)(8)) a requirement that each tour aircraft operator submit monthly reports detailing its operations during the prior month, including: (A) the date and time that the aircraft took off and landed; (B) the number of individuals aboard

the aircraft during the operation; (C) the flight path from takeoff through landing; and (D) a disclosure if the aircraft deviated from its intended flight plan. (Hereafter, the "**monthly reporting requirements**").

3.    The preamble to S.B. 3272 asserts that "the State has the option not to renew a tour aircraft operation permit for any company that repeatedly deviates from flight plans over sensitive areas."

4.    The monthly reporting requirements violate the Supremacy Clause of the United States Constitution, Article VI, clause 2, in four ways, any one of which is sufficient to render the amendments invalid.

5.    First, the monthly reporting requirements impermissibly legislate in a field that is preempted by Federal law, including the Federal Aviation Act, 49 U.S.C. § 40101 *et seq.*, as amended (the "**Federal Aviation Act**"), and the regulations promulgated thereunder. *See also* 49 U.S.C. § 106.

6.    Second, the monthly reporting requirements are preempted because they conflict with Federal law, including the Federal Aviation Act and the regulations promulgated thereunder. 49 U.S.C. § 106.

7.    Third, the monthly reporting requirements are expressly and impliedly preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1) ("**ADA**").

8.     Fourth, the monthly reporting requirements are expressly and impliedly preempted by the Aircraft Noise and Capacity Act of 1990, 49 U.S.C. § 47521, *et seq.* ("**ANCA**").

9.     Independent of the Supremacy Clause, the monthly reporting requirements are void because they violate the stipulated agreement in a 1990 lawsuit brought by a number of operators, including Plaintiff Safari Aviation, Inc., dba Safari Helicopters Hawai'i ("**Safari**"), against, *inter alia*, Defendants State of Hawai'i and Hawai'i Department of Transportation.

10.   In the stipulated agreement, the defendants agreed that Chapter 261 "will not be applied in any manner that is inconsistent with, or contrary to, the Federal Aviation Act of 1958, as amended, together with the Federal Aviation Regulations Promulgated thereunder." Ex. 2 (Stipulation for Dismissal) at 2 (hereafter, the "**1994 Stipulation**").

11.   The monthly reporting requirements are inconsistent with and contrary to the Federal Aviation Act of 1958, as amended (now recodified), and its associated regulations, and therefore, Defendants State of Hawai'i and Hawai'i Department of Transportation have violated the 1994 Stipulation.

12.   Plaintiffs seek to enforce the 1994 Stipulation and protect their right to operate air tours in national airspace under federal regulation.

13.   Plaintiffs seek (1) a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 holding that Federal law preempts the monthly reporting requirements, (2) a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 holding that the monthly reporting requirements violate the 1994 Stipulation, and (3) a permanent injunction barring enforcement of the monthly reporting requirements.

## The Parties

14.   Plaintiff Helicopter Association International ("**HAI**") is a Delaware corporation located in Alexandria, Virginia. HAI is a non-profit membership organization and trade association that represents and serves the interests of helicopter operators around the world. Its members include companies that operate helicopter air-tours in the State of Hawai'i who will be harmed by the monthly reporting requirements. Neither the maintenance of the claims asserted nor the relief requested in this action require direct participation from HAI's members.

15.   Plaintiff Safari is a Hawai'i corporation with its principal place of business within the District of Hawai'i. Safari operates air-tours in the

State of Hawaiʻi and will be harmed by the monthly reporting requirements. Safari is a member of HAI.

16. Defendant State of Hawaiʻi (the "**State**") is a state of the United States.

17. Defendant Hawaiʻi Department of Transportation ("**HDOT**") is an agency of the State of Hawaiʻi.

18. Defendant Edwin Sniffen is sued in his official capacity as Director of HDOT. The HDOT also oversees the Airports Division, which operates the airports in the State.

## Jurisdiction and Venue

19. This Court has original jurisdiction over the subject matter of this action pursuant to (1) 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under laws of the United States; (2) because this suit seeks redress for the deprivation, under color of state law, for rights secured by the United States Constitution; (3) because of the Court's inherent jurisdiction to grant equitable relief for violations of the United States Constitution; and (4) because of the Court's ongoing jurisdiction to enforce the 1994 Stipulation. Even if the Court did not have ongoing jurisdiction to enforce the 1994 Stipulation, which it does,

the Court would have supplemental jurisdiction to enforce the 1994 stipulation pursuant to 28 U.S.C. § 1367(a).

20.   The Court has personal jurisdiction over Defendants because they are domiciled in, reside in or are located in the State and because their denial of Plaintiffs' rights under the United States Constitution and the laws of the United States occurred within the State. The injuries caused by each Defendant occurred in the State.

### Despite the Admitted Legal Issues with S.B. 3272, the Governor Signed It into Law.

21.   On July 12, 2022, Governor Ige signed S.B. 3272 (codified as Session Act 311) amending Hawai'i Revised Statutes Chapter 261.

22.   Governor Ige initially included it on his intent-to-veto list and explained:

> **Because of federal preemption, the Department of Transportation has no authority to impose or enforce regulations regarding air space and aircraft operations under the jurisdiction of the Federal Aviation Administration**. Therefore, the actions of the Department of Transportation can take based on the additional reports and disclosures will be limited and unlikely to produce the bill's desired results.

*See* Gov. Msg. No. 1216 (emphasis added).

23.    HDOT has no authority to impose or enforce regulations for the monthly reporting requirements due to federal preemption or to impose fines or refuse to renew a State permit supposedly necessary for their operation.

24.    S.B. 3272 adds the monthly reporting requirements to the list of regulations that the Hawai'i Department of Transportation must adopt (specifically at Section 261-12(b)(8)).

25.    Any regulation that HDOT could adopt to implement the reporting requirements of S.B. 3272 would be invalid because the reporting requirements are invalid.

## Air Tours in Hawai'i Operate Under a Federal Regulatory Scheme.

26.    Various federal statutes and associated regulations govern national airspace and aviation, which fall under the purview of the Federal Aviation Administration (the "**FAA**").

27.    In conjunction with 14 C.F.R. Part 136 ("**Part 136**"), Appendix A "Special Operating Rules for Air Tour Operators in the State of Hawaii," air tour operators in the State operate under one or two regulations:

(a) 14 C.F.R. Part 135 ("**Part 135**") with the associated Operations Specifications (B048 - Air Tour Operations Below 1,500 Feet AGL in the State of Hawaii); and/or

- 7 -

(b) 14 C.F.R. Part 91 ("**Part 91**") with an associated Letter of Authorization.

28. Upon information and belief all or nearly all such operators in Hawaiʻi have Part 135 authority and actually conduct air tours as Part 135 operations.

29. Part 135 is a comprehensive regulatory scheme for on-demand charter operations that also includes various reporting requirements, including, for example, of certain emergency situations (§ 135.19(c)), flight and mechanical irregularities (§ 135.23(f), § 135.65), and hazardous material incidents (§ 135.23(p)(2)).

30. Additionally, the FAA requires air tour operators in Hawaiʻi to abide by the Hawaii Air Tour Common Procedures Manual, FAA Document Number: AWP13-136A, *available at* https://www.faa.gov/about/office_org/field_offices/fsdo/hnl/local_more/media/hawaii_air_tour_common_proc.pdf (the "**FAA Hawaiʻi Air Tour Manual**"), which is a detailed 169-page document.

31. The FAA Hawaiʻi Air Tour Manual provides, "Each person who deviates from the regulations and/or requirements set forth in this manual shall contact the Principal Operations inspector or Flight

Standards District Officer Manager within 10 days of such deviation and if so requested, file a written report." *Id.* at p. 12.

### The Monthly Reporting Requirements Burden and Harm Air Tour Operators in Hawai'i.

32.   The monthly reporting requirements are burdensome and harmful to Safari and other HAI members who operate air tours in Hawai'i.

33.   State officials have expressed their intent to enforce the monthly reporting requirements even though implementing regulations have not yet been promulgated.

34.   The state intends to enforce the monthly reporting requirements.

35.   The state intends to adopt regulations implementing the reporting requirements.

36.   Safari and many of HAI members who operate air tours in Hawai'i operate multiple flights a day, seven days a week.

37.   Thus, operators will have to dedicate substantial time and resources to reporting data on flights every month that they currently are not required to collect and compile.

38.    The monthly reporting requirements will also require more work from pilots, who will need to record flight plans and "deviations" from those plans.

39.    In addition, the monthly reporting requirements could disincentivize putting safety first. Pilots need to be able to make decisions based on weather and other issues. Requiring an intended flight plan and reporting for any deviations therefrom could disincentivize pilots from following the flight path with the least risk based on existing conditions in the air.

## The Monthly Reporting Requirements Are Void Due to Field Preemption.

40.    Under the field preemption doctrine, "[s]tates are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance. . . . The intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it' or where there is a 'federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *See Arizona v. United*

*States*, 567 U.S. 387, 399 (2012) (*quoting Rice v. Santa Fe Elevator Corp.*,
331 U.S. 218, 230 (1947)).

41.    The FAA has exclusive authority to regulate how aircraft operate
and all other matters related to aviation safety and efficiency.

42.    As Justice Robert Jackson explained in his concurring opinion in
*Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292 (1944):

> **Congress has recognized the national responsibility for
> regulating air commerce. Federal control is intensive, and
> exclusive**. Planes do not wander about in the sky like vagrant
> clouds. They move only by federal permission, subject to federal
> inspection, in the hands of federally certified personnel and under
> an intricate system of federal commands. The moment a ship taxies
> onto a runway, it is caught up in an elaborate and detailed system
> of controls. It takes off only by instruction from the control tower, it
> travels on prescribed beams, it may be diverted from its intended
> landing, and it obeys signals and orders. Its privileges, rights, and
> protection, so far as transit is concerned, it owes to the Federal
> Government alone, and not to any state government.

322 U.S. at 303 (Emphasis added).

43.    Field preemption applies even if a state law requirement is
intended to parallel an FAA requirement. *See Air Evac EMS, Inc. v.
Robinson*, 486 F.Supp.2d 713, 724 (M.D. Tenn. 2007) ("[W]hile the
defendants maintain that their regulations merely supplement federal
enactments . . . such is irrelevant to a finding of field preemption. . . .
Accordingly, because Congress has preempted the field of aviation safety,

the Board's rules pertaining to the plaintiff's avionics equipment are invalid."); *Int'l Aerobatics Club Chapter 1 v. City of Morris*, 76 F. Supp. 3d 767, 783 (N.D. Ill. 2014) ("[E]xclusive enforcement is an indispensable component of [the FAA's] plenary authority. To the extent that the Ordinance . . . falls within the FAA's existing regulations . . . and to the extent it purports to empower municipal officials not employed by the FAA to enforce FAA standards, the . . . Ordinance and regulations are preempted by federal law and are not enforceable."); *see also Ventress v. Japan Airlines*, 747 F.3d 716, 722 (9th Cir. 2014) (field preemption encompasses "indirect challenges to aviation safety decisions under guise of state law").

44.    Notably, since the first territorial aviation law was adopted in 1947, the State has recognized federal supremacy. *See* Section 4915.02 (Session Act 32, 1947) (providing "nothing in this Act shall be construed as authorizing or empowering the commission to exercise any power or perform any function in such cases where the Civil Aeronautics Board, the Civil Aeronautics Administration or other department or agency of the federal government has such authority or power").

45.   A recent Ninth Circuit case that supports this conclusion is

*Bernstein v. Virgin America, Inc.*, 3 F.4th 1127 (9th Cir. 2021):

> [O]ur case law makes clear that field preemption generally applies
> to state regulations specifically in the field of *aviation safety.* In
> *Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007), we
> held that Congress intended to occupy the field of "aviation safety."
> This was based on the dominance of federal interests in regulation
> of the country's airspace, the passage of the FAA "in response to a
> series of fatal air crashes between civil and military aircraft
> operating under separate flight rules," and delegation of "full
> responsibility and authority for the . . . promulgation and
> enforcement of safety regulations" to the agency. *Id.* at 471–72
> (alteration in original). We noted that the FAA also directed the
> Administrator "to regulate any 'other practices, methods, and
> procedure the Administrator finds necessary for safety in air
> commerce and national security.'" *Id.* at 472 (quoting 49 U.S.C. §
> 44701(a)(5)).

*Id.* at 1138–39 (emphasis in original).

46.   The Hawaiʻi Attorney General, when asked by the legislature to

advise whether the state could regulate helicopter operations, reached

the same conclusion:

> The federal government is vested by statute with broad authority to
> regulate the use of all navigable airspace for the twin purposes of
> insuring both the safety of aircraft and the efficient utilization of
> airspace. . . . Moreover, it expressly reserves two aspects of the fields
> of helicopter air transit for federal action by asserting regulatory
> authority over the field of helicopter routes and altitudes. Under the
> rule of preemption, any legislation that operates in an area
> committed to federal care must come from a federal source. . . . [I]t
> is our opinion that the State may not enact any legislation that has
> the effect of restricting helicopter flight altitudes or routes.

*See* Regulation of Helicopter Flights, Opinion No. 86-1, 1986 WL 80009, *2-3 (January 7, 1986).

47.    The Hawaiʻi Attorney General, in prior testimony, warned that a requirement that helicopter operators maintain and make available records about their operations would be "subject to challenge under the Supremacy       Clause       of       the       U.S.       Constitution." (https://www.capitol.hawaii.gov/session2021/testimony/SB1403_TESTI MONY_TRS_02-09-21_.PDF). *See also* Hawaiʻi Administrative Rules ("**HAR**") § 19-34-1.1 (acknowledging that any air tour requirements that are contrary to federal law must yield thereto); *cf. Authority of Jackson County to Regulate Helicopter Sightseeing Operation*, N.C. Atty. Gen. Advisory Opinion, 2002 WL 1902115, *5 (July 10, 2002) (doubting that requirement for submission of "operations plan" for helicopter air tours "would be found valid. Implicit in the structure of the operations is county regulation of matters already regulated under federal law which . . . would preempt county regulation in this area.").

48.    Because the monthly reporting requirements attempt to regulate in the area of aviation safety and efficiency, they are preempted.

49.    The safety purposes of S.B. 3272 were reiterated and elaborated

upon throughout the hearing process for S.B. 3272:

(a)    "Your Committee finds that, while there have been several efforts to address **the excessive noise and safety hazards** posed by tour helicopters and small aircrafts operating in the State, **community concerns over excessive noise and safety hazards continue to grow**. This measure will assist the Department of Transportation in its monitoring of tour aircraft operators to determine their compliance with federal and state laws." *See* Stand. Comm. Rep. No. 1900-22 ([https://www.capitol.hawaii.gov/session2022/CommReports/SB3272_HD2_HSCR1900-22_.htm](https://www.capitol.hawaii.gov/session2022/CommReports/SB3272_HD2_HSCR1900-22_.htm)) (emphasis added).

(b)    "Your Committee on Conference finds that **the noise from low-flying aircrafts over residential areas can cause health issues and negatively impact quality of life**. Due to increasing concerns, this measure requires tour aircraft operations to file reports so that the State can monitor their compliance with federal regulations." See Conf. Comm. Rep. No. 208-22 ([https://www.capitol.hawaii.gov/session2022/CommReports/SB3272_CD1_CCR208-22_.htm](https://www.capitol.hawaii.gov/session2022/CommReports/SB3272_CD1_CCR208-22_.htm)) (emphasis added).

(c)    "Your Committee finds that there is increasing **concern with safety risks** and community disruption arising from tour helicopter and small aircraft operations in the State. Although there have been collaborative efforts to **address increasing safety** and community disruption concerns, **this measure further ensures transparency and accountability for tour aircraft operators by establishing certain reporting requirement**s." *See* Stand. Comm. Rep. No. 1231-22 ([https://www.capitol.hawaii.gov/session2022/CommReports/SB3272_HD1_HSCR1231-_22_.htm](https://www.capitol.hawaii.gov/session2022/CommReports/SB3272_HD1_HSCR1231-_22_.htm)) (emphasis added).

(d)    "Your Committee therefore finds that decisive action must be taken **to increase safety precautions**." *See* Stand. Comm.                Rep.                No.                2694

(https://www.capitol.hawaii.gov/session2022/CommReports/SB327
2_SD1_SSCR2694_.htm) (emphasis added).

    (e)    "[I]t is in the interest of the State **to monitor and
ensure that these rules and regulations are being followed**."
*See* Stand. Comm. Rep. No. 2790
(https://www.capitol.hawaii.gov/session2022/CommReports/SB327
2_SD2_SSCR2790_.htm).

50.    HDOT also provided comments on S.B. 3272:

The U.S. Federal Aviation Administration (FAA) Grant Assurance
No. 22, obligates DOT to make its airports available for public use
on reasonable terms and without unjust discrimination to all
aeronautical activities. The bill proposes to affect a specific
population of airports users, thus arguably, discriminates. **The
FAA has authority to regulate the air space and aircraft
operations. The DOT has no authority to establish rules or
offer contract terms that attempts to manage flight
operations of helicopter operators**.

*See* State Department of Transportation, Comments Regarding S.B. 3272

(February                15,                2022)

(https://www.capitol.hawaii.gov/session2022/testimony/SB3272_TESTI

MONY_TRS_02-15-22_.PDF) (emphasis added).

51.    In fielding questions about S.B. 3272, a Deputy Attorney General

stated that the State could not require operators to provide information

that was not "the same kind of information they're providing to the feds

.   .   .   **that's    preempted    by    the    fed    law**."    *See*

https://www.youtube.com/watch?v=IOXFWK6e5Tw at 36:25.6 (emphasis added).

52.    The monthly reporting requirements are void under field preemption doctrine.

### Section 216-12(b)(8) Is Void Due to Conflict Preemption.

53.    Conflict preemption exists when a state law "actually conflicts with federal law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79. This occurs where "state law stands as an obstacle to the accomplishment" of Congress's intent. *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).

54.    Conflict preemption applies "where compliance with both federal and state regulations is a physical impossibility" or in "those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (internal quotations omitted).

55.    The monthly reporting requirements conflict with the Federal Aviation Act and the rules and regulations promulgated thereunder and ANCA in at least two ways.

56.    First, the monthly reporting requirements are an obstacle to Congress's intent to regulate the safety and operations of air tours in the State because they impose more onerous requirements than those required by the FAA.

57.    In addition to the numerous generally applicable regulations for aircraft operations in Title 14, Chapter I of the Code of Federal Regulations, including Part 91 and associated agency guidance, Part 136 sets forth safety and operational rules for commercial air tours and national parks air tour management.

58.    Part 136 applies to each person who operates a commercial air tour in an airplane or helicopter and applies to "Part 135 operators" conducting a commercial air tour. *See* 14 CFR § 136.1.

59.    Hawai'i operators that are members of HAI generally conduct their air tours under Part 135 authority from the FAA, and most if not all their sightseeing flights are actually operated in conformity with Parts 135 and 136.

60.    Appendix A to Part 136 includes additional specific safety and operational regulations that apply to air tours conducted in the State of Hawai'i. *See, e.g.*, Letter from Raquel Girvin, Western-Pacific Regional

Administrator, FAA, to Suzanne D. Case, Chair, Hawaii Board of Land and Natural Resources (August 13, 2021) ("[t]he FAA has also promulgated safety regulations addressing commercial air tours nationally . . . and specific regulations imposing special operating rules on air tour aircraft (including helicopters and special minimum flight altitudes for Hawaii) in Hawaii"); Letter from Raquel Girvin, Western-Pacific Regional Administrator, FAA, to the Honorable Ed Case (May 17, 2019) (identifying applicable regulations); Hawai'i Air Tours Common Procedures Manual.

61. The FAA, in coordination with the National Park Service, is developing further rules for air tours over national parks in Hawai'i, based on the National Park Air Tour Management Act of 2000 (49 U.S.C. § 40128) and Part 136. *See, e.g.,* https://parkplanning.nps.gov/projectHome.cfm?projectId=103522 (Hawai'i Volcanoes National Park) and https://parkplanning.nps.gov/projectHome.cfm?projectId=103365 (Haleakala National Park); *see also* Commercial Air Tour Operations Conducted Over National Parks and Tribal Lands, FAA Advisory Circular No. 136-1 (October 25, 2002).

62.    Air tour operators are also required to report certain information regarding deviations from the requirements in the Hawai'i Air Tour Manual to the FAA.

63.    None of these federal regulations and requirements impose the type of data collection or reporting contemplated by the monthly reporting requirements.

64.    As a result, the information requested by the monthly reporting requirements is not data that is currently compiled, maintained or disseminated by air tour operators.

65.    The monthly reporting requirements related to deviations from flight paths provides an example. Under FAA regulations, intended flight paths are not typically submitted to the FAA for air tours. Air tours in Hawai'i are generally conducted under visual flight rules ("**VFR**") as opposed to instrument rules. The filing of VFR flight plans is almost always optional. The FAA has the authority to require air tours in Hawai'i to file VFR flight plans, but it has chosen not to exercise it.

66.    In contrast, the monthly reporting requirements, which apply to all air tours regardless of whether the tour is utilizing VFR or instrument rules, require operators to submit reports detailing the intended flight

path from takeoff through landing and any deviations from such flight path. *See* S.B. 3272 at HRS § 261-12(b)(8)(C)-(D).

67.    Consequently, monthly reporting requirements either require the reporting on deviations from a nonexistent flight path or implicitly impose obligations for submissions of VFR flight plans that are not required by the FAA to enable operators to report deviations from those plans.

68.    Second, the monthly reporting requirements stand as an obstacle to Congress's intent to allow all aeronautical activities reasonable access to airports.

69.    After the enactment of S.B. 3272, HRS § 261-12(b) now provides: "Any other law to the contrary notwithstanding, no tour aircraft operation shall be permitted in any airport under the State's control without having a permit. The director shall adopt rules to regulate tour aircraft operations by permit, which shall include but not be limited to: . . . (8) **Submission of monthly written reports to the department**. . . ." (Emphasis added). The monthly reporting requirements authorized by Section 261-12(b)(8) impose an access restriction at all state-owned airports in Hawaiʻi, *i.e.*, by requiring air tour operators to fulfill its

reporting requirements in order to obtain a permit enabling them to operate at those airports (a requirement incidentally not imposed on any other category of operator), subject to both the revocation of the permit pursuant to HAR § 19-34-8 as well as fines pursuant to HRS § 261-21(a)(2).

70.   The majority of airports in Hawaiʻi are state-owned, and the majority of air tours by HAI members are conducted at those state-owned airports.

71.   The monthly reporting requirements and the potential penalty of access restriction are contrary to the Federal Aviation Act and ANCA for multiple reasons, including that ANCA generally prohibits the imposition of access restrictions at publicly owned airports. *See* 49 U.S.C. § 47524; *see also, infra*, at ¶¶ 86-92, 127-32.

72.   This is in conflict with the State regulations, which allow State authorities to deny permits or impose fines on operators that do not comply with the monthly reporting requirements.

73.   In these ways, the monthly reporting requirements impose more stringent requirements than the FAA and stand as an "obstacle to the accomplishment" of Congress's intent.

74.    Where administrative requirements overlap with and/or burden a federal area of regulation, the state requirements are preempted. *See, e.g., Gobeille v. Liberty Mutual Ins. Co.*, 577 U.S. 312, 323 (2016) (preemption of a state reporting requirement for employee benefit plans "is necessary to prevent the States from imposing novel, inconsistent, and burdensome reporting requirements on plans"); *United States v. Locke*, 529 U.S. 89, 116 (2000) ("Congress did not intend its reporting obligations to be cumulative to those enacted by each political subdivision whose jurisdiction a vessel enters"); *Congress of California Seniors v. Catholic HealthCare West*, 104 Cal.Rptr.2d 655, n.13 (App. 2001) ("[F]ederal Medicare law preempts the field of provider cost reporting.").

75.    Because the FAA does not require reporting of the type of data required by the monthly reporting requirements, the monthly reporting requirements will burden air tour operators and are void under the conflict preemption doctrine.

## Section 216-12(b)(8) Is Preempted by the Airline Deregulation Act of 1978.

76.    The Airline Deregulation Act of 1978 (49 U.S.C. § 41713(b)(1); "**ADA**") codified an express prohibition on states or localities "enact[ing]

or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier."

77. An "air carrier" is defined to be a person who engages directly or indirectly in air transportation. 49 U.S.C. § 40102(a)(2). "Air transportation" in turn includes "interstate air transportation," *id.* § 40102(a)(5), and "interstate air transportation" includes transportation between a place in "**Hawaii and another place in Hawaii through the airspace over a place outside Hawaii**," *id.* § 40102(a)(25)(A)(ii) (emphasis added).

78. HAI members have authority to and do transport passengers or property by aircraft between a place in Hawaiʻi and another place in Hawaiʻi through the airspace over a place outside Hawaiʻi. *See, e.g.*, *Pac. Helicopter Tours, Inc. v. United States*, No. 06-613 C, 2007 WL 5171114, at *20 (Fed. Cl. Jan. 12, 2007) (explaining flights that "travel from the earth of one part of Hawaii, to the earth of another part of Hawaii" would "meet the definition of 'interstate air transportation'").

79. The air tour operators affected by S.B. 3272, including HAI's members that are air tour operators, are certificated by the FAA pursuant to Part 135.

80.   Part 135 operators are considered to be "air carriers." *See Air Evac EMS, Inc. v. Sullivan*, 8 F.4th 346, 352 (5th Cir. 2021) (Part 135 authority is authority to "operate as an air carrier and conduct common carriage operations").

81.   All operations of an air carrier are within the scope of the ADA, even if specific operations are intrastate. *See Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721 (E.D.N.C. 2008).

82.   Because the monthly reporting requirements regulate the air tour operators that operate under Part 135, the requirements are related to the service and routes of air tour operators.

83.   The monthly reporting requirements attempt to regulate in the area of aviation safety.

84.   The purpose of the monthly reporting requirements assumes that "it is in the interest of the State to monitor and ensure that federal regulations are being followed" and, on that basis, "[r]equire[s] tour aircraft operators to file appropriate reports and disclosures so that the State can monitor their compliance with federal regulations." *See* S.B. 3272, § 1.

85.    The monthly reporting requirements are preempted by the ADA. *See, e.g.*, *Weeks v. American Eagle Airlines, Inc.*, 2008 WL 11351284, *2 (S.D. Ohio Dec. 22, 2008) ("Air safety and the associated reporting requirements are inherently related to aircraft services–protecting passengers and crew by ensuring compliance thus cannot be too remote for preemption[.]"); *ABC Charters, Inc. v. Bronson*, 591 F.Supp.2d 1272, n.26 (S.D. Fla. 2008) ("[T]he imposition of . . . pervasive reporting requirements (including the release of trade secrets) . . . is, on its face, related to the 'service' of tour operators and ticket agents, as well as their 'price' and 'routes.'"); *Air Evac EMS, Inc. v. Dodrill*, 548 F.Supp.3d 580, 590-91 (S.D. W.Va. 2021) (financial reporting requirements held to be preempted by Section 41713).

## The Monthly Reporting Requirements Are Preempted by the Aircraft Noise and Capacity Act of 1990.

86.    ANCA generally prohibits the imposition of noise or access restrictions at publicly owned airports, unless the airport has complied with the procedural requirements set forth in 14 C.F.R. Part 161 ("**Part 161**") for the study, public comment on, and FAA review of the restrictions. *See* 49 U.S.C. § 47524.

87.    The FAA has interpreted ANCA broadly to apply to both direct

and indirect restrictions. *See, e.g.*, *Millard Refrigerated Services, Inc. v.*

*FAA*, 98 F.3d 1361 (D.C. Cir. 1996); Notice and Approval of Airport Noise

and Access Restrictions, 56 Fed. Reg. 48661, 48664 (September 25, 1991)

(stating "the Act contemplates a broad review of such restrictions").

88.    Air tour operations are within the scope of ANCA.

89.    The legislative history of S.B. 3272 reflects that the monthly

reporting requirements were enacted to address noise and safety

hazards. *See supra*, at ¶¶ 49-51.

90.    The monthly reporting requirements impose an access

restriction at all state-owned airports in Hawaiʻi, *i.e.*, by requiring air

tour operators to fulfill its reporting requirements in order to obtain a

permit enabling them to operate at those airports (a requirement

incidentally not imposed on any other category of operator), subject to

both the revocation of the permit pursuant to HAR § 19-34-8 as well as

fines pursuant to HRS § 261-21(a)(2).

91.    The State, which is also the proprietor of the airports at which

air tours operate, has not complied with the procedural requirements set

forth in Part 161 for the study, public comment and FAA review of the restrictions.

92.     The monthly reporting requirements violate ANCA and its implementing regulations and are preempted.

## Prior Litigation Regarding the State's Attempt to Regulate Air Tours Safety and Operation.

93.     S.B. 3272 is not the State's first attempt to regulate helicopter operations.

94.     In 1988, the State enacted Act 397, which was compiled in HRS §§ 261-12(b) and 261-13.6 ("**Act 397**"), and promulgated rules that required air tour operators to apply for a Tour Aircraft Operators Permit ("**Permit**") to operate out of State airports. Pursuant to these authorities, operators were required to file charts and flight plans to show how they would avoid flying over noise-sensitive and residential areas. Operators who failed to apply for a Permit or adhere to submitted flight plans would face revocation of their Permit or fines up to $1,000. Flight plans and Permits were made publicly available, with the opportunity for public comment to be submitted to the HDOT Airports Division.

95.     On May 7, 1990, a number of operators, including Safari, a party to the present action, filed a complaint in the U.S. District Court for the

District of Hawaiʻi against the State of Hawaiʻi, Defendant HDOT,

Edwin Y. Hirata, in his capacity as the Director of HDOT, and Owen

Miyamoto, in his capacity as the Airports Administrator for the HDOT

(the "**1990 Complaint**").

96.    The 1990 Complaint sought declaratory and injunctive relief,

among other causes of action, on the ground that under the Supremacy

Clause of the United States Constitution, art. VI, clause 2, Act 397 and

its associated rules were preempted by the Federal Aviation Act of 1958,

as amended, the Noise Control Act of 1972, as amended, the Airline

Deregulation Act of 1978, and the Airport and Airway Development Act

of 1982. Ex. 3 (1990 Complaint).

97.    On January 19, 1994, the Honorable Alan C. Kay approved and

ordered all claims dismissed pursuant to the Stipulation for Dismissal

signed and filed by the parties. Ex. 2 (1994 Stipulation).

98.    Settling all claims asserted in the 1990 Complaint, the 1994

Stipulation provides in pertinent part:

> that the State of Hawaiʻi shall promulgate agency rules amending
> Hawaii Administrative Rules, Chapter 19-34, and clarifying that
> Hawaii Revised Statutes, section 261-12 will not be applied in any
> manner that is inconsistent with, or contrary to, the Federal
> Aviation Act of 1958, as amended, together with the Federal
> Aviation Regulations promulgated thereunder.

Ex. 2 (Stipulation for Dismissal) at 2.

99. The monthly reporting requirements and the preamble to S.B. 3272, which asserts that "the State has the option not to renew a tour aircraft operation permit for any company that repeatedly deviates from flight plans over sensitive areas," are inconsistent with and contrary to the Federal Aviation Act of 1958, as amended, and its associated regulations. Accordingly, S.B. 3272 violates the 1994 Stipulation.

## COUNT I
## (FIELD PREEMPTION)
## (STATE OF HAWAI'I , EDWIN SNIFFEN IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF HDOT)

100. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as though set forth at length.

101. The Court has authority to declare the rights and responsibilities of parties under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

102. There is a dispute between the parties whose interests are real and adverse, which is justiciable and ripe for adjudication as a question of law, respecting the exclusive sovereignty of the United States government over airspace of the United States and the legality of the

State's actions in attempting to regulate such airspace by imposing monthly reporting requirements for air tour operators.

103. The monthly reporting requirements constitute an invalid exercise of the State's police power, as they attempt to legislate in the field of aviation safety and efficiency.

104. The field of aviation safety and efficiency is completely occupied by the Federal government based on the pervasive scheme of legislation enacted by Congress and regulation promulgated by the FAA.

105. Thus, Federal law preempts the monthly reporting requirements.

106. Plaintiffs have suffered and will suffer harm as a result of the monthly reporting requirements.

107. Plaintiffs are entitled to a judgment declaring that the monthly reporting requirements are preempted by Federal law under the Supremacy Clause of the United States Constitution, art. VI, clause 2, and that those requirements have no force and effect.

108. Plaintiffs are further entitled to a permanent injunction barring Defendants and their successors, agents, employees, representatives and

other actors in concert with them from enforcing the monthly reporting requirements.

## COUNT II
### (DECLARATORY JUDGMENT REGARDING CONFLICT PREEMPTION)
### (STATE OF HAWAIʻI , EDWIN SNIFFEN IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF HDOT)

109. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as though set forth at length.

110. The monthly reporting requirements are preempted by Federal law based on a conflict between State law and the objectives of the Federal Aviation Act and the regulations and rules promulgated thereunder, 49 U.S.C. § 106, and ANCA.

111. The State law regarding monthly reporting requirements for safety purposes is inconsistent with Congress's express goal to provide a uniform regulatory framework for national airspace, including the operation, safety, equipment and reporting requirements for air tours conducted in the State. *See, e.g.*, 14 C.F.R. Part 136, Appendix A.

112. The State law regarding monthly reporting requirements also stands as an obstacle to Congress's intent to allow all aeronautical activities reasonable access to airports. *See* ANCA, 49 U.S.C. § 47524.

113. Thus, Federal law preempts the monthly reporting requirements.

114. Plaintiffs have suffered and will suffer harm as a result of the monthly reporting requirements.

115. Plaintiffs are entitled to a judgment declaring that the monthly reporting requirements are preempted by Federal law under the Supremacy Clause of the United States Constitution, art. VI, clause 2, and that those requirements have no force and effect.

116. Plaintiffs are further entitled to a permanent injunction barring the State of Hawaiʻi and the Director of HDOT and their successors, agents, employees, representatives and other acts in concert with them from enforcing the monthly reporting requirements.

## COUNT III
### (PREEMPTION PURSUANT TO ADA)
### (STATE OF HAWAIʻI , EDWIN SNIFFEN IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF HDOT)

117. Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as though set forth at length.

118. State laws having a connection with, or reference to, aircraft prices, routes, or services are preempted under the ADA, even if the state

law's effect is only indirect. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 386 (1992).

119. Private parties may challenge a state or local restriction that conflicts with the ADA as a matter of equity via the *Ex Parte Young* doctrine. *See, e.g., EagleMed, LLC v. Wyoming ex rel. Dep't of Workforce Services, Workers' Comp. Div.*, 227 F.Supp.3d 1255, 1267 (D. Wyo. 2016), *aff'd sub nom.* 868 F.3d 893 (10th Cir. 2017).

120. The monthly reporting requirements seek to, among other things, directly or indirectly require operators to submit intended flight plans for air tours and record any deviations therefrom.

121. The monthly reporting requirements are invalid and unenforceable because they violate the express prohibition of the preemption provisions of the ADA, codified at 49 U.S.C. § 41713(b)(1), nor can they be justified by the ADA's extremely limited exemption for the exercise of proprietary powers, 49 U.S.C. § 41713(b)(3).

122. The monthly reporting requirements relate to and affect air tour operators' "prices, routes, or services" and are preempted by the ADA.

123. Thus, Federal law preempts the monthly reporting requirements.

124.   Plaintiffs have suffered and will suffer harm as a result of the monthly reporting requirements.

125.   Plaintiffs are entitled to a judgment declaring that the monthly reporting requirements are preempted by Federal law under the Supremacy Clause of the United States Constitution, art. VI, clause 2, and that those requirements have no force and effect.

126.   Plaintiffs are further entitled to a permanent injunction barring the State of Hawaiʻi and the Director of HDOT and their successors, agents, employees, representatives, and other acts in concert with them, from enforcing the monthly reporting requirements.

### Count IV
### (PREEMPTION PURSUANT TO ANCA)
### (STATE OF HAWAIʻI , EDWIN SNIFFEN IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF HDOT)

127.   Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as though set forth at length.

128.   ANCA expressly preempts access restrictions to airports. *See* 49 U.S.C. § 47524.

129.   Private parties may challenge a state or local restriction that conflicts with ANCA as a matter of equity via the *Ex Parte Young*

doctrine. *See, e.g.*, *Friends of the East Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 144 (2016).

130. The monthly reporting requirements impose an access restriction at all state-owned airports in Hawaiʻi, *i.e.*, by requiring air tour operators to fulfill its reporting requirements in order to obtain a permit enabling them to operate at those airports (a requirement incidentally not imposed on any other category of operator), subject to both the revocation of the permit pursuant to HAR § 19-34-8 as well as fines pursuant to HRS § 261-21(a)(2).

131. The monthly reporting requirements conflict with the requirements imposed by ANCA, which makes no exemption for the exercise of proprietary powers, *Friends*, 841 F.3d at 154.

132. Thus, Federal law preempts the monthly reporting requirements.

133. Plaintiffs are entitled to a judgment declaring that the monthly reporting requirements are preempted by Federal law under the Supremacy Clause of the United States Constitution, art. VI, clause 2, and that those requirements have no force and effect.

134.  Plaintiffs are further entitled to a permanent injunction barring the State of Hawai'i and the Director of HDOT and their successors, agents, employees, representatives and other acts in concert with them from enforcing the monthly reporting requirements.

**COUNT V**
**(BREACH OF THE 1994 STIPULATION TO DISMISS THE 1990 COMPLAINT)**
**(ALL DEFENDANTS)**

135.  Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as though set forth at length.

136.  Safari, the State, HDOT, the Director of HDOT, the HDOT Airports Administrator, and other operators entered into the 1994 Stipulation to dismiss the claims asserted by the 1990 Complaint.

137.  Safari performed its obligations and duties pursuant to the 1994 Stipulation.

138.  Under the terms of the 1994 Stipulation, Defendants are prohibited from applying HRS § 261-12(b)(8) in any manner that is inconsistent with or contrary to the Federal Aviation Act of 1958, as amended and recodified, together with the Federal Aviation Regulations promulgated under that act.

139.  The monthly reporting requirements and preamble to S.B. 3272, which asserts that "the State has the option not to renew a tour aircraft operation permit for any company that repeatedly deviates from flight plans over sensitive areas," are inconsistent with and contrary to the Federal Aviation Act of 1958, as amended, and its associated regulations.

140.  Safari would suffer irreparable harm in the absence of injunctive relief enjoining Defendants from violating the 1994 Stipulation.

141.  The public interest supports granting injunctive relief enjoining Defendants from violating the 1994 Stipulation.

142.  Safari is entitled to specific performance and/or a preliminary and permanent injunction preventing Defendants from violating the 1994 Stipulation.

WHEREFORE, Plaintiffs ask the Court to:

A.   Enter judgment in favor of Plaintiffs and against the State of Hawaiʻi and the Director of HDOT as to Counts I-IV.

B.   Enter judgment in favor of Plaintiffs and against Defendants as to Count V.

C.   Enter   judgment   declaring   that   the   monthly   reporting requirements are preempted by federal law and that those requirements have no force and effect.

D.   Enter   judgment   declaring   that   the   monthly   reporting requirements violate the 1994 Stipulation.

E.   Enter   a   preliminary   and   permanent   injunction   barring Defendants and their successors, agents, employees, representatives and other acts in concert with them from enforcing the monthly reporting requirements.

F.   Award Plaintiffs its attorneys' fees and costs of suit, as provided by law; and

G.   Award Plaintiffs such other and further relief as the Court deems just and equitable.

DATED:  Honolulu, Hawai'i, May 4, 2023.

CADES SCHUTTE
A Limited Liability Law Partnership

*/s/ Lisa K. Swartzfager*
CALVERT G. CHIPCHASE
LISA K. SWARTZFAGER
Attorneys for Plaintiff
HELICOPTER ASSOCIATION
INTERNATIONAL and SAFARI
AVIATION, INC. d/b/a SAFARI
HELICOPTERS HAWAI'I

# EXHIBIT 1

THE SENATE
THIRTY-FIRST LEGISLATURE, 2022
STATE OF HAWAII

# S.B. NO. 3272

---

# A BILL FOR AN ACT

RELATING TO TRANSPORTATION.

**BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF HAWAII:**

SECTION 1.  The legislature finds that tour helicopters and small aircraft operations constitute a significant risk to passengers and residents on the ground.  Over the past five years, tour helicopters and small aircraft operations in Hawaii accounted for nearly seventeen per cent of the nation-wide accidents that prompted investigation by the National Transportation Safety Board.  In one ten-month period spanning 2019 to 2020, twenty-three lives were lost in four separate tour helicopter or small aircraft accidents on Oahu and Kauai.  Therefore, it is important that tour operators carry insurance in sufficient amounts to cover potential losses in the event of an accident.

The legislature also finds that residents in the State must endure the excessive noise that helicopter tours generate. Federal legislation, such as the National Parks Air Tour Management Act of 2000, established rules that tour operators must follow when flying over national parks like Volcanoes National Park, Pearl Harbor National Memorial, and Haleakala National Park. Therefore, it is in the interest of the State to monitor and ensure that federal regulations are being followed and that the State has the option not to renew a tour aircraft operation permit for any company that repeatedly deviates from flight plans over sensitive areas.

The legislature further finds that the Federal Aviation Administration, Hawaii department of transportation, some Hawaii tour helicopter companies, and other interested stakeholders have formed an unofficial Hawaii air noise and safety task force with the stated intent of addressing increasing safety and community disruption concerns, but has been criticized for not fully

engaging and responding to public concerns in determining regulatory or voluntary changes in operations.  An increasing number of elected officials and community organizations have expressed increasing concern with safety risks and community disruption arising from tour helicopter and small aircraft operations.

The purpose of this Act is to:

(1)  Formally establish the helicopter noise and safety task force in the department of transportation; and

(2)  Require tour aircraft operators to carry and maintain sufficient insurance amounts, as well as file appropriate reports and disclosures so that the State can monitor compliance with federal regulations.

SECTION 2.  Chapter 261, Hawaii Revised Statutes, is amended by adding a new section to be appropriately designated and to read as follows:

"§261-   **Helicopter noise and safety task force.**  (a) There is established a helicopter noise and safety task force in the department of transportation.

(b)  The task force shall:

(1)  Identify key noise and safety issues facing Hawaii relating to helicopters;

(2)  Address increasing safety and community disruption concerns;

(3)  Explore and recommend changes needed to law and business practices to protect the public from the inherent dangers presented by helicopters; and

     (4)   Engage with and respond to public concerns in
           determining regulatory or voluntary changes in
           helicopter operations.

     (c)   The members of the task force shall include:

     (1)   The chairs of the Senate and House of Representatives
           standing committees with jurisdiction over
           transportation, who shall serve as the co-chairs of the
           task force; and

     (2)   The director of transportation or their designee.

     (d)   The co-chairs of the task force shall invite the
following persons to join the task force:

     (1)   A representative from the Federal Aviation
           Administration; and

     (2)   At least one representative from the helicopter
           industry.

     (e)   The co-chairs of the task force may invite other
interested parties and members of the public who live in areas
impacted by helicopter noise to join the task force.

     (f)   The members of the task force shall serve without
compensation but shall be reimbursed for expenses, including
travel expenses, necessary for the performance of their duties.

     (g)   The task force shall submit a report of its findings and
recommendations, including any proposed legislation, to the
legislature no later than twenty days prior to the convening of
each regular session."

     SECTION 3.   Section 261-12, Hawaii Revised Statutes, is
amended by amending subsection (b) to read as follows:

"(b)  Tour aircraft operations.  Any other law to the
contrary notwithstanding, no tour aircraft operation shall be
permitted in any airport under the State's control without having
a permit.  The director shall adopt rules to regulate tour
aircraft operations by permit, which shall include but not be
limited to:

    (1)  Identification of the types of aircraft to be utilized;

    (2)  The number of operations daily for each type of aircraft
       used and the days and hours of operation;

    (3)  Verification that the applicant is in compliance with
       all state statutes, including but not limited to this
       section;

    (4)  Verification that the applicant has the Federal Aviation
       Administration certificate 121 or 135;

    (5)  A written assessment by the department of the impact to
       the surrounding area and to the subject state airport;

    (6)  Revocation of a permit based on the failure to comply
       with the information provided by the applicant and the
       terms and conditions set forth by the department in the
       permit; and any false statement or misrepresentation
       made by the applicant;

    (7)  Establishment of penalties for revocation and suspension
       of a permit for failure to comply with permit
       conditions;

    <u>(8)  Verification that the applicant has commercial general
       liability insurance coverage of not less than
       $10,000,000 arising from any one accident or other cause</u>

        that covers but is not limited to bodily injury and
death and contractual liability;

  (9)  Requirement that each applicant applying to renew a
permit shall provide to the department a written report,
which shall be made available to the public, of each
tour operation that occurred during the duration of the
expiring permit, including:

    (A)  The date and time that the aircraft took off and
landed;

    (B)  The number of individuals aboard the aircraft
during the operation;

    (C)  The flight path from takeoff through landing; and

    (D)  A disclosure if the aircraft deviated from its
intended flight plan;

[(8)] (10)  Annual renewal of permits; and

[(9)] (11)  Any change of operations under the existing permit
to be approved by the director.

No permit shall be authorized unless accompanied by a Hawaii
sectional aeronautical chart marked to indicate routes and
altitudes to be used in conducting aerial tours and noise
abatement procedures to be employed in the vicinity of identified
noise sensitive areas.

For the purposes of this subsection, "tour aircraft
operations" means any business operation that offers aircraft for
hire by passengers for the purpose of aerial observation of
landmarks and other manmade or natural sites within an island of
the State and for the purpose of transporting passengers for
tourist-related activities."

SECTION 4.  Statutory material to be repealed is bracketed
and stricken.  New statutory material is underscored.

SECTION 5.  This Act shall take effect upon its approval.


INTRODUCED BY:  _____

**Report Title:**
Helicopters; Tour Aircraft Operations; Insurance; Records

**Description:**
Establishes the helicopter noise and safety task force.  Requires
the Director of Transportation to adopt rules to require tour
aircraft operators to have commercial general liability insurance
coverage of at least $10,000,000 and to report details of each
flight taken by the tour aircraft operation in order to renew a
tour aircraft operation permit.

*The summary description of legislation appearing on this page is for informational purposes only and is not
legislation or evidence of legislative intent.*

# EXHIBIT 2

ORIGINAL    **LODGED**

ROBERT A. MARKS    2163  JAN 1 8 1994
Attorney General
State of Hawaii

CLERK, U. S. DISTRICT COURT
WINFRED K.T. PONG   2757-0 DISTRICT OF HAWAII
Deputy Attorney General
425 Queen Street
Honolulu, Hawaii   96813
Telephone:   586-1263

Attorneys for Defendant
STATE OF HAWAII

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 2   1994

at _9_ o'clock and _25_ min. _9_ M.
WALTER A. Y. H. CHINN, CLERK
By _____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII HELICOPTER OPERATORS ASSOCIATION, INC., a Hawaii corporation; OHANA AVIATION, INC., a Hawaii corporation, dba OHANA HELICOPTERS; BOGERT KEALOHA; HAWAII INTERNATIONAL HELICOPTERS, a Hawaii corporation; CLARENCE KANAE; IO AVIATION HELICOPTERS, a Hawaii corporation; WILLIAM SIMON; KENAI AIR OF HAWAII, INC., a Hawaii corporation; CHRISTY JOHNSON, SAFARI AVIATION, INC., a Hawaii corporation, dba SAFARI HELICOPTERS; and PRESTON MYERS, | CIVIL NO. 90-00369 (ACK), STIPULATION FOR DISMISSAL WITH PREJUDICE OF ALL CLAIMS AND ALL PARTIES; EXHIBIT "A" |
| Plaintiffs, | |
| vs. | TRIAL DATE:   DEC. 15, 1992 TRIAL JUDGE: HONORABLE ALAN C. KAY |
| STATE OF HAWAII; STATE OF HAWAII DEPARTMENT OF TRANSPORTATION; EDWIN Y. HIRATA as Director of the D.O.T.; and OWEN MIYAMOTO, as Airports Administrator, | |
| Defendants. | |

1768

35

STIPULATION FOR DISMISSAL WITH PREJUDICE
OF ALL CLAIMS AND ALL PARTIES

IT IS HEREBY STIPULATED AND AGREED by and between the
parties to this action, through their respective attorneys,
that pursuant to Rule 41(a)(1)(ii) of the Federal Rules of
Civil Procedure, the Complaint of Plaintiffs filed against
Defendants State of Hawaii; State of Hawaii Department of
Transportation; Edwin Y. Hirata, as Director of the Department
of Transportation; and, Owen Miyamoto, as Airports
Administrator, be and is hereby dismissed with prejudice;
provided, that the State of Hawaii shall promulgate agency
rules amending Hawaii Administrative Rules, Chapter 19-34, and
clarifying that Hawaii Revised Statutes, section 261-12 will
not be applied in any manner that is inconsistent with, or
contrary to, the Federal Aviation Act of 1958, as amended,
together with the Federal Aviation Regulations promulgated
thereunder.  (A true and accurate copy of proposed amendments
to Chapter 19-34, is attached hereto and incorporated herein by
reference as Exhibit "A".)

This Stipulation is signed by all parties in this

action and there are no remaining parties or issues in this case.

DATED:  Honolulu, Hawaii,  January 18, 1994 .

_____
WINFRED K.U. PONG
Deputy Attorney General
Attorney for Defendant
STATE OF HAWAII

DATED:  Honolulu, Hawaii,  14 January 1994.

_____
DAVID BETTENCOURT
Attorney for Plaintiffs

APPROVED AND SO ORDERED:

_____
JUDGE OF THE ABOVE-ENTITLED COURT

HAWAII HELICOPTER OPERATORS ASSOCIATION, INC., a Hawaii
corporation; OHANA AVIATION, INC., a Hawaii corporation, dba
OHANA HELICOPTERS; BOGERT KEALOHA; HAWAII INTERNATIONAL
HELICOPTERS, a Hawaii corporation; CLARENCE KANAE; IO AVIATION
HELICOPTERS, a Hawaii corporation; WILLIAM SIMON; KENAI AIR OF
HAWAII, INC., a Hawaii corporation; CHRISTY JOHNSON, SAFARI
AVIATION, INC., a Hawaii corporation, dba SAFARI HELICOPTERS;
and PRESTON MYERS, Plaintiffs vs. STATE OF HAWAII; STATE OF
HAWAII DEPARTMENT OF TRANSPORTATION; EDWIN Y. HIRATA as
Director of the D.O.T.; and OWEN MIYAMOTO, as Airports
Administrator, Defendants, CIVIL NO. 90-00369 (ACK),
STIPULATION FOR DISMISSAL WITH PREJUDICE OF ALL CLAIMS AND ALL
PARTIES; EXHIBIT "A".

-3-

DEPARTMENT OF TRANSPORTATION

Amendment to Chapter 19-34
Hawaii Administrative Rules


1.   Chapter 19-34, Hawaii Administrative Rules, is
amended by adding a new section 19-34-1.1 to read as
follows:

    "§19-34-1.1  Policy and intent.  Notwithstanding any
policy or intent to the contrary, section 261-12, Hawaii
Revised Statutes, and the rules provided in this chapter
shall not be interpreted nor applied in any manner that is
inconsistent with, or contrary to, the Federal Aviation Act
of 1958, as amended, together with the Federal Aviation
Regulations promulgated thereunder.  Any information or
item required to be provided by section 261-12, Hawaii
Revised Statutes, and this chapter prior to the issuance of
a tour aircraft operator permit shall be utilized only for
the purposes of obtaining information for airport planning
and ground safety, and shall not be utilized as a means of
limiting or restricting any federally-protected right of
air transit and commerce, nor does it create or constitute
any restriction upon the authorized air service operations
of any person conducting tour aircraft operations."  [Eff
         ]  (Auth:  HRS §261-12) (Imp:  HRS §261-12)

    2.   Section 19-34-2, Hawaii Administrative Rules, is
amended to read as follows:

    "§19-34-2 Permit or authorization required.  [All tour
aircraft operators shall, within one hundred and eighty
days of adoption of this chapter make application for a
Tour Aircraft Operators Permit.  One hundred and eighty
days after the adoption of this chapter it] It shall be
unlawful for any person to conduct tour aircraft operations
on any State airport [under the State's control] without
first having obtained a Tour Aircraft Operators Permit from
the department."  [Eff 10/6/89; am              ] (Auth:
HRS §261-12) (Imp:  HRS §261-12)

    3.   Section 19-34-3, Hawaii Administrative Rules, is
amended to read as follows:

    "§19-34-3 Fee.  The annual fee for a Tour Aircraft
Operators Permit shall be $500 payable in advance.  Such
permit shall be valid [for a period of one (1) year] from
the date of issuance or renewal unless sooner revoked or
terminated.  Each permit covers air tour operations from
all State airports.  Fee is non-refundable after effective
date of permit."  [Eff 10/6/89; am              ] (Auth:

EXHIBIT "A"

HRS §261-12) (Imp:  HRS §261-12)
     4.   Section 19-34-4, Hawaii Administrative Rules, is
amended to read as follows:

          "§19-34-4  Application for Tour Aircraft Operators
Permit.  An application for a Tour Aircraft Operators
Permit shall be submitted in such form as the director may
prescribe and shall be accompanied by any available
drawings, descriptive data and reports, FAA certificates
and other data as [required to verify compliance with the
provisions of this chapter, and contractual conditions for
issuance of a permit.  In addition the application shall
contain the following] provided herein:
     (1)   Company name[.];
     (2)   [Owner or Operator name.]Owner(s) and operator(s)
           names;
     (3)   Base of operation[.];
     (4)   Identification of all aircraft to be regularly
           operated under the permit, including FAA
           registration number, color, make and model
           number[.];
     (5)   The number of proposed daily operations for each
           type of aircraft used and the days and hours of
           operation[.];
     (6)   Verification that the applicant is in compliance
           with all state statutes, including but not limited
           to section 261-12[.]. Hawaii Revised Statutes, as
           interpreted by this chapter;
     (7)   [A written assessment by the department of the
           impact on the surrounding area and on the subject
           state airport.
     (8)] Copy of a valid certificate issued by the FAA
           under authorization of Part 121 or 135 or any
           other applicable part of the Federal Aviation
           Regulations[.];
     [(9)](8) Hawaii Sectional Aeronautical Chart marked to
               indicate proposed routes and altitudes to be
               used in conducting aerial tours [and the
               maximum number of tours to be flown per day
               on each route.] ; provided that the failure
               of a permittee to comply with the routes and
               altitudes indicated on the chart shall not be
               a basis to revoke or not renew a permit
               issued to the permittee;
     [(10)](9) "Fly Neighborly Program" [developed for the
               proposed operation as recommended by the FAA
               and the Helicopter Association International]
               or any other noise abatement program showing
               the voluntary noise abatement procedures to
               be employed in the vicinity of identified
               noise sensitive areas and the method to be
               employed in responding to complaints

                            -2-

generated by or suspected to have been
generated by the applicant's aircraft[.]; and

[(11)] (10)   Proof of [comprehensive general
liability] insurance [of at least five
million dollars ($5,000,000.00), one
million ($1,000,000) for gliders with
capacity of no more than two passengers]
described in section 19-34-6." [Eff
10/6/89; am                    ]    (Auth:  HRS
§261-12) (Imp:  HRS §261-12)

     5.   Section 19-34-5, Hawaii Administrative Rules, is
amended by amending subsection (b) to read as follows:

          "(b) Any [application] notice to change conditions
under which the permit was issued shall be submitted in
writing to the director at least [thirty days] twenty-four
hours prior to the [proposed] change [and shall not
commence until written authorization has been obtained from
the department]."  [Eff 10/6/89; am                    ] (Auth:
HRS §261-12) (Imp:  HRS §261-12)

     6.   Section 19-34-6, Hawaii Administrative Rules, is
amended to read as follows:

          "§19-34-6 Insurance.  (a) No Tour Aircraft
Operators Permit shall be issued by the department unless
the applicant has in effect [comprehensive general]
aircraft liability insurance required by the Federal
Aviation Administration for air taxi operators certified
under 14-CFR Part 135, as amended, or any other insurance
providing the coverages described in this section
[liability insurance which covers the service provided by
the applicant at the location specified in the
application].
          (b)  [With the exception of tour glider operation, the
minimum limit for comprehensive general liability  coverage
maintained by the applicant shall be a combined single
limit of liability for bodily injury and property damages
of five million dollars ($5,000,000)]  The minimum limit
for the insurance coverage shall be the same as required by
the Federal Aviation Administration for air taxi operators
certified under 14-CFR Part 135, as amended.
          [(c) The minimum limit that will be maintained by the
applicant for comprehensive general liability coverage for
tour glider operation that operates with gliders limited to
two passengers per flight shall be a combined single limit
of liability for bodily injury and property damages of one
million dollars ($1,000,000).
          (d)] (c)   Such insurance policy shall cover or
indemnify the State of Hawaii from [all claims including,
but not limited to personal injury, death or property

-3-

damage arising from the use by the applicant of the airport
for which a permit has been issued and shall meet the
requirements set forth herein and] any loss, damage, or
injury to persons or property arising out of any accident,
incident, or mishap of any nature whatsoever or from any
cause whatsoever to any individual, aircraft, or property
occurring on the airport or in the use of any of the
airport facilities.  The insurance policy, shall not be
cancelable with less than thirty days written notice to the
department.

     [(e)](d)  Any cancellation or suspension of the
applicant's insurance for which a permit has been issued
shall constitute good cause for immediate suspension or
revocation of the permit by the director upon 10 days
notice.  All insurance policies shall be issued by an
insurance company duly authorized to do business in the
State [and maintaining an office, or be represented by an
authorized agent in the State].

     [(f)](e)  Proof of insurance may be accomplished by
filing with the department any one of the following:
     (1)  A certified original copy of the policy;
     (2)  An abstract of the original policy signed by the
issuing company; [or]
     (3)  A certificate of insurance, including the policy
limits, attested to by the insurer[.]; or
     (4)  An additional certificate of insurance."  [Eff
10/6/89; am                      ] (Auth:  HRS §261-12) (Imp:
HRS §261-12)


     7.   Section 19-34-7, Hawaii Administrative Rules, is
amended to read as follows:


     "§19-34-7 Renewals.  (a) The holder of a Tour Aircraft
Operators Permit issued under the provisions of this
chapter must apply for a permit renewal if [he or she] the
permittee intends to continue tour aircraft operations.
     (b)  Each permittee desiring to renew its Tour Aircraft
Operators Permit shall make application on forms provided
by the director at least sixty days prior to the expiration
date of the permit.  The application shall be accompanied
by the following:
     (1)  An affidavit, sworn to by the [applicant]
          permittee that [it will continue to comply with
          the terms and conditions] the information
          submitted in support of the original permit[,
          together with any such changes that have been
          approved in accordance with this chapter.] or
          notices of changes submitted thereafter remains
          accurate; and
     (2)  Payment of the annual permit fee of five hundred
          dollars.  [Eff 10/06/89] (Auth:  HRS §261-12)
          (Imp:  HRS §261-12)

-4-

8.   Section 19-34-8, Hawaii Administrative Rules, is amended to read as follows:

"§19-34-8 Revocation.  The director may, after notice and opportunity for hearing to the permittee, revoke any permit, whether original or renewal, or refuse to issue a renewal when [he] the director determines that:

(1)   [There has been an abandonment of the operation as such; or

(2)   The permittee fails to comply with the requirements in the application and the information provided therein and the terms and conditions set forth by the department in the permit;

(3)] Any false statement or misrepresentation was made by the applicant; [and] or

[(4) Because a change in the physical or legal conditions or circumstances, the operation has become either unsafe or unusable for aeronautical purposes for which the permit or renewal was issued.]

(2)   The permittee has failed to comply with these rules."  [Eff 10/06/89] (Auth:  HRS §261-12) (Imp: HRS §261-12)

9.   Chapter 19-34, Hawaii Administrative Rules, is amended by adding a new section 19-34-13 to read as follows:

"Section 19-34-13 Reports.  All tour aircraft operators shall on or before the last day of the succeeding month, file a report with the director on the total revenue landings for the previous month."  [Eff          ] (Auth: HRS §261-12) (Imp:  HRS §261-7)

10.  Material, except source notes, to be repealed is bracketed.  New material is underscored.

11.  Addition to update source notes to reflect these amendments are not underscored.

12.  These amendments to chapter 19-34, Hawaii Administrative Rules, shall take effect ten days after filing with the Office of the Lieutenant Governor.

I certify that the foregoing are copies of the rules drafted in the Ramseyer format, pursuant to the requirements of section 91-4.1, Hawaii Revised Statutes, which were adopted on                , and filed with the Office of the Lieutenant Governor.


_____
Director of Transportation

APPROVED AS TO FORM:


_____
Deputy Attorney General

-6-

ROBERT A. MARKS  2163
Attorney General
State of Hawaii

WINFRED K.T. PONG  2529
Deputy Attorney General
425 Queen Street
Honolulu, Hawaii  96813
Telephone:  586-1263

Attorneys for Defendant
STATE OF HAWAII

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII HELICOPTER OPERATORS ASSOCIATION, INC., a Hawaii corporation; OHANA AVIATION, INC., a Hawaii corporation, dba OHANA HELICOPTERS; BOGERT KEALOHA; HAWAII INTERNATIONAL HELICOPTERS, a Hawaii corporation; CLARENCE KANAE; IO AVIATION HELICOPTERS, a Hawaii corporation; WILLIAM SIMON; KENAI AIR OF HAWAII, INC., a Hawaii corporation; CHRISTY JOHNSON, SAFARI AVIATION, INC., a Hawaii corporation, dba SAFARI HELICOPTERS; and PRESTON MYERS, ) | CIVIL NO. 90-00369 (ACK) STIPULATION FOR DISMISSAL WITH PREJUDICE OF ALL CLAIMS AND ALL PARTIES; EXHIBIT "A" |
| Plaintiffs, | |
| vs. | TRIAL DATE:  DEC. 15, 1992 TRIAL JUDGE: HONORABLE ALAN C. KAY |
| STATE OF HAWAII; STATE OF HAWAII DEPARTMENT OF TRANSPORTATION; EDWIN Y. HIRATA as Director of the D.O.T.; and OWEN MIYAMOTO, as Airports Administrator, | |
| Defendants. | |

1768

ATTACHMENT  B

ORIGINAL

LODGED

ROBERT A. MARKS  2163
Attorney General
State of Hawaii                    SEP 28 1993

WINFRED K.T. PONG  2529
Deputy Attorney General  CLERK, U. S. DISTRICT COURT
425 Queen Street              DISTRICT OF HAWAII
Honolulu, Hawaii  96813
Telephone:  586-1263

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 29 1993

Attorneys for Defendant
STATE OF HAWAII

at ___ o'clock and ___ min. ___ M.
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

HAWAII HELICOPTER OPERATORS          ) CIVIL NO. 90-00369 (ACK)
ASSOCIATION, INC., a Hawaii          )
corporation; OHANA AVIATION,         ) STIPULATION FOR DISMISSAL
INC., a Hawaii corporation, dba      ) WITHOUT PREJUDICE OF
OHANA HELICOPTERS; BOGERT            ) ALL CLAIMS AND ALL PARTIES
KEALOHA; HAWAII INTERNATIONAL        )
HELICOPTERS, a Hawaii               )
corporation; CLARENCE KANAE;         )
IO AVIATION HELICOPTERS, a           )
Hawaii corporation; WILLIAM          )
SIMON; KENAI AIR OF HAWAII,          )
INC., a Hawaii corporation;          )
CHRISTY JOHNSON, SAFARI              )
AVIATION, INC., a Hawaii            )
corporation, dba SAFARI             )
HELICOPTERS; and PRESTON MYERS,     )
                                    ) TRIAL DATE:  DEC. 15, 1992
          Plaintiffs,               )
                                    ) TRIAL JUDGE: HONORABLE
          vs.                       )              ALAN C. KAY
                                    )
STATE OF HAWAII; STATE OF           )
HAWAII DEPARTMENT OF                )
TRANSPORTATION; EDWIN Y. HIRATA     )
as Director of the D.O.T.;          )
and OWEN MIYAMOTO, as               )
Airports Administrator,             )
                                    )
          Defendants.               )
_____)

1768

STIPULATION FOR DISMISSAL WITHOUT PREJUDICE
OF ALL CLAIMS AND ALL PARTIES

IT IS HEREBY STIPULATED AND AGREED by and between the parties to this action, through their respective attorneys, that pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure, the Complaint of Plaintiff filed against Defendants State of Hawaii; State of Hawaii Department of Transportation; Edwin Y. Hirata, as Director of the Department of Transportation; and, Owen Miyamoto, as Airports Administrator, be and is hereby dismissed without prejudice and subject to reinstatement upon motion filed by any party within 30 days of the filing of this stipulation.

This Stipulation is signed by all parties in this action with the understanding that the parties intend to execute a stipulation for dismissal with prejudice and a settlement and release agreement.

There are no remaining parties or issues in this case.

DATED: Honolulu, Hawaii, _____September 28, 1993_____.

WINFRED K.T. PONG
Deputy Attorney General
Attorney for Defendants
STATE OF HAWAII; STATE OF
HAWAII DEPARTMENT OF
TRANSPORTATION; EDWIN Y.
HIRATA, as Director of the
D.O.T.; and OWEN MIYAMOTO, as
Airports Administrator.

-2-

DATED:   Honolulu, Hawaii, 28 SEPTEMBER 1993.

_____
DAVID BETTENCOURT
Attorney for Plaintiffs HAWAII
HELICOPTER OPERATORS
ASSOCIATION, INC., a Hawaii
corporation; OHANA AVIATION,
INC., a Hawaii corporation, dba
OHANA HELICOPTERS; BOGERT
KEALOHA; HAWAII INTERNATIONAL
HELICOPTERS, a Hawaii
corporation; CLARENCE KANAE; IO
AVIATION HELICOPTERS, a Hawaii
corporation; WILLIAM SIMON;
KENAI AIR OF HAWAII, INC., a
Hawaii corporation; CHRISTY
JOHNSON; SAFARI AVIATION, INC.,
a Hawaii corporation, dba
SAFARI HELICOPTERS; and PRESTON
MYERS.

APPROVED AND SO ORDERED:

_____
JUDGE OF THE ABOVE-ENTITLED COURT

[Hawaii Helicopter Operators Association, Inc., a Hawaii
corporation, et al v. State of Hawaii, et al, United States
District Court Civil No. 90-00369 (ACK), Stipulation For
Dismissal Without Prejudice Of All Claims And All Parties.]

# EXHIBIT 3

DAVID BETTENCOURT   970
TERRITORIAL LAW OFFICE SUITE
Suite 400, Stangenwald Building
119 Merchant Street
Honolulu, Hawaii  96813
Telephone:  521-3491

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

1990

WALTER A. Y. H. CHINN, CLERK

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII HELICOPTER OPERATORS ASSOCIATION, INC., a Hawaii corporation; OHANA AVIATION, INC., a Hawaii corporation, dba) OHANA HELICOPTERS; BOGERT KEALOHA; HAWAII INTERNATIONAL HELICOPTERS, a Hawaii Corporation; CLARENCE KANAE; IO AVIATION HELICOPTERS, a a Hawaii Corporation; WILLIAM SIMON; KENAI AIR OF HAWAII, INC. a Hawaii Corporation; CHRISTY JOHNSON, SAFARI AVIATION, INC., a Hawaii Corporation, dba SAFARI HELICOPTERS; and PRESTON MYERS ) Plaintiffs, vs. STATE OF HAWAII; STATE OF HAWAII DEPARTMENT OF TRANSPORTATION; EDWIN Y. HIRATA) as director of the D.O.T.; and OWEN  MIYAMOTO, as Airports Administrator, Defendants. | CIVIL NO.  90-00369 VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF; EXHIBITS "A"- "H"; SUMMONS |

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs HAWAII HELICOPTERS OPERATORS ASSOCIATION, INC., ("H.H.O.A."), OHANA AVIATION, INC. ("OHANA"), BOGERT KEALOHA, HAWAII INTERNATIONAL HELICOPTERS, INC. ("HAWAII INTERNATIONAL") and CLARENCE KANAE ("KANAE"), IO AVIATION HELICOPTERS, INC., ("IO"), WILLIAM SIMON ("SIMON"), KENAI AIR OF HAWAII, INC., ("KENAI"); CHRISTY JOHNSON ("JOHNSON"), SAFARI AVIATION, INC., a Hawaii Corporation ("SAFARI"), and PRESTON MYERS ("MYERS"), by and through their attorney, David Bettencourt, allege for their Verified Complaint for Declaratory and Injunctive Relief against Defendants STATE OF HAWAII ("STATE"), STATE OF HAWAII DEPARTMENT OF TRANSPORTATION ("D.O.T."), EDWIN Y. HIRATA, in his capacity as Director of the State of Hawaii Department of Transportation ("HIRATA"), and OWEN  MIYAMOTO, in his capacity as Airports Administrator of the State of Hawaii Department of Transportation ("MIYAMOTO") as follows:

JURISDICTION AND VENUE

1.  This Complaint for Declaratory and Injunctive Relief is filed and these proceedings are instituted pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1337 (granting jurisdiction when an action arises under an act of Congress regulating commerce), and 1343 (jurisdiction in civil rights action) to obtain a declaration pursuant to 28 U.S.C. § 2201 that Plaintiffs' aviation activities are subject to the exclusive jurisdiction and regulation by the Federal Aviation Administration, and that Act 397 of the 1988 Hawaii legislative session, which has been compiled into §§ 261-12(b) and 261-13.6

2

H.R.S., and the regulations thereunder, purporting to absolutely prohibit "tour aircraft operations" from any airport under the control of Defendant STATE OF HAWAII unless the persons or entities conducting said operations first obtains a permit from Defendants DOT and/or HIRATA, are null and void, both on their face and as applied.

2.    This action arises under the  Constitution of the United States, more specifically, under the Supremacy clause contained in Article VI, clause 2 of the Constitution of the United States, in that Act 397 and the Rules adopted thereunder are preempted by the Federal Aviation Act of 1958 (49 U.S.C. § 1301, *et seq.*), the Noise Control Act of 1972, as amended (49 U.S.C. § 1431 *et seq.*) and the Airline Deregulation Act of 1978 (49 U.S.C. § 1305 *et. seq.*), and the Airport and Airway Development Act of 1982 (49 U.S.C. § 2201 *et. seq.*); under the Commerce Clause contained in Article I, § 8 of the Constitution of the United States, in that aircraft tour operations conducted by Plaintiffs involve interstate commerce; under the Contract Clause contained in Art. I, § 10 of the Constitution of the United States, in that the State of Hawaii regulations impair contracts existing between Plaintiffs, the State of Hawaii, and other third parties; directly under the Fourteenth Amendment to the United States Constitution, in that Act 397 and the Rules adopted thereunder deprive plaintiffs of substantive and procedural due process, of the equal protection of law, of the privileges and immunities granted to citizens of the United States; under an Act of Congress regulating

3

commerce, more specifically, the Federal Aviation Act of 1958, as amended; under 42 U.S.C. §1983 to redress the deprivation, under color of state law, of rights and privileges secured by the Constitution of the United States.

3. Plaintiff H.H.O.A. is a Hawaii non-profit corporation with its principle place of business within the District of Hawaii and existing under the laws of the State of Hawaii as an organization of professional, commercial helicopters operators in the State of Hawaii for the purpose of promoting air safety and sound abatement in the State of Hawaii, to maintain and upgrade the quality of helicopter services in the State, and to educate and assure the communities and community leaders within the State of the safety and responsibility of the industry.

4. Plaintiff OHANA AVIATION, INC., dba OHANA HELICOPTERS ("OHANA"), is a Hawaii corporation with its principle place of business within the District of Hawaii, and is engaged in the carriage of persons and property for compensation and hire by helicopter operating in air commerce within the District of Hawaii pursuant to authority granted to it by the Federal Aviation Administration.

5. Plaintiff BOGERT KEALOHA ("KEALOHA") is an owner of Plaintiff OHANA, is a resident of the District of Hawaii, is the holder of a pilot certificate issued by the Federal Aviation Administration, and is presently engaged in the carriage of persons and property for compensation and hire by helicopter operating in air commerce within the District of Hawaii pursuant

4

to the authority and certificate granted to him by the Federal
Aviation Administration.

6.  Plaintiff HAWAII INTERNATIONAL HELICOPTERS, INC, ("HAWAII
INTERNATIONAL") is a Hawaii corporation with its principle place
of business within the District of Hawaii, and is engaged in the
carriage of persons and property for compensation and hire by
helicopter operating in air commerce within the District of Hawaii
pursuant to authority granted to it by the Federal Aviation
Administration.

7.  Plaintiff CLARENCE KANAE ("KANAE") is an owner of
Plaintiff HAWAII INTERNATIONAL, is a resident of the District of
Hawaii, is the holder of a pilot certificate issued by the Federal
Aviation Administration, and is presently engaged in the carriage
of persons and property for compensation and hire by helicopter
operating in air commerce within the District of Hawaii pursuant
to authority granted to it by the Federal Aviation Administration.

8.  Plaintiff IO AVIATION HELICOPTERS, INC., dba IO AVIATION
("IO") is a Hawaii corporation with its principle place of
business within the District of Hawaii, and is engaged in the
carriage of persons and property for compensation and hire by
helicopter operating in air commerce within the District of
Hawaii.

9.  Plaintiff WILLIAM SIMON ("SIMON") is an owner of
Plaintiff IO, is a resident of the District of Hawaii, is the
holder of a pilot certificate issued by the Federal Aviation
Administration, and is presently engaged in the carriage of

persons and property for compensation and hire by helicopter operating in air commerce within the District of Hawaii.

10.   Plaintiff KENAI AIR OF HAWAII, INC., ("KENAI"); is a Hawaii corporation with its principle place of business within the District of Hawaii, and is engaged in the carriage of persons and property for compensation and hire by helicopter operating in air commerce within the District of Hawaii.

11.   Plaintiff CHRISTY JOHNSON ("JOHNSON") is an owner of Plaintiff KENAI, is a resident of the District of Hawaii, is the holder of a pilot certificate issued by the Federal Aviation Administration, and is presently engaged in the carriage of persons and property for compensation and hire by helicopter operating in air commerce within the District of Hawaii.

12. Plaintiff SAFARI AVIATION, INC. dba SAFARI HELICOPERS ("SAFARI"), is a Hawaii corporation with its principle place of business within the District of Hawaii, and is engaged in the carriage of persons and property for compensation and hire by helicopter operating in air commerce within the District of Hawaii.

13.   Plaintiff PRESTON MYERS ("MYERS") is an owner of Plaintiff SAFARI, is a resident of the District of Hawaii, is the holder of a pilot certificate issued by the Federal Aviation Administration, and is presently engaged in the carriage of persons and property for compensation and hire by helicopter operating in air commerce within the District of Hawaii.

14.   Defendant STATE is a sovereign state within the District of Hawaii, and as such is bound by, and subservient to, the Constitution of the United States, and all actions taken by the other defendants herein were undertaken under the authority of, by and through Defendant STATE.

15.   Defendant D.O.T. is a governmental entity of Defendant STATE, having is principal office and doing business within the District of Hawaii.

16.   Defendant HIRATA is the Director of the Department of Transportation, State of Hawaii, and was acting in his official capacity as such at all times material hereto.

17.   Defendant MIYAMOTO is the Airports Administrator for the Airports Division, Department of Transportation, State of Hawaii, and was acting in his official capacity at all times material hereto.

FIRST CLAIM FOR RELIEF: Supremacy Clause Preemption/Federal Question/Civil Rights

18.   Defendant STATE has adopted a law of statewide application and effect, Act 397 of the 1988 legislative session, a true and correct copy of which is attached hereto and incorporated herein by reference as Exhibit "A", which has in part been compiled into §§ 261-12(b) and 261-13.6 H.R.S., purporting to absolutely prohibit "tour aircraft operations" from any airport under the control of Defendant HAWAII unless the persons or entities conducting said operations first obtains a permit from

Defedants DOT and/or HIRATA.

19.   Section 261-12(b) HRS defines "tour aircraft operations" as "any business operation which offers aircraft for hire by passengers for the purpose of aerial observation of landmarks and other man-made and natural sites within an island of the State, and for the purpose of transporting passengers for tourist-related activities."

20.   Defendant HIRATA, as Director of Defendant DOT, has been required by § 261-12(b) to promulgate rules, as § 261-12(b) provides in part:

> The Director shall adopt rules to regulate tour aircraft operations by permit which shall include but not be limited to: (1) identification of the types of aircraft to be utilized; (2) The number of operations daily for each type of aircraft used and the days and hours of operation; (3) Verification that the applicant is in compliance with all state statutes, including but not limited to section 261-12; (4) A written assessment by the department of the impact to the surrounding area and to the subject state airport; (5) Revocation of a permit based on the failure to comply with the information provided by the applicant and the terms and conditions set forth by the department in the permit; and any false statement or misrepresentation made by the applicant; (5) Establishment of penalties for revocation and suspension of a permit for failure to comply with permit conditions; (7) Annual renewal of permits; and; (8) Any change in operations under the existing permit to be approved by the director.

21. Section 261-12(b) HRS further provided "No permit shall be authorized unless accompanied by:

(1) A Hawaii sectional aeronautical chart
marked to indicate routes and altitudes to be
used in conducting aerial tours; and (2) Noise
abatement procedures to be employed in the
vicinity of identified noise sensitive areas.

22.  Pursuant to the mandatory statutory command contained in
Act 397, Defendants HIRATA, D.O.T., MIYAMOTO, and STATE have
adopted Rules, designated Hawaii Administrative Rules, Title 19,
Subtitle 2, Chapter 34 ("Hawaii Rules"), a true and correct copy
of which are attached hereto as Exhibit "B" and incorporated
herein by reference, which purport to have the binding effect of
law to require Plaintiffs to obtain Tour Aircraft Operators
Permits ("Permit") or to cease such flight operations.

23. Act 397 and the Hawaii Rules constitute a "law, rule,
regulation, standard, or other provisions having the force and
effect of law relating to rates, routes, or services" of aircraft
operators authorized to operate by the Federal Aviation
Administration, are arbitrary, capricious, vague, and indefinite,
and constitute an impermissible burden on interstate commerce and
federally-authorized aviation activities and operations.

24.  § 19-34-4 of said Hawaii Rules require Plaintiffs to
submit an application:

...in such form as the director [Defendant
HIRATA] may require and shall be accompanied
by drawings, descriptive data and reports, FAA
certificates and other data as required to
verify compliance with the provisions of this
chapter, *and the contractual conditions
for issuance of a permit.* (emphasis
added).

9

25. Hawaii Rules § 19-34-4 additionally requires that said application form contain:

  (1) Company name.

  (2) Owner or Operator name.

  (3) Base of Operation.

  (4) Identification of all aircraft to be operated under the permit, including FAA registration number, color, make and model number.

  (5) The number of daily operations for each type of aircraft used and the days and hours of operation.

  (6) Verification that the applicant is in compliance with all state statutes, including but not limited to section 261-12.

  (7) A written assessment by the department of the impact on the surrounding area and on the subject state airport.

  (8) Copy of a valid certificate issued by the FAA under authorization of Part 121 or 135 or any other applicable part of the Federal Aviation Regulations.

  (9) Hawaii Sectional Aeronautical Chart marked to indicate routes and altitudes to be used in conducting aerial tours and the maximum number of tours to be flown per day on each route.

  (10) "Fly Neighborly Program" developed for the proposed operation as recommended by the FAA and the Helicopter Association International showing the noise abatement procedures to be employed in the vicinity of identified noise sensitive areas and the method to be employed in responding to complaints generated by or suspected to have been generated by the applicant's aircraft.

  (11) Proof of comprehensive general liability insurance of at least five million dollars ($5,000,000.00), one million ($1,000,000.00) for gliders with capacity of no more than two passengers.

26. Defendants have issued, pursuant to Act 397 and the Hawaii Rules, forms of applications for a Permit, and true and correct copy of which is attached hereto as Exhibit "C" and incorporated herein by reference.

27. Hawaii Rules § 19-34-5 requires Plaintiffs, after they obtain a Permit, to submit to the director [Defendant HIRATA] "an application to change conditions" for each "change which affects or alters the terms and conditions of Tour Aircraft Operators Permit" in writing at least thirty days prior to the proposed change, and any such change in operations "shall not commence until written authorization has been obtained from the Department [Defendant D.O.T.].

28. Hawaii Rules § 19-34-6 requires Plaintiffs to provide mandatory insurance coverage to Defendant STATE in the amount of five million dollars ($5,000,000.00), regardless of the number of revenue seats in said powered aircraft or helicopter.

29. Hawaii Rules § 19-34-7 requires Plaintiffs, as a condition for renewing any Permit issued to them, to submit a further application to Defendant HIRATA, which application form shall be accompanied by:

> (1) An affidavit, sworn to by the applicant that it will continue to comply with the terms and conditions of the original permit, together with any such changes that have been approved in accordance with this chapter.
>
> (2) Payment of the annual permit fee of five hundred dollars.

30. Hawaii Rules § 19-34-8 allows the director [Defendant

HIRATA] to refuse to issue a permit, or to revoke a permit, if he determines that:

> (1)   There has been an abandonment of the operation as such; or

> (2)   The permittee fails to comply with the requirements in the application and the information provided therein and the terms and conditions set forth by the department in the permit;

> (3)   Any false statement or misrepresentation made by the applicant; and

> (4)   Because of a change in the physical or legal conditions or circumstances, the operation has become either unsafe or unusable for aeronautical purposes for which the permit or renewal was issued.

31.   Hawaii Rules § 19-34-10 authorize:

> Public Hearings. In connection with the issuance of a permit or renewal thereof under this chapter, the director may, on his own request, or upon the request of an affected person, hold a hearing open to the public and shall shall hold the hearing when and as required by § 261-13, Hawaii Revised Statutes.

32.   Plaintiffs have met with Defendants on numerous occasions during the past 120 days in a effort to avoid a case or controversy, and to make their legal position known to Defendants, regarding the preemption by the United States of America of each and every area of regulation sought to be imposed upon Plaintiffs by Defendants.

33.   Plaintiffs have submitted applications  for Aircraft Tour Operators Permits to Defendants, seeking to obtain such a permit and to provide any and all information requested by Defendants, in order to attempt to comply with the requests for

12

operational information by Defendants, and have submitted addenda
drafted by Plaintiff H.H.O.A. to said applications reserving such
federally-authorized rights and privileges as granted to them by
the Federal Aviation Administration and which exist by virtue of
their authority to operate in the navigable airspace of the United
States, a true and correct copy of said addenda being attached
hereto as Exhibit "D" and incorporated herein by reference.

34.   Plaintiffs have also submitted to Defendant a revised
signature page, drafted by Plaintiff H.H.O.A., a true and correct
copy of which is attached hereto as Exhibit "E" and incorporated
herein by reference, in lieu of page three of the application form
(Exhibit "C") which eliminated the statutorily unauthorized
contractual language contained in said Aircraft Tour Operators
Permit application signature, as a means of attempting to comply
with the arguably lawful requirements and demands of Act 397 and
the Hawaii Rules thereunder.

35.   Plaintiffs cannot execute the application form and
signature page as drafted by Defendants, as said page contains
contractual language arbitrarily imposed by Defendants, and not
authorized by any statute or law, which requires all applicants
for a Tour Aircraft Operators Permit to acknowledge that each:

> ..hereby agrees that, in the event a Tour
> Aircraft Operators Permit is granted, it
> *agrees it will conduct its tour
> operators as described by the
> information contained in the attached
> application, including but not limited
> to, Items 7 and 8.a through e. on the
> application.* The applicant further agrees to
> comply with all applicable FAA and *county*

13

> *requirements*, and all State and Department
> of Transportation statutes and *requirements*,
> *including but not limited to Section*
> *261-12, Hawaii Revised Statutes*, in
> consideration for the granting of a Tour
> Aircraft Operators Permit in the State of
> Hawaii for a period of one (1) year.

36.   Plaintiff cannot executed such an application form, as
such execution would constitute a statutory and contractual waiver
of the operational rights granted to Plaintiffs by the Federal
Aviation Act of 1958 and other federal statutes, and the
regulations thereunder, and Plaintiffs will suffer irreparable
harm and loss if Defendants are allowed to obstruct and/or
terminate the flight operations of Plaintiffs which are in full
conformity and compliance with the laws and regulations of the
United States governing aviation activities.

37.   Plaintiffs have attempted to obtain an interpretation
from Defendants as to the manner in which the Hawaii Rules and
other requirements will be imposed and enforced, as Defendants
recognize that Defendant STATE does not have the constitutional
power to regulate rates, routes, or services of aircraft
operations, but Defendants have refused to provide any such
information to Plaintiffs.

38.   Plaintiffs have complied with all requirements of the
application form to obtain a Tour Aircraft Operators Permit, save
and except for the execution of the signature page designated by
Defendants, and, upon information and belief, have been denied
Permits solely due to the language differences between the
signature page drafted by Plaintiff H.H.O.A. (Exhibit "E") to that

14

required by Defendants (Exhibit "C" at p. 3).

39.   Defendants have by letter dated 4 May 1990, a true and correct copy of which is attached hereto as Exhibit "F" and incorporated herein by reference, which rejected the applications submitted by Plaintiffs, and specifically objected to the revised signature page, requiring  Plaintiffs to "submit and unedited sheet #3" (Exhibit "C" at p. 3) for consideration.

40.   On 4 May 1990, Defendants issued a press release, a true and correct copy of which is attached hereto as Exhibit "G" and incorporated herein by reference, which indicated that as of 7 May 1990, Defendants would begin obstructing the flight operations of Plaintiffs.

41.   On 7 May 1990, upon information and belief, Defendants caused to be posted a numerous airports in the State of Hawaii a "Notice to Passengers", a true and correct copy of which is attached hereto as Exhibit "H" and incorporated herein by reference, which has already burdened the flight operations of Pllaintiffs by preventing passengers from boarding flights.

42.   Plaintiffs each conduct flight operations in an interstate nature, in that each of them conduct flight operations in interstate commerce, or carrying passengers travelling in interstate commerce, and operate lawfully under authority of federal law, yet the conduct of Defendants, both by Act 397, the Hawaii Rules, and the dictated contractual provisions contained in Exhibit "C", require Plaintiffs to waive and abandon their rights under the Supremacy Clause and the Commerce Clause as a condition

15

submitting an application and obtaining a Permit.

43.  As such, the provisions of Act 397, the Hawaii Rules, and the form of application mandated by Defendants violate the preemption clause of the Constitution, namely, Article VI, clause 2; said sections also violate the due process clause of the Fourteenth Amendment because said sections were enacted without duly constituted authority.

44.  Defendants have not attempted to apply the provisions of Act 397 and the Hawaii Rules to international and interstate air carriers, and further have not attempted to apply them fully to the operations of each and every inter-island carrier, despite Defendants' knowledge that each of these international, interstate, and inter-island carrier conducts aviation activities which come within statutory definition contained in Section 261-12(b) H.R.S., which  defines "tour aircraft operations" as:

> any business operation which offers aircraft for hire by passengers for the purpose of aerial observation of landmarks and other manmade and natural sites within an island of the State, and for the purpose of transporting passengers for tourist-related activities.

45.  Because of the arbitrary, discriminatory, and capricious manner in which Defendants have sought to enforce against Act 397 and the Hawaii Rules against helicopter operators, and not against others whose activities and operations are within the arguable scope of Section 261-12(b) H.R.S., Plaintiffs are being and will be denied the equal protection of the laws.

46.  An actual and continuing controversy exists relating to

Defendants' exercise of regulatory power and authority Plaintiffs' aviation activities and operations, yet Plaintiffs are not subject to any proceedings on any nature in the State of Hawaii to assert their rights and privileges, and instead are left, by the decision of Defendants to prevent access by passengers, to irreparable damages and losses without an adequate remedy.

47.   Plaintiffs will suffer immediate and irreparable injury in the event that the Defendants are allowed to obstruct the operations of Plaintiffs. Money damages will be insufficient to compensate Plaintiffs for their loss, including without limitation disruption of services, retaliation against airmen, threats to safety in air commerce, loss of goodwill, loss of market position, subjection of Plaintiffs and their airmen to inconsistent operational regulations, threats of enforcement, and exposure to multiplicious litigation.

48.   Plaintiffs, and each of them with the exception of H.H.O.A., have been denied denied an Aircraft Tour Operators Permit due to each of their assertions and efforts to protect their federally protected rights to operate in air commerce pursuant to the authority granted to them by the Federal Aviation Administration.

<u>SECOND CLAIM FOR RELIEF</u>: Commerce Clause/Federal Question/Civil Rights/Act of Congress

49.   Plaintiffs hereby incorporate all allegations above into this Second Claim for Relief, as it alleged fully herein.

50.   By reason of the foregoing, Defendants have and/or are threatening to damage Plaintiffs by their efforts to obstruct and/or burden interstate commerce, the carriage of tourists travelling in interstate commerce, and the flight operations of Plaintiffs which are of an interstate nature.

THIRD CLAIM FOR RELIEF: Due Process/Federal Question/Civil Rights/Act of Congress

51.   Plaintiffs hereby incorporate all allegations above into this Third Claim for Relief, as it alleged fully herein.

52.   By reason of the foregoing, Defendants have and/or are threatening to deny Plaintiffs the Due Process of Law, both procedurally and substantively, through the imposition of arbitrary, capricious, vague, and discriminatory regulations in an area of commerce and activity preempted by the laws and regulations of the United States.

FOURTH CLAIM FOR RELIEF: Equal Protection/Federal Question/Civil Rights/Act of Congress

53.   Plaintiffs hereby incorporate all allegations above into this Fourth Claim for Relief, as it alleged fully herein.

54.   By reason of the foregoing, Defendants have and/or are threatening to deny Plaintiffs the Equal Protection of Law through the imposition of arbitrary, capricious, vague, and discriminatory regulations in an area of commerce and activity preempted by the laws and regulations of the United States, while at the same time Defendants have not sought to apply the Act 397 and the Hawaii

18

Rules to others who come within the statutory definition contained in § 261-12(b) H.R.S.

**FIFTH CLAIM FOR RELIEF:** Privileges and Immunities Clause/Federal Question/Civil Rights

55. Plaintiffs hereby incorporate all allegations above into this Fifth Claim for Relief, as it alleged fully herein.

56. By reason of the foregoing, Defendants have and/or are threatening to deny Plaintiffs the Privileges and Immunities secured to citizens of the United States and of the several states, through the imposition of arbitrary, capricious, vague, and discriminatory regulations in an area of commerce and activity preempted by the laws and regulations of the United States, while at the same time Defendants have not sought to apply the Act 397 and the Hawaii Rules to others who come within the statutory definition contained in § 261-12(b) H.R.S.

**SIXTH CLAIM FOR RELIEF**: 49 U.S.C. § 1305/Federal Question/Civil Rights/Act of Congress

57. Plaintiffs hereby incorporate all allegations above into this Sixth Claim for Relief, as it alleged fully herein.

58. By reason of the foregoing, Defendants have and/or are threatening to violate the federal authority granted to Plaintiffs by 49 U.S.C. § 1305, and threaten to interfere and regulate areas which have been preempted by the laws and regulations of the United States of America.

**SEVENTH CLAIM FOR RELIEF:** Takings Clause/Civil Rights/Act of

19

Congress

59.  Plaintiffs hereby incorporate all allegations above into this Seventh Claim for Relief, as it alleged fully herein.

60.  By reason of the foregoing, Defendants have and/or are threatening to take the property of Plaintiffs without Due Compensation.

EIGHTH CLAIM FOR RELIEF: Civil Rights Act (42 U.S.C. § 1983)

61. Plaintiffs hereby incorporate all allegations above into this Seventh Claim for Relief, as it alleged fully herein.

62.  By reason of the foregoing, Defendants have caused Plaintiffs to be deprived of the rights, privileges and immunities secured by the Constitution of the United States.

63. By reason thereof Plaintiffs are entitled to recover their attorney's fees incurred in protecting such rights.

WHEREFORE, as to each cause of action judgment is demanded as follows:

1.  Declaratory and Injunctive relief, in the form of a Temporary Restraining Order, a Preliminary Injunction, and a Permanent Injunction, prohibiting each and every Defendant, and their agents, servants, and employees, from obstructing, contacting, or discouraging in any manner passengers of Plaintiffs at any airport under the jurisdiction of the State of Hawaii in their efforts to gain access to any Airport Operational Area (AOA) within the District of Hawaii;

2.   Declaratory and Injunctive relief, declaring null and void Act 397 and the Hawaii Rules thereunder, and prohibiting each and every Defendant, and their agents, servants, and employees, from enforcing in any manner such Act and Hawaii Rules at any airport under the jurisdiction of the State of Hawaii;

3.   Declaratory and Injunctive relief, declaring null and void any attempt by Defendants to impose contractual restrictions and and prohibiting each and every Defendant, and their agents, servants, and employees, from enforcing in any manner such Act and Hawaii Rules at any airport under the jurisdiction of the State of Hawaii;

4.   For attorneys fees and costs pursuant to 42 U.S.C. § 1988.

DATED: Honolulu, Hawaii, this 7th. day of May, 1990

DAVID BETTENCOURT
Attorney for Plaintiffs

<u>VERIFICATION</u>

STATE OF HAWAII                 )
                               )  SS:
CITY AND COUNTY OF HONOLULU     )

          DAVID BETTENCOURT, being first duly sworn on oath, deposes
and says that he has read the foregoing Verified Complaint for
Declaratory and Injunctive Relief and that the factual allegations
therein are true to the best of his knowledge, information and
belief.


                                        DAVID BETTENCOURT

Subscribed and sworn to before me
this _7th_ day of May, 1990.


Notary Public, State of Hawaii

My commission expires: _10-06-92_

A Bill for an Act Relating to Aeronautics.

*Be It Enacted by the Legislature of the State of Hawaii:*

SECTION 1. Chapter 261, Hawaii Revised Statutes, is amended by adding a new section to be appropriately designated and to read as follows:

"§261-   **Helicopter master plan; advisory committee.** (a) The legislature recognizes that air traffic congestion on the ground constitutes a serious safety problem and reduces the efficient and effective use of the limited space in airport facilities. The legislature also recognizes the increased use of airport facilities by helicopters for commercial purposes.

The legislature is determined to ensure that all possible actions are taken to promote safety, alleviate safety hazards, and reduce congestion at airports under

the State's control. The department of transportation shall do everything within its authority to enhance the safe use of the State's airports and shall cooperate with appropriate federal agencies and other affected parties to assist the agencies in meeting their responsibilities to alleviate safety hazards. In carrying out this responsibility, the department shall develop and implement a master plan, hereinafter referred to as the "helicopter master plan", for helicopter operations for each airport under the State's control.

(b) The director shall adopt a helicopter master plan for each state airport that shall include but not be limited to:

   (1)   The extent, type, nature, location, and timing of helicopter operations and helicopter facilities development at each state airport;
   (2)   The layout plans of existing and proposed helicopter facilities at each state airport;
   (3)   The determination of the maximum number of helicopters that can be accommodated at each state airport;
   (4)   The determination of the extent of emergency services, maintenance, and operations at each state airport; and
   (5)   An assessment of impact on surrounding areas.

(c) The director shall not make or permit any addition or alteration to any helicopter facilities at any state airport other than those additions or alterations in conformity with the helicopter master plan for that state airport.

(d) The helicopter master plan shall be submitted to the legislature no later than twenty days prior to the convening of the regular session of 1989, and thereafter shall be formally reviewed every five years.

(e) There is established an advisory committee within each county which shall sit in an advisory capacity to the director on matters relating to the helicopter master plan for each state airport. Each advisory committee shall consist of not more than thirteen members to be appointed by the director and whose membership shall include representatives from the helicopter industry and the communities adjacent to the airport. Each advisory committee shall be placed for administrative purposes only, within the department of transportation. Each member of an advisory committee shall serve without compensation.

(f) For the purposes of this section, "helicopter operation" means the operation of a helicopter company from an airport under the State's control."

SECTION 2. Section 261-12, Hawaii Revised Statutes, is amended to read as follows:

"§261-12 **Rules, standards.** (a) Powers to adopt. The director of transportation may perform such acts, issue and amend such orders, adopt such reasonable general or special rules and procedures, and establish such minimum standards, consistent with this chapter, as the director deems necessary to carry out this chapter and to perform the duties assigned thereunder, all commensurate with and for the purpose of protecting and insuring the general public interest and safety, the safety of persons operating, using, or traveling in aircraft, and the safety of persons and property on land or water, and developing and promoting aeronautics in the State. No rule of the director shall apply to airports or air navigation facilities owned or operated by the United States.

In furtherance of the duties assigned under this chapter, the director may adopt rules relating to:

   (1)   Safety measures, requirements and practices in or about the airport premises;

A-1

EXHIBIT _A_

(2)   The l   sing and regulation of persons engaged in commercial activ-
ities in or about the airport premises;

(3)   The regulation of equipment and motor vehicles operated in or about
the airport operational area;

(4)   Airport security measures or requirements, and designation of sterile
passenger holding areas and operational areas;

(5)   The regulation of motor vehicles and traffic;

(6)   Any other matter relating to the health, safety and welfare of the general
public and persons operating, using, or traveling in aircraft.

(b) Any other law to the contrary notwithstanding, no tour aircraft operation
shall be permitted in any airport under the State's control without first obtaining a
permit. The director shall adopt rules to regulate tour aircraft operations by permit
which shall include but not be limited to:

(1)   Identification of the types of aircraft to be utilized;

(2)   The number of operations daily for each type of aircraft used and the
days and hours of operation;

(3)   Verification that the applicant is in compliance with all state statutes,
including but not limited to section 261-12;

(4)   A written assessment by the department of the impact to the surrounding
area and to the subject state airport;

(5)   Revocation of a permit based on the failure to comply with the infor-
mation provided by the applicant and the terms and conditions set forth
by the department in the permit; and any false statement or misrepre-
sentation made by the applicant;

(6)   Establishment of penalties for revocation and suspension of a permit
for failure to comply with permit conditions;

(7)   Annual renewal of permits; and

(8)   Any change of operations under the existing permit to be approved by
the director.

No permit shall be authorized unless accompanied by:

(1)   A Hawaii sectional aeronautical chart marked to indicate routes and
altitudes to be used in conducting aerial tours; and

(2)   Noise abatement procedures to be employed in the vicinity of identified
noise sensitive areas.

For the purposes of this subsection, "tour aircraft operations" means any
business operation which offers aircraft for hire by passengers for the purpose of
aerial observation of landmarks and other manmade or natural sites within an island
of the State, and for the purpose of transporting passengers for tourist-related
activities.

[(b)] (c) Definitions. For the purpose of this section, if not inconsistent with
the context:

"Sterile passenger holding area" means any portion of a public airport
designated by the director and identified by appropriate signs as an area into which
access is conditioned upon the prior inspection of persons and property in accordance
with the approved Federal Aviation Administration air carrier screening program.

"Operational area" means any portion of a public airport, from which access
by the public is prohibited by fences or appropriate signs, and which is not leased
or demised to anyone for exclusive use and includes runways, taxiways, all ramps,
cargo ramps and apron areas, aircraft parking and storage areas, fuel storage areas,
maintenance areas, and any other area of a public airport used or intended to be
used for landing, takeoff or surface maneuvering of aircraft or used for embarkation
or debarkation of passengers.

Notwithstanding the restriction on access by the public into operational areas,
entry may be authorized for airport operational area related purposes with the prior
permission of the director or the director's duly authorized representative.

[(c)] (d) Conformity to federal legislation and rules. No rules, orders, or
standards prescribed by the director shall be inconsistent with, or contrary to, any
act of the Congress of the United States or any regulation promulgated or standard
established pursuant thereto.

[(d)] (e) How made. All rules having the force and effect of law, shall be
adopted by the director pursuant to chapter 91.

[(e)] (f) Distribution. The director shall provide for the publication and
general distribution of all of its rules and procedures having general effect."

SECTION 3. If any provision of this Act, or the application thereof to any
person or circumstance is held invalid, the invalidity does not affect other provisions
or applications of the Act which can be given effect without the invalid provisions
or application, and to this end the provisions of this Act are severable.

A-2

SECTION 4. Statutory material to be repealed is bracketed. New statutory material is underscored.[1]

SECTION 5. This Act shall take effect upon its approval; provided that Section 2 of this Act shall take effect January 1, 1989.

(Approved June 17, 1988.)

**Note**

1. Edited pursuant to HRS §23G-16.5.

§19-34-1

HAWAII ADMINISTRATIVE RULES

TITLE 19

DEPARTMENT OF TRANSPORTATION

SUBTITLE 2

AIRPORTS DIVISION

CHAPTER 34

TOUR AIRCRAFT OPERATIONS AT PUBLIC AIRPORTS

§19-34-1   Definitions
§19-34-2   Permit or authorization required
§19-34-3   Fee
§19-34-4   Application for Tour Aircraft Operators Permit
§19-34-5   Change in operation
§19-34-6   Insurance
§19-34-7   Renewals
§19-34-8   Revocation
§19-34-9   Transferability
§19-34-10  Public hearings
§19-34-11  Severability
§19-34-12  Penalties

§19-34-1  Definitions.  Unless the context clearly indicates otherwise, as used in this chapter:
"Air operations area" means that portion of a public airport designed and used for the landing, takeoff, or surface maneuvering of airplanes and includes the gate positions, ramps, and apron areas.
"Department" means the department of transportation of the State.
"Director" means the director of transportation of the State or his authorized representative.
"FAA" means the Federal Aviation Administration of the United States.
"Operational area" means any portion of a public airport, from which access by the public is prohibited by fences or appropriate signs, and which is not leased or demised to anyone for exclusive use and includes runways, taxiways, all ramps, cargo ramps and apron areas, aircraft parking and storage areas, fuel storage areas, maintenance

EXHIBIT B

areas, and any other area of a public airport used or
intended to be used for embarkation or debarkation of
passengers.
    "Permittee" means any person providing tour aircraft
services to or from a public airport under a permit or
other written authorization from the department.
    "Person" means any individual, firm, partnership,
corporation, trust, association, company, joint venture, or
any other legal entity (including any assignee, receiver,
trustee, employee, or similar representative).
    "Public airport" means that area of land and water
under State jurisdiction which is used for landing and
takeoff of aircraft, and any appurtenant areas which are
used for airport buildings or other airport facilities or
rights-of-way, together with all airport buildings and
facilities located thereon.
    "State" means the State of Hawaii.
    "Tour aircraft" means an aircraft used at any airport
for the purpose of conducting commercial sightseeing
activities by air.
    "Tour aircraft operations" means any business
operation which offers aircraft for hire by passengers for
the purpose of aerial observation of landmarks and other
man-made or natural sites within an island of the State,
and for the purpose of transporting passengers for
tourist-related activities. [Eff OCT 06 1989 ] (Auth:  HRS
§261-12) (Imp:  HRS §261-12)


    §19-34-2  Permit or authorization required.  All tour
aircraft operators shall, within one hundred and eighty
days of adoption of this chapter make application for a
Tour Aircraft Operators Permit.  One hundred and eighty
days after the adoption of this chapter it shall be
unlawful for any person to conduct tour aircraft operations
on any airport under the State's control without first
having obtained a Tour Aircraft Operators Permit from the
department.  [Eff OCT 06 1989 ] (Auth:  HRS §261-12)
(Imp:§261-12)


    §19-34-3  Fee.  The fee for a Tour Aircraft Operators
Permit shall be $500 in advance.  Such permit shall be
valid for a period of one (1) year from the date of
issuance unless sooner revoked or terminated.
[Eff OCT 06 1989 ] (Auth:  HRS §261-12) (Imp:  HRS §261-12)

§19-34-4  Application for Tour Aircraft Operators
Permit.  An application for a Tour Aircraft Operators
Permit shall be submitted in such form as the director may
prescribe and shall be accompanied by drawings, descriptive
data and reports, FAA certificates and other data as
required to verify compliance with the provisions of this
chapter, and contractual conditions for issuance of a
permit.  In addition the application shall contain the
following:

(1)  Company name.
(2)  Owner or Operator name.
(3)  Base of operation.
(4)  Identification of all aircraft to be operated
     under the permit, including FAA registration
     number, color, make and model number.
(5)  The number of daily operations for each type of
     aircraft used and the days and hours of
     operation.
(6)  Verification that the applicant is in compliance
     with all state statutes, including but not
     limited to section 261-12.
(7)  A written assessment by the department of the
     impact on the surrounding area and on the subject
     state airport.
(8)  Copy of a valid certificate issued by the FAA
     under authorization of Part 121 or 135 or any
     other applicable part of the Federal Aviation
     Regulations.
(9)  Hawaii Sectional Aeronautical Chart marked to
     indicate routes and altitudes to be used in
     conducting aerial tours and the maximum number of
     tours to be flown per day on each route.
(10) "Fly Neighborly Program" developed for the
     proposed operation as recommended by the FAA and
     the Helicopter Association International showing
     the noise abatement procedures to be employed in
     the vicinity of identified noise sensitive areas
     and the method to be employed in responding to
     complaints generated by or suspected to have been
     generated by the applicant's aircraft.
(11) Proof of comprehensive general liability
     insurance of at least five million dollars
     ($5,000,000.00), one million ($1,000,000) for
     gliders with capacity or no more than two
     passengers.  [Eff   OCT 06 1989
     (Auth:  HRS §261-12) (Imp:  HRS §261-12)

§19-34-5  Change in operation.  (a)  Any change which affects or alters the terms and conditions of the Tour Aircraft Operators Permit shall be submitted to the director for approval before such changes in the permit are effective.

(b)  Any application to change conditions under which the permit was issued shall be submitted in writing to the director at least thirty days prior to the proposed change and shall not commence until written authorization has been obtained from the department.  [Eff OCT 06 1989] (Auth: HRS §261-12) (Imp:  HRS §261-12)

§19-34-6  Insurance.  (a)  No Tour Aircraft Operators Permit shall be issued by the department unless the applicant has in effect comprehensive general liability insurance which covers the service provided by the applicant at the location specified in the application.

(b)  With the exception of tour glider operation, the minimum limit for comprehensive general liability coverage maintained by the applicant shall be a combined single limit of liability for bodily injury and property damages of five million dollars ($5,000,000).

(c)  The minimum limit that will be maintained by the applicant for comprehensive general liability coverage for tour glider operation that operates with gliders limited to two passengers per flight shall be a combined single limit of liability for bodily injury and property damages of one million dollars ($1,000,000).

b (d)  Such insurance policy shall indemnify the State from all claims including, but not limited to personal injury, death or property damage arising from the use by the applicant of the airport for which a permit has been issued and shall meet the requirements set forth herein and shall not be cancellable with less than thirty days written notice to the department.

C (e)  Any cancellation or suspension of the applicant's insurance for which a permit has been issued shall constitute good cause for revocation of the permit by the director.  All insurance policies shall be issued by an insurance company duly authorized to do business in the State and maintaining an office, or be represented by an authorized agent in the State.

d (f)  Proof of insurance may be accomplished by filing with department any one of the following:

(1)  A certified original copy of the policy;

(2)  An abstract of the original policy signed by the
issuing company; or
(3)  A certificate of insurance, including the policy
limits, attested to by the insurer. [Eff OCT 06 1989 ]
(Auth: HRS §261-12)(Imp: HRS §261-12)


§19-34-7  Renewals.  (a)  The holder of a Tour
Aircraft Operators Permit issued under the provisions of
this chapter must apply for a permit renewal,if he or she
intends to continue tour aircraft operations.
    (b)  Each permittee desiring to renew its Tour
Aircraft Operators Permit shall make application on forms
provided by the director at least sixty days prior to the
expiration date of the permit.  The application shall be
accompanied by the following:
    (1)  An affidavit, sworn to by the applicant that it
         will continue to comply with the terms and
         conditions of the original permit, together with
         any such changes that have been approved in
         accordance with this chapter.
    (2)  Payment of the annual permit fee of five hundred
         dollars.  [Eff OCT 06 1989] ( Auth:  HRS §261-12)
         (Imp:  HRS §261-12)


§19-34-8  Revocation.  The director may, after notice
and opportunity for hearing to the permittee, revoke any
permit, whether original or renewal, or refuse to issue a
renewal when he determines that:
    (1)  There has been an abandonment of the operation as
         such; or
    (2)  The permittee fails to comply with the
         requirements in the application and the
         information provided therein and the terms and
         conditions set forth by the department in the
         permit;
    (3)  Any false statement or misrepresentation made by
         the applicant; and
    (4)  Because of a change in the physical or legal
         conditions or circumstances, the operation has
         become either unsafe or unusable for aeronautical
         purposes for which the permit or renewal was
         issued.  [Eff OCT 06 1989] (Auth:  HRS §261-12)
         (Imp:  HRS §261-12)

§19-34-9  <u>Transferability.</u>  A permit issued pursuant to this chapter may be sold, transferred or assigned, provided that the permittee gives written notice to the department at least thirty (30) days prior to any sale, transfer or assignment and further provided that such permittee is in compliance with the terms and conditions of the permit.  [Eff OCT 06 1989 ] (Auth:  HRS §261-12) (Imp: HRS §261-12)

§19-34-10  <u>Public hearings.</u>  In connection with the issuance of a permit or renewal thereof under this chapter, the director may, on his own, or upon the request of an affected person, hold a hearing open to the public and shall hold the hearing when and as required by §261-13, Hawaii Revised Statutes.  [Eff OCT 06 1989 ] (Auth:  HRS §261-12) (Imp:  HRS §261-12)

§19-34-11  <u>Severability.</u>  These rules are hereby declared to be severable and if any portion or the application thereof to any person, circumstance or property is held to be invalid for any reason, the validity of the remainder of these rules or that of the application of such remainder to other persons, circumstances or property shall not be affected.  [Eff OCT 06 1989 ] (Auth:  HRS §261-12) (Imp:  HRS §261-12)

§19-34-12  <u>Penalties.</u>  Penalties for violation of any of these rules shall be as set forth in §261-21, Hawaii Revised Statutes.  [Eff OCT 06 1989 ] (Auth:  HRS §261-12) (Imp:  HRS §261-21)

REV. 11/20/89

STATE OF HAWAII
DEPARTMENT OF TRANSPORTATION
AIRPORTS DIVISION

APPLICATION FOR TOUR AIRCRAFT OPERATORS PERMIT

1.  Company Name: _____

2.  Owner/Operator Name: _____

3.  Mailing Address: _____

    _____

*[NOTE:  Items 4 thru 7 must be repeated if more than one airport is used
as a base of operation.  Use the supplemental form provided.]*

4(A). Base of Operation: _____

5(A). Contact Person: _____

      Title: _____  Phone: _____

6(A). Number of tour aircraft to be used: _____

      Type of aircraft (fixed wing, helicopter): _____

      Using the attached form, provide the following information for
      each tour aircraft to be used:  FAA aircraft registration number,
      registered owner, make, model number, color, maximum gross takeoff
      weight, maximum gross landing weight, number of passenger seats,
      and base location of aircraft.

7(A). Expected average number of daily operations
      at the airport for all tour aircraft: _____
      (Take-offs and landings count as separate operations)

      Expected maximum number of daily operations
      at the airport for all tour aircraft: _____

      Days and hours of operation: _____

                                                Sheet 1 of ___

================================================================

*INTERNAL USE ONLY:*

*Application No.:* _____    *Date Accepted:* _____

*Date received:* _____      *Accepted By:* _____

EXHIBIT _C_

8.  Submit one (1) copy of this application and all supporting
    documents indicated below:

    a.  Copy of the certificate issued by the FAA as provided by
        Part 121 or 135 or any other applicable part of the Federal
        Aviation Regulations.

    b.  Hawaii Aeronautical Sectional Chart marked to indicate:

            (1)  routes and direction of flights, and
            (2)  altitudes.

    c.  Island-scale U.S. Geological Survey maps also marked to
        indicate:

            (1)  routes and direction of flights,
            (2)  altitudes,
            (3)  average number of daily operations along each
                 route, and
            (4)  inclement weather routes.

        The following maps are to be used:
        Maui:     "Topographic Map of the Island of Maui", Scale
                  1:62,500 (U.S. Geological Survey, Rev. 1961).
                  For routes between Maui, Molokai and Lanai, use
                  "Maui, Hawaii", Scale 1:250,000 (U.S. Geological
                  Survey, Compiled 1962).
        Kauai:    Kauai County, Hawaii, Scale 1:100,000 (U.S.
                  Geological Survey, 1980.
        Hawaii:   Island of Hawaii, Scale 1:250,000 (U.S.
                  Geological Survey, Compiled 1975).
        Oahu:     Island of Oahu, Scale 1:62,500 (U.S. Geological
                  Survey, Compiled 1971).

    d.  "Fly Neighborly Program" or its equivalent, including:

            (1)  Noise abatement procedures to be employed in the
                 vicinity of identified noise sensitive areas, and

            (2)  Procedures to be used in responding to complaints
                 generated by or suspected to be generated by your
                 aircraft.

    e.  Proof of insurance in the amount of at least $5,000,000.00
        for all tour aircraft except for gliders which amount is
        $1,000,000.00 indemnifying and naming as additional insured
        the State of Hawaii.

                                                Sheet 2 of ___

THE STATE OF HAWAII
DEPARTMENT OF TRANSPORTATION

The undersigned applicant, _____,

acting by and through its duly authorized officer _____

_____, hereby agrees that, in the event a Tour
Aircraft Operators Permit is granted, it agrees it will conduct its tour
operations as described by the information contained in the attached
application, including but not limited to, Items 7 and 8.a. through e.
on the application.  The applicant further agrees to comply with all
applicable FAA and county requirements, and all State and Department of
Transportation statutes and requirements, including but not limited to
Section 261-12, Hawaii Revised Statutes, in consideration for the
granting of a Tour Aircraft Operators Permit in the State of Hawaii for
a period of one (1) year.

The undersigned further states that all information contained in the
application and attachments hereby submitted is true and correct to the
best of his knowledge.

                                    _____
                                           Applicant

                               By   _____
                                        Name of Officer

                                    _____
                                             Title

                                    _____
                                             Date

APPROVAL/DISAPPROVAL RECOMMENDED


_____   _____
AIRPORTS ADMINISTRATOR      DATE


APPROVED/DISAPPROVED


_____   _____
DIRECTOR OF TRANSPORTATION   DATE


                                              Sheet 3 of ___

APPLICATION FOR TOUR AIRCRAFT OPERATORS PERMIT

OPERATIONAL DATA FOR ADDITIONAL AIRPORTS USED
(Use only if tour operations are based at more than one airport.
Duplicate additional sheets if necessary.)

4(B). Base of Operation: _____

5(B). Contact Person: _____

      Title: _____  Phone: _____

6(B). Number of tour aircraft to be used: _____

      Type of aircraft (fixed wing, helicopter): _____

7(B). Expected average number of daily operations
      at the airport for all tour aircraft: _____
      (Take-offs and landings count as separate operations)

      Expected maximum number of daily operations
      at the airport for all tour aircraft: _____

      Days and hours of operation: _____

------------------------------------------------------------------------

4(C). Base of Operation: _____

5(C). Contact Person: _____

      Title: _____  Phone: _____

6(C). Number of tour aircraft to be used: _____

      Type of aircraft (fixed wing, helicopter): _____

7(C). Expected average number of daily operations
      at the airport for all tour aircraft: _____
      (Take-offs and landings count as separate operations)

      Expected maximum number of daily operations
      at the airport for all tour aircraft: _____

      Days and hours of operation: _____

Sheet __ of __

APPLICATION FOR TOUR AIRCRAFT OPERATORS PERMIT

LISTING OF TOUR AIRCRAFT
(Duplicate additional sheets if necessary)

a.   FAA aircraft registration number:   _____
b.   Registered owner:   _____
c.   Make:   _____
d.   Model number:   _____
e.   Color:   _____
f.   Maximum gross takeoff weight:   _____
g.   Maximum gross landing weight:   _____
h.   Number of passenger seats:   _____
i.   Location of aircraft:   _____


a.   FAA aircraft registration number:   _____
b.   Registered owner:   _____
c.   Make:   _____
d.   Model number:   _____
e.   Color:   _____
f.   Maximum gross takeoff weight:   _____
g.   Maximum gross landing weight:   _____
h.   Number of passenger seats:   _____
i.   Location of aircraft:   _____

a.   FAA aircraft registration number:   _____
b.   Registered owner:   _____
c.   Make:   _____
d.   Model number:   _____
e.   Color:   _____
f.   Maximum gross takeoff weight:   _____
g.   Maximum gross landing weight:   _____
h.   Number of passenger seats:   _____
i.   Location of aircraft:   _____

Sheet __ of __

**NOTE 4(A):** "Base location of aircraft", as used herein, designates the ordinary and customary base location of the aircraft, and does not restrict in any manner the Applicants operation of said aircraft from other temporary or permanent locations, either located on the same island, on a different island, or between any islands, as authorized and/or allowed pursuant to the authority granted to the Applicant by the Federal Aviation Act of 1958, as amended, and Chapter 261 HRS. The addition of aircraft operations, either temporary or permanent, is in no way restricted by designation of certain customary and ordinary bases of operation. Applicant contemplates operations from other locations in the normal course of business and operations, either on the same island as the ordinary and customary base of operations, or in different locations.

This data is provided for informational and safety purposes, and is not to be construed as a limitation of any federally-protected right of air transit and commerce from any bases of operation as Applicant deems necessary or expedient, nor does it create or constitute any restriction upon the allowable operations of Applicant. Applicant engages in transient aircraft operations at and/or to locations other than its base of operations, as a "Tour Aircraft" and otherwise, and designation of a base of operations for each aircraft is not intended in any manner to limit or prohibit the operation of said aircraft at or from other locations.

**NOTE 6(A):** "Number of aircraft used", as used herein, designates the number of aircraft presently operated by Applicant on a customary and ordinary business basis, which number is subject to change, as authorized and/or allowed pursuant to the authority granted to the Applicant by the Federal Aviation Act of 1958, as amended, and Chapter 261 HRS. The addition of aircraft pursuant to purchase, lease, joint operational agreement, transfer from other base or bases of operation, or otherwise, for Applicant's operations is in no way restricted, other than the addition of additional aircraft shall be in conformity with the Federal Aviation Regulations.

This data is provided for informational and safety purposes, and is not to be construed as a limitation of any federally-protected right of air transit and commerce, nor does it create or constitute any restriction upon the allowable operations of Applicant. The identification information provided herein for each aircraft to be used



EXHIBIT _____ D _____

refers to those aircraft owned, leased or operated by Applicant on the date of application, or reasonably expected to be operated within sixty (60) days.

**NOTE 7(A):** "Expected average number of daily operations", as used herein, designates the Applicant's estimate based upon customary and ordinary operational conditions, and assumes operational availability of all aircraft used by Applicant. It is provided for informational and safety purposes, and is not to be construed as a limitation of any federally-protected right of air transit and commerce, nor does it create or constitute any restriction upon the allowable operations of Applicant.

"Expected maximum number of a daily operations", as used herein, designates the Applicant's estimate based upon peak demand operational conditions, and assumes operational availability of all aircraft used or specifically placed into service by Applicant. It is provided for informational and safety purposes, and is not to be construed as a limitation of any federally-protected right of air transit and commerce, nor does it create or constitute any restriction upon the allowable operations of Applicant.

"Days and hours of operation", as used herein, designates the Applicant's estimate based upon customary and ordinary operational conditions, and assumes operational availability of all aircraft used by Applicant. It is provided for informational and safety purposes, and is not to be construed as a limitation of any federally-protected right of air transit and commerce, nor does it create or constitute any restriction upon the allowable operations of Applicant.

Additionally, pursuant to the authority granted to the Applicant by the Federal Aviation Act of 1958, as amended, and Chapter 261 HRS, Applicant also operates point-to-point transportation of passengers-for-hire, specialized tour operations, news-gathering operations, government operations flights, training flights, and maintenance flights, each of which require discretionary "Days and hours of operation" to be determined only on an as-needed operational basis by Applicant.

**NOTE 8(b)(1):** "Routes", as used herein, designates the customary and ordinary centerline of the pre-determined tour flight operations conducted by the Applicant. The width of the "Route" extends four nautical miles on either side of this centerline. "Direction of Flights", as used herein,

designates the customary and ordinary headings and/or ground tracks of the pre-determined tour flight operations conducted by Applicant. The "Routes" and "Directions of Flights", as designated herein, are also dependent upon other traffic, weather, wind, lighting conditions, and other factors which may require or justify diversion at the discretion of the pilot in command. They are provided for informational and safety purposes, and are not to be construed as limitations of any federally-protected right of air transit and commerce.

Additionally, pursuant to the authority granted to the Applicant by the Federal Aviation Act of 1958, as amended, and Chapter 261 HRS, Applicant also operates point-to-point transportation of passengers-for-hire, specialized tour operations, news-gathering operations, government operations flights, training flights, and maintenance flights, each of which require discretionary "Routes" and "Direction of Flights" to be determined only on an as-needed operational basis by Applicant.

**NOTE 8(b)(2):** "Altitudes", as used herein, designates the the customary and ordinary range of altitudes authorized by Applicant's operations manual and/or the operational authority conferred upon applicant by the Federal Aviations Act of 1958, as amended, and Chapter 261 HRS, of the Federal Aviation Regulations promulgated thereunder.

**NOTE 8(c)(1):** See **NOTE 8(b)(1)** above.

**NOTE 8(c)(2):** See **NOTE 8(b)(2)** above.

**NOTE 8(c)(3):** The "average number of daily operation" designates the average for peak demand for the combined operations of Applicant from the designated airport, on a daily basis. Applicant cannot specify the "average number of daily operations" along each "Route" due to the number of variables applicable to operational decisions, which decisions must be made by Applicant's Director of Operations and/or the Pilot in Command of Applicant's aircraft. The "average number of daily operations" is also dependent upon demand, weather, availability of aircraft, and seasonal factors.

**NOTE 8(c)(4):** "Inclement weather routes", as used herein, designates the customary and ordinary centerline of the normal pre-determined tour flight operations conducted by

applicant, with such diversions as are required and/or
advisable in the discretion of Applicant to accommodate other
traffic, weather, wind, lighting conditions, and other
factors which may require or justify diversion at the
discretion of the pilot in command. They are provided for
informational and safety purposes, and are not to be
construed as limitations of any federally-protected right of
air transit and commerce.

Additionally, pursuant to the authority granted to the
Applicant by the Federal Aviation Act of 1958, as amended,
and Chapter 261 HRS, Applicant also operates point-to-point
transportation of passengers-for-hire, specialized tour
operations, government operations flights, training flights,
and maintenance flights, each of which require discretionary
"Inclement weather routes" to be determined only on an as-
needed operational basis by Applicant, in conformity with the
applicable Federal Aviation Regulations, 14 CFR §§ 91, 133,
and 135.

**NOTE 8(d)(1):**   "Fly Neighborly Program", as used herein,
designates the voluntary procedures, guidelines, and goals
adopted by Applicant to institute reasonable parameters for
flight operations to voluntarily accommodate community
concerns over aircraft noise. It is provided for
informational and safety purposes, and is not to be construed
as a limitation of any federally-protected right of air
transit and commerce, nor does the voluntary adoption of said
"Fly Neighborly Program" create any rights or privileges for
the State of Hawaii or any third-party.

**NOTE 8(d)(2):**  The "Complaint Response Procedure", as used
herein, designates the voluntary procedures, guidelines, and
goals adopted by Applicant to to voluntarily provide
information and/or assistance to the State of Hawaii and/or
any third-parties regarding the Applicant's operations, when
requested in writing to do so by the State of Hawaii after
reception of citizen complaints over aircraft noise. It is
provided for informational and safety purposes, and is not to
be construed as a limitation of any federally-protected right
of air transit and commerce, nor does the voluntary adoption
of said "Complaint Response Procedure"  create any rights or
privileges for the State of Hawaii or any third-party.

**NOTE 8(e):** "Proof of Insurance", as used herein, designates
the Applicant's policies of insurance utilized to comply with

the requirements imposed by the Federal Aviation Regulations and/or the business judgment by the Applicant. This "Proof of Insurance", to the extend that it exceeds and/or differs from the coverage required by the Federal Aviation Regulations and/or the business judgment of the Applicant, is purely voluntary, and creates no rights or privileges for the State of Hawaii or any third-party. This "Proof of Insurance" is also dependent upon the availability of such coverage at reasonable commercial rates from insurers authorized to do business in the State of Hawaii.

As long as it is commercially reasonable to do so, Applicant voluntarily agrees to designate the State of Hawaii as additional insured in its policies of insurance, as the sole means of providing indemnification to the State of Hawaii. This additional insured designation is also dependent upon the availability of such additional insured coverage at reasonable commercial rates from insurers authorized to do business in the State of Hawaii.

THE STATE OF HAWAII
DEPARTMENT OF TRANSPORTATION

    The undersigned Applicant, _____,

acting by and through its duly authorized officer _____

_____, hereby agrees that, in the event
Tour Aircraft Operators Permit is granted, it will conduct
its tour operations in conformity with its operational
authority pursuant to the Federal Aviation Act of 1958, as
amended, together with the Federal Aviation Regulations
promulgated thereunder, and all valid statutes and
regulations of the Department of Transportation, State of
Hawaii.

The undersigned further states that all information contained
in the application and attachments hereby submitted is true
and correct to the best of his knowledge.

                                        _____
                                                  Applicant

                         By_____
                                        Name of Officer

                                      _____
                                                    Title

                                      _____
                                               Date

APPROVAL/DISAPPROVAL RECOMMENDED


_____   _____
AIRPORTS ADMINISTRATOR          DATE

APPROVED/DISAPPROVED


_____   _____
DIRECTOR OF TRANSPORTATION      DATE


EXHIBIT _E_

JOHN WAIHEE
GOVERNOR



EDWARD Y. HIRATA
DIRECTOR

DEPUTY DIRECTORS
DAN T. KOCHI (PRIMARY)
RONALD N. HIRANO
JEANNE K. SCHULTZ
CALVIN M. TSUDA

IN REPLY REFER TO:

**STATE OF HAWAII**
**DEPARTMENT OF TRANSPORTATION**
**AIRPORTS DIVISION**

HONOLULU INTERNATIONAL AIRPORT • HONOLULU, HAWAII 96819

AIR-EP
90.2038

May 4, 1990

PAPILLON HAWAIIAN HELICOPTERS
Discovery Bay Center
1778 Ala Moana Boulevard, Suite LL-12
Honolulu, HI  96815

Dear Applicant:

SUBJECT:  Tour Aircraft Operators Permit

Your application for a Tour Aircraft Operators Permit has
not been accepted for processing at this time because of
information deficiencies as noted below.

Please address the indicated areas and resubmit the
requested information no later than May 7, 1990.

[X]  1.  Application form completely and legibly filled out
         and signed.  There should be additional sheets
         completed for:  (a) operators with multiple
         aircraft, and /or (b) operators with more than one
         base of operations.

[ ]  2.  Copies of certificates issued by the FAA as
         provided by Part 121 or 135 or any other
         applicable part of the FARs.

[X]  3.  Hawaii Aeronautical Sectional Chart marked to
         indicate routes and direction of flights, and
         altitudes.

[X]  4.  Island-scale USGS maps also marked to indicate:
         routes and direction of flights, altitudes,
         average daily operations along each route, and
         inclement weather routes.


EXHIBIT___F___

PAPILLON HAWAIIAN HELICOPTERS                          AIR-EP
Page 2                                                  90.2038
May 4, 1990


[X]  5.   "Fly Neighborly Program" or its equivalent,
          including:

          (a)   Noise abatement procedures to be employed in
                the vicinity of identified noise sensitive
                areas, and
          (b)   Procedures to be used in responding to
                complaints.

[ ]  6.   Proof of insurance in the amount of $5,000,000
          (for gliders, $1,000,000) identifying and naming
          as additional insured the State of Hawaii.


SPECIFIC ITEMS TO BE PROVIDED:

Item #1:  Submit unedited Sheet #3 and certification.

Items #3 & #4:  Submit maps with required information.

Item #5:  Indicate or describe response to complaints.



Airports Administrator _____ Date 5/4/90


Please submit requested items to:

                    State of Hawaii
                    Department of Transportation
                    Airports Division
                    Honolulu International Airport
                    Honolulu, Hawaii  96819
                    Attention: Dean Nakagawa

STATE OF HAWAII
DEPARTMENT OF TRANSPORTATION
AIRPORTS DIVISION
HONOLULU INTERNATIONAL AIRPORT
HONOLULU, HAWAII 96819

RETURN RECEIPT REQUESTED

CERTIFIED
MAIL

113619

PAPILLON HAWAIIAN HELICOPTERS
Discovery Bay Center
1778 Ala Moana Boulevard
Suite LL-12
Honolulu, Hawaii  96815

Rec'd 5/5/90
per



No. 418024

Rerun
2ND Notice
Delivery 1st Att.
Hold



**JOHN WAIHEE**
Governor

# NEWS RELEASE

**DEPARTMENT OF TRANSPORTATION**

Marilyn Kali, Information Officer
(808)-548-226■

May 4, 1990                                          90-106

The state Department of Transportation announced today that it will begin enforcing its Tour Aircraft Rules at all state airports effective Monday, May 7.

The DOT met with the Federal Aviation Administration on Friday, May 4 to discuss concerns that air tour operators had raised about the rules.

"The FAA does not object to a permit system for tour operations," said DOT Director Edward Y. Hirata. "They have no problem with our intent to obtain information on where tour operators fly. They were sympathetic with our desire to reduce the noise impact of tour operations on residential communities.

"We have assured the FAA that we don't intend to regulate routes or altitudes and that we will not be taking any action against operators based on the routes or altitudes they list in their applications.

"The FAA felt that some of the language in the Administrative Rules relating to Tour Aircraft Operations at Public Airports was ambiguous. We have assured them that we will be making changes to the rules to address these areas. However, they don't have any problems with the manner in which the regulations are to be implemented."

EXHIBIT ___G___

The implementation of the rules was delayed on April 24 at the request of the FAA.  The rules will be implemented on May 7 based on today's meeting with the FAA.  However, the FAA will be responding back to the department in writing at a later date.

Representing the FAA at the meeting were Carl B. Schellenberg, Deputy Regional FAA Administrator, Western-Pacific Region; David L. Bennett, Manager, Airspace and Air Traffic Law Branch, Washington, D.C. and Dewitte T. Lawson Jr., Assistant Chief Counsel, Western-Pacific Region.

The FAA strongly encouraged air tour operators to work closely with the state to resolve any noise problems associated with air tour operations.

To date, the DOT has issued Tour Aircraft Operators Permits to six helicopter companies and nine fixed wing operators.

Helicopter companies that have been issued permits include Dragonfly Helicopters Inc., Lacy Helicopters, Big Island; Bali Hai Helicopters, Jack Harter Helicopters, South Sea Helicopters and Wil Squyres Helicopters, Kauai.

Fixed wing operators that have obtained permits are Adventure Air Safaris, Hawaii Air Ventures, Inc. and Classic Aviation, Big Island; Fly Kauai, Tradewind Gliders, Kauai; Soar Maui, Inc., Maui; Lani Bird/Scenic Air Tours, all islands; and Aloha Island Air and Hawaiian Air, Oahu.

The DOT plans to post signs at all airports on Monday listing operators that have all the necessary permits to conduct air tour businesses on that airport.  Operators without permits will not be allowed to conduct air tour business on state airports.

Hirata urged all air tour companies that haven't obtained a
license to submit their applications to DOT as soon as possible.

# Notice to Passengers

The following companies have complied with all provisions of Hawaii Administrative Rules Chapter 19-34 and have been issued Tour Aircraft Operators Permits to conduct air tours from airports operated by the State of Hawaii on the Island of Hawaii.

**Adventure Air Safaris**
**Aloha Island Air**
**Big Island Air**
**Classic Aviation**
**Dragonfly Helicopters Inc.**
**Hawaii Air Adventures Inc.**
**Hawaiian Air**
**Lacy Helicopters**
**Lani Bird/Scenic Air Tours**
**Panorama Air**

Companies without a permit may not conduct an air tour business from a state airport. If you hold tickets for an air tour with a company not listed above, you will not be allowed into the airport operating area.

**State of Hawaii**      **Department of Transportation**      **May 7, 1990**



EXHIBIT___H___

DAVID BETTENCOURT  970
TERRITORIAL LAW OFFICE SUITE
Suite 400, Stangenwald Building
119 Merchant Street
Honolulu, Hawaii  96813
Telephone:  521-3491

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII HELICOPTER OPERATORS ) | CIVIL NO. _____ |
| ASSOCIATION, INC., a Hawaii ) | |
| corporation; OHANA AVIATION, ) | |
| INC., a Hawaii corporation, dba) | |
| OHANA HELICOPTERS; BOGERT ) | |
| KEALOHA; HAWAII INTERNATIONAL ) | SUMMONS IN A CIVIL ACTION |
| HELICOPTERS, a Hawaii ) | |
| Corporation; CLARENCE KANAE; ) | |
| IO AVIATION HELICOPTERS, a ) | |
| a Hawaii Corporation; WILLIAM ) | |
| SIMON; KENAI AIR OF  HAWAII, ) | |
| INC. a Hawaii Corporation; ) | |
| CHRISTY JOHNSON, SAFARI ) | |
| AVIATION, INC.,  a Hawaii ) | |
| Corporation, dba SAFARI ) | |
| HELICOPTERS; and PRESTON MYERS ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| STATE OF HAWAII; STATE OF ) | |
| HAWAII DEPARTMENT OF ) | |
| TRANSPORTATION; EDWIN Y. HIRATA) | |
| as director of the D.O.T.; ) | |
| and OWEN  MIYAMOTO, as ) | |
| Airports Administrator, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

SUMMONS IN A CIVIL ACTION

TO:  ALL NAMED DEFENDANTS

YOU ARE HEREBY SUMMONED and required to file with the Clerk of this Court and serve upon:

>               DAVID BETTENCOURT
>               119 Merchant Street
>               Suite 400
>               Honolulu, Hawaii  96813
>               Attorney for Plaintiffs

an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

WALTER A. Y. H. CHINN, Clerk

By _____            _____
   Deputy Clerk                                MAY   7 1990
                                                     Date

2