CADES SCHUTTE
A Limited Liability Law Partnership

CALVERT G. CHIPCHASE      7757
LISA K. SWARTZFAGER       10867
~~MOLLY A. OLDS~~          ~~11330~~
1000 Bishop Street, Suite 1200
Honolulu, Hawaiʻi 96813-4212
Telephone: (808) 521-9200
Email: cchipchase@cades.com
        lswartzfager@cades.com
~~molds@cades.com~~
Attorneys for Plaintiffs
HELICOPTER ASSOCIATION
INTERNATIONAL and SAFARI
AVIATION, INC. d/b/a SAFARI
HELICOPTERS HAWAIʻI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| HELICOPTER ASSOCIATION INTERNATIONAL, SAFARI AVIATION, INC. d/b/a SAFARI HELICOPTERS HAWAIʻI<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF HAWAIʻI; DEPARTMENT OF TRANSPORTATION, STATE OF HAWAIʻI; and EDWIN SNIFFEN, in his official capacity as Director of the Hawaiʻi Department of Transportation; and JOSH GREEN, M.D., in his | ~~CIVIL NO.~~ _____<br><br>Civil No. 1:23-cv-00083<br><br>**COMPLAINT**<br><br>**EXHIBITS** ~~1-3~~**1 - 3**<br><br>**DEMAND FOR JURY TRIAL** |

# EXHIBIT 2

~~official capacity as Governor,~~,

Defendants.

## COMPLAINT

Plaintiffs Helicopter Association International and Safari Aviation, Inc., dba Safari Helicopters Hawaiʻi (together, "**Plaintiffs**"), allege for their claims for relief against Defendants State of Hawaiʻi; Department of Transportation, State of Hawaiʻi; and Edwin Sniffen, in his official capacity as Director of the Hawaiʻi Department of Transportation, and Governor Josh Green, M.D., in his official capacity as the Governor of the State of Hawaiʻi (collectively, "**Defendants**") as follows:

## Nature of the Case

1.     Plaintiffs bring this action for declaratory and injunctive relief challenging the monthly reporting requirement imposed in the amendments to Hawaiʻi Revised Statutes ("**HRS**") Chapter 261 set forth in Senate Bill ("**S.B.**") 3272 (codified as Session Act 311). *See* Ex. 1 (S.B. 3272), which is incorporated by reference.

2.     S.B. 3272 amends HRS Chapter 261 in the following two ways:

(1) By establishing an air noise and safety task force, which would be empowered to make recommendations but not to adopt any new requirements; and

(2) By adding to the list of regulations that the Hawaiʻi Department of Transportation must adopt (specifically at

Section 261-12(b)(8)) a requirement that each tour aircraft operator submit monthly reports detailing its operations during the prior month, including: (A) the date and time that the aircraft took off and landed; (B) the number of individuals aboard the aircraft during the operation; (C) the flight path from takeoff through landing; and (D) a disclosure if the aircraft deviated from its intended flight plan. (Hereafter, the "**monthly reporting requirements**").

3.     The preamble to S.B. 3272 asserts that "the State has the option not to renew a tour aircraft operation permit for any company that repeatedly deviates from flight plans over sensitive areas."

4.     The monthly reporting requirements violate the Supremacy Clause of the United States Constitution, Article VI, clause 2, in four ways, any one of which is sufficient to render the amendments invalid.

5.     First, the monthly reporting requirements impermissibly legislate in a field that is preempted by Federal law, including the Federal Aviation Act, 49 U.S.C. § 40101 *et seq.*, as amended (the "**Federal Aviation Act**"), and the regulations promulgated thereunder. *See also* 49 U.S.C. § 106.

6.     Second, the monthly reporting requirements are preempted because they conflict with Federal law, including the Federal Aviation Act and the regulations promulgated thereunder. 49 U.S.C. § 106.

7.     Third, the monthly reporting requirements are expressly and impliedly preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1) ("**ADA**").

8.     Fourth, the monthly reporting requirements are expressly and impliedly preempted by the Aircraft Noise and Capacity Act of 1990, 49 U.S.C. § 47521, *et seq.* ("**ANCA**").

9.     Independent of the Supremacy Clause, the monthly reporting requirements are void because they violate the stipulated agreement in a 1990 lawsuit brought by a number of operators, including Plaintiff Safari Aviation, Inc., dba Safari Helicopters Hawaiʻi ("**Safari**"), against, *inter alia*, Defendants State of Hawaiʻi and Hawaiʻi Department of Transportation.

10.    In the stipulated agreement, the defendants agreed that Chapter 261 "will not be applied in any manner that is inconsistent with, or contrary to, the Federal Aviation Act of 1958, as amended, together with the Federal Aviation Regulations Promulgated thereunder." Ex. 2 (Stipulation for Dismissal) at 2 (hereafter, the "**1994 Stipulation**").

11.    The monthly reporting requirements are inconsistent with and contrary to the Federal Aviation Act of 1958, as amended (now recodified), and its associated regulations, and therefore, Defendants State of Hawaiʻi and Hawaiʻi Department of Transportation have violated the 1994 Stipulation.

12.    Plaintiffs seek to enforce the 1994 Stipulation and protect their right to operate air tours in national airspace under federal regulation.

13.    Plaintiffs seek (1) a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 holding that Federal law preempts the monthly reporting requirements, (2) a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 holding that the monthly reporting requirements violate the 1994 Stipulation, and (3) a permanent injunction barring enforcement of the monthly reporting requirements.

## The Parties

14.    Plaintiff Helicopter Association International ("**HAI**") is a Delaware corporation located in Alexandria, Virginia. HAI is a non-profit membership organization and trade association that represents and serves the interests of helicopter operators around the world. Its members include companies that operate helicopter air-tours

in the State of Hawaiʻi who will be harmed by the monthly reporting requirements. Neither the maintenance of the claims asserted nor the relief requested in this action require direct participation from HAI's members.

15.     Plaintiff Safari is a Hawaiʻi corporation with its principal place of business within the District of Hawaiʻi. Safari operates air-tours in the State of Hawaiʻi and will be harmed by the monthly reporting requirements. Safari is a member of HAI.

16.     Defendant State of Hawaiʻi (the "**State**") is a state of the United States.

17.     Defendant Hawaiʻi Department of Transportation ("**HDOT**") is an agency of the State of Hawaiʻi.

18.     Defendant Edwin Sniffen is sued in his official capacity as Director of HDOT. The HDOT also oversees the Airports Division, which operates the airports in the State.

19.     ~~Defendant Josh Green, M.D. is sued in his official capacity as Governor of the State of Hawaiʻi.~~

## Jurisdiction and Venue

19. ~~20.~~ This Court has original jurisdiction over the subject matter of this action pursuant to (1) 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under laws of the United States; (2) because this suit seeks redress for the deprivation, under color of state law, for rights secured by the United States Constitution; (3) because of the Court's inherent jurisdiction to grant equitable relief for violations of the United States Constitution; and (4) because of the Court's ongoing jurisdiction to enforce the 1994 Stipulation. Even if the Court did not have ongoing jurisdiction to enforce the 1994 Stipulation, which it does, the Court would have supplemental jurisdiction to enforce the 1994 stipulation pursuant to 28 U.S.C. § 1367(a).

20. ~~21.~~ The Court has personal jurisdiction over Defendants because they are domiciled in, reside in or are located in the State and because their denial of Plaintiffs' rights under the United States Constitution and the laws of the United States occurred within the State. The injuries caused by each Defendant occurred in the State.

## <u>Despite the Admitted Legal Issues with S.B. 3272, the Governor Signed It into Law.</u>

21.    ~~22.~~ On July 12, 2022, Governor Ige signed S.B. 3272 (codified as Session Act 311) amending Hawai'i Revised Statutes Chapter 261.

22.    ~~23.~~ Governor Ige initially included it on his intent-to-veto list and explained:

> **Because of federal preemption, the Department of Transportation has no authority to impose or enforce regulations regarding air space and aircraft operations under the jurisdiction of the Federal Aviation Administration**. Therefore, the actions of the Department of Transportation can take based on the additional reports and disclosures will be limited and unlikely to produce the bill's desired results.

*See* Gov. Msg. No. 1216 (emphasis added).

23.    ~~24.~~ HDOT has no authority to impose or enforce regulations for the monthly reporting requirements due to federal preemption or to impose fines or refuse to renew a State permit supposedly necessary for their operation.

24.    ~~25.~~ S.B. 3272 adds the monthly reporting requirements to the list of regulations that the Hawai'i Department of Transportation must adopt (specifically at Section 261-12(b)(8)).

25. 26. Any regulation that HDOT could adopt to implement the reporting requirements of S.B. 3272 would be invalid because the reporting requirements are invalid.

## Air Tours in Hawai'i Operate Under a Federal Regulatory Scheme.

26. 27. Various federal statutes and associated regulations govern national airspace and aviation, which fall under the purview of the Federal Aviation Administration (the "**FAA**").

27. 28. In conjunction with 14 C.F.R. Part 136 ("**Part 136**"), Appendix A "Special Operating Rules for Air Tour Operators in the State of Hawaii," air tour operators in the State operate under one or two regulations:

(a) 14 C.F.R. Part 135 ("**Part 135**") with the associated Operations Specifications (B048 - Air Tour Operations Below 1,500 Feet AGL in the State of Hawaii); and/or

(b) 14 C.F.R. Part 91 ("**Part 91**") with an associated Letter of Authorization.

28. 29. Upon information and belief all or nearly all such operators in Hawai'i have Part 135 authority and actually conduct air tours as Part 135 operations.

29. ~~30.~~ Part 135 is a comprehensive regulatory scheme for on-demand charter operations that also includes various reporting requirements, including, for example, of certain emergency situations (§ 135.19(c)), flight and mechanical irregularities (§ 135.23(f), § 135.65), and hazardous material incidents (§ 135.23(p)(2)).

30. ~~31.~~ Additionally, the FAA requires air tour operators in Hawai'i to abide by the Hawaii Air Tour Common Procedures Manual, FAA Document Number: AWP13-136A, *available at* https://www.faa.gov/about/office_org/field_offices/fsdo/hnl/local_more/media/hawaii_air_tour_common_proc.pdf (the "**FAA Hawai'i Air Tour Manual**"), which is a detailed 169-page document.

31. ~~32.~~ The FAA Hawai'i Air Tour Manual provides, "Each person who deviates from the regulations and/or requirements set forth in this manual shall contact the Principal Operations inspector or Flight Standards District Officer Manager within 10 days of such deviation and if so requested, file a written report." *Id.* at p. 12.

## The Monthly Reporting Requirements Burden and Harm Air Tour Operators in Hawai'i.

32. ~~33.~~ The monthly reporting requirements are burdensome and harmful to Safari and other HAI members who operate air tours in Hawai'i.

33. ~~34.~~ State officials have expressed their intent to enforce the monthly reporting requirements even though implementing regulations have not yet been promulgated.

34. ~~35.~~ The state intends to enforce the monthly reporting requirements.

35. ~~36.~~ The state intends to adopt regulations implementing the reporting requirements.

36. ~~37.~~ Safari and many of HAI members who operate air tours in Hawai'i operate multiple flights a day, seven days a week.

37. ~~38.~~ Thus, operators will have to dedicate substantial time and resources to reporting data on flights every month that they currently are not required to collect and compile.

38. 39. The monthly reporting requirements will also require more work from pilots, who will need to record flight plans and "deviations" from those plans.

39. 40. In addition, the monthly reporting requirements could disincentivize putting safety first. Pilots need to be able to make decisions based on weather and other issues. Requiring an intended flight plan and reporting for any deviations therefrom could disincentivize pilots from following the flight path with the least risk based on existing conditions in the air.

## The Monthly Reporting Requirements Are Void Due to Field Preemption.

40. 41. Under the field preemption doctrine, "[s]tates are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance. . . . The intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it' or where there is a 'federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *See Arizona v.*

*United States*, 567 U.S. 387, 399 (2012) (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

41. ~~42.~~ The FAA has exclusive authority to regulate how aircraft operate and all other matters related to aviation safety and efficiency.

42. ~~43.~~ As Justice Robert Jackson explained in his concurring opinion in *Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292 (1944):

> **Congress has recognized the national responsibility for regulating air commerce. Federal control is intensive, and exclusive**. Planes do not wander about in the sky like vagrant clouds. They move only by federal permission, subject to federal inspection, in the hands of federally certified personnel and under an intricate system of federal commands. The moment a ship taxies onto a runway, it is caught up in an elaborate and detailed system of controls. It takes off only by instruction from the control tower, it travels on prescribed beams, it may be diverted from its intended landing, and it obeys signals and orders. Its privileges, rights, and protection, so far as transit is concerned, it owes to the Federal Government alone, and not to any state government.

322 U.S. at 303 (Emphasis added).

43. ~~44.~~ Field preemption applies even if a state law requirement is intended to parallel an FAA requirement. *See Air Evac EMS, Inc. v. Robinson*, 486 F.Supp.2d 713, 724 (M.D. Tenn. 2007) ("[W]hile the defendants maintain that their regulations merely supplement federal enactments . . . such is irrelevant to a finding of field preemption. . . .

Accordingly, because Congress has preempted the field of aviation safety, the Board's rules pertaining to the plaintiff's avionics equipment are invalid."); *Int'l Aerobatics Club Chapter 1 v. City of Morris*, 76 F. Supp. 3d 767, 783 (N.D. Ill. 2014) ("[E]xclusive enforcement is an indispensable component of [the FAA's] plenary authority. To the extent that the Ordinance . . . falls within the FAA's existing regulations . . . and to the extent it purports to empower municipal officials not employed by the FAA to enforce FAA standards, the . . . Ordinance and regulations are preempted by federal law and are not enforceable."); *see also Ventress v. Japan Airlines*, 747 F.3d 716, 722 (9th Cir. 2014) (field preemption encompasses "indirect challenges to aviation safety decisions under guise of state law").

44.   45. Notably, since the first territorial aviation law was adopted in 1947, the State has recognized federal supremacy. *See* Section 4915.02 (Session Act 32, 1947) (providing "nothing in this Act shall be construed as authorizing or empowering the commission to exercise any power or perform any function in such cases where the Civil Aeronautics Board, the Civil Aeronautics Administration or other

department or agency of the federal government has such authority or

power").

45. ~~46.~~ A recent Ninth Circuit case that supports this conclusion is

*Bernstein v. Virgin America, Inc.*, 3 F.4th 1127 (9th Cir. 2021):

> [O]ur case law makes clear that field preemption generally applies
> to state regulations specifically in the field of *aviation safety*. In
> *Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007), we
> held that Congress intended to occupy the field of "aviation
> safety." This was based on the dominance of federal interests in
> regulation of the country's airspace, the passage of the FAA "in
> response to a series of fatal air crashes between civil and military
> aircraft operating under separate flight rules," and delegation of
> "full responsibility and authority for the . . . promulgation and
> enforcement of safety regulations" to the agency. *Id.* at 471–72
> (alteration in original). We noted that the FAA also directed the
> Administrator "to regulate any 'other practices, methods, and
> procedure the Administrator finds necessary for safety in air
> commerce and national security.'" *Id.* at 472 (quoting 49 U.S.C. §
> 44701(a)(5)).

*Id.* at 1138–39 (emphasis in original).

46. ~~47.~~ The Hawaiʻi Attorney General, when asked by the

legislature to advise whether the state could regulate helicopter

operations, reached the same conclusion:

> The federal government is vested by statute with broad authority
> to regulate the use of all navigable airspace for the twin purposes
> of insuring both the safety of aircraft and the efficient utilization of
> airspace. . . . Moreover, it expressly reserves two aspects of the
> fields of helicopter air transit for federal action by asserting
> regulatory authority over the field of helicopter routes and
> altitudes. Under the rule of preemption, any legislation that

operates in an area committed to federal care must come from a federal source. . . . [I]t is our opinion that the State may not enact any legislation that has the effect of restricting helicopter flight altitudes or routes.

*See* Regulation of Helicopter Flights, Opinion No. 86-1, 1986 WL 80009, *2-3 (January 7, 1986).

47.   48. The Hawaiʻi Attorney General, in prior testimony, warned that a requirement that helicopter operators maintain and make available records about their operations would be "subject to challenge under the Supremacy Clause of the U.S. Constitution." (https://www.capitol.hawaii.gov/session2021/testimony/SB1403_TESTI MONY_TRS_02-09-21_.PDF). *See also* Hawaiʻi Administrative Rules ("**HAR**") § 19-34-1.1 (acknowledging that any air tour requirements that are contrary to federal law must yield thereto); *cf. Authority of Jackson County to Regulate Helicopter Sightseeing Operation*, N.C. Atty. Gen. Advisory Opinion, 2002 WL 1902115, *5 (July 10, 2002) (doubting that requirement for submission of "operations plan" for helicopter air tours "would be found valid. Implicit in the structure of the operations is county regulation of matters already regulated under federal law which . . . would preempt county regulation in this area.").

48. ~~49.~~ Because the monthly reporting requirements attempt to regulate in the area of aviation safety and efficiency, they are preempted.

49. ~~50.~~ The safety purposes of S.B. 3272 were reiterated and elaborated upon throughout the hearing process for S.B. 3272:

> (a)   "Your Committee finds that, while there have been several efforts to address **the excessive noise and safety hazards** posed by tour helicopters and small aircrafts operating in the State, **community concerns over excessive noise and safety hazards continue to grow**. This measure will assist the Department of Transportation in its monitoring of tour aircraft operators to determine their compliance with federal and state laws." *See* Stand. Comm. Rep. No. 1900-22 (https://www.capitol.hawaii.gov/session2022/CommReports/SB3272_HD2_HSCR1900-22_.htm) (emphasis added).

> (b)   "Your Committee on Conference finds that **the noise from low-flying aircrafts over residential areas can cause health issues and negatively impact quality of life**. Due to increasing concerns, this measure requires tour aircraft operations to file reports so that the State can monitor their compliance with federal regulations." See Conf. Comm. Rep. No. 208-22 (https://www.capitol.hawaii.gov/session2022/CommReports/SB3272_CD1_CCR208-22_.htm) (emphasis added).

> (c)   "Your Committee finds that there is increasing **concern with safety risks** and community disruption arising from tour helicopter and small aircraft operations in the State. Although there have been collaborative efforts to **address increasing safety** and community disruption concerns, **this measure further ensures transparency and accountability for tour aircraft operators by establishing certain reporting requirement**s." *See* Stand. Comm. Rep. No. 1231-22

(https://www.capitol.hawaii.gov/session2022/CommReports/SB327 2_HD1_HSCR1231- 22_.htm) (emphasis added).

(d)   "Your Committee therefore finds that decisive action must be taken **to increase safety precautions**." *See* Stand. Comm. Rep. No. 2694 (https://www.capitol.hawaii.gov/session2022/CommReports/SB327 2_SD1_SSCR2694_.htm) (emphasis added).

(e)   "[I]t is in the interest of the State **to monitor and ensure that these rules and regulations are being followed**." *See* Stand. Comm. Rep. No. 2790 (https://www.capitol.hawaii.gov/session2022/CommReports/SB327 2_SD2_SSCR2790_.htm).

50.   ~~51.~~ HDOT also provided comments on S.B. 3272:

The U.S. Federal Aviation Administration (FAA) Grant Assurance No. 22, obligates DOT to make its airports available for public use on reasonable terms and without unjust discrimination to all aeronautical activities. The bill proposes to affect a specific population of airports users, thus arguably, discriminates. **The FAA has authority to regulate the air space and aircraft operations. The DOT has no authority to establish rules or offer contract terms that attempts to manage flight operations of helicopter operators**.

*See* State Department of Transportation, Comments Regarding S.B.

3272          (February          15,          2022)

(https://www.capitol.hawaii.gov/session2022/testimony/SB3272_TESTI

MONY_TRS_02-15-22_.PDF) (emphasis added).

51.   ~~52.~~ In fielding questions about S.B. 3272, a Deputy Attorney General stated that the State could not require operators to provide

information that was not "the same kind of information they're providing to the feds . . . **that's preempted by the fed law**." *See* https://www.youtube.com/watch?v=IOXFWK6e5Tw at 36:25.6 (emphasis added).

52. ~~53.~~ The monthly reporting requirements are void under field preemption doctrine.

### Section 216-12(b)(8) Is Void Due to Conflict Preemption.

53. ~~54.~~ Conflict preemption exists when a state law "actually conflicts with federal law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79. This occurs where "state law stands as an obstacle to the accomplishment" of Congress's intent. *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985).

54. ~~55.~~ Conflict preemption applies "where compliance with both federal and state regulations is a physical impossibility" or in "those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (internal quotations omitted).

55. ~~56.~~ The monthly reporting requirements conflict with the Federal Aviation Act and the rules and regulations promulgated thereunder and ANCA in at least two ways.

56. ~~57.~~ First, the monthly reporting requirements are an obstacle to Congress's intent to regulate the safety and operations of air tours in the State because they impose more onerous requirements than those required by the FAA.

57. ~~58.~~ In addition to the numerous generally applicable regulations for aircraft operations in Title 14, Chapter I of the Code of Federal Regulations, including Part 91 and associated agency guidance, Part 136 sets forth safety and operational rules for commercial air tours and national parks air tour management.

58. ~~59.~~ Part 136 applies to each person who operates a commercial air tour in an airplane or helicopter and applies to "Part 135 operators" conducting a commercial air tour. *See* 14 CFR § 136.1.

59. ~~60.~~ Hawaiʻi operators that are members of HAI generally conduct their air tours under Part 135 authority from the FAA, and most if not all their sightseeing flights are actually operated in conformity with Parts 135 and 136.

60. ~~61.~~ Appendix A to Part 136 includes additional specific safety and operational regulations that apply to air tours conducted in the State of Hawaiʻi. *See, e.g.*, Letter from Raquel Girvin, Western-Pacific Regional Administrator, FAA, to Suzanne D. Case, Chair, Hawaii Board of Land and Natural Resources (August 13, 2021) ("[t]he FAA has also promulgated safety regulations addressing commercial air tours nationally . . . and specific regulations imposing special operating rules on air tour aircraft (including helicopters and special minimum flight altitudes for Hawaii) in Hawaii"); Letter from Raquel Girvin, Western-Pacific Regional Administrator, FAA, to the Honorable Ed Case (May 17, 2019) (identifying applicable regulations); Hawaiʻi Air Tours Common Procedures Manual.

61. ~~62.~~ The FAA, in coordination with the National Park Service, is developing further rules for air tours over national parks in Hawaiʻi, based on the National Park Air Tour Management Act of 2000 (49 U.S.C. § 40128) and Part 136. *See, e.g.,* https://parkplanning.nps.gov/projectHome.cfm?projectId=103522 (Hawaiʻi Volcanoes National Park) and https://parkplanning.nps.gov/projectHome.cfm?projectId=103365

(Haleakala National Park); *see also* Commercial Air Tour Operations Conducted Over National Parks and Tribal Lands, FAA Advisory Circular No. 136-1 (October 25, 2002).

62. ~~63.~~ Air tour operators are also required to report certain information regarding deviations from the requirements in the Hawaiʻi Air Tour Manual to the FAA.

63. ~~64.~~ None of these federal regulations and requirements impose the type of data collection or reporting contemplated by the monthly reporting requirements.

64. ~~65.~~ As a result, the information requested by the monthly reporting requirements is not data that is currently compiled, maintained or disseminated by air tour operators.

65. ~~66.~~ The monthly reporting requirements related to deviations from flight paths provides an example. Under FAA regulations, intended flight paths are not typically submitted to the FAA for air tours. Air tours in Hawaiʻi are generally conducted under visual flight rules ("**VFR**") as opposed to instrument rules. The filing of VFR flight plans is almost always optional. The FAA has the authority to require

air tours in Hawai'i to file VFR flight plans, but it has chosen not to exercise it.

66. 67. In contrast, the monthly reporting requirements, which apply to all air tours regardless of whether the tour is utilizing VFR or instrument rules, require operators to submit reports detailing the intended flight path from takeoff through landing and any deviations from such flight path. *See* S.B. 3272 at HRS § 261-12(b)(8)(C)-(D).

67. 68. Consequently, monthly reporting requirements either require the reporting on deviations from a nonexistent flight path or implicitly impose obligations for submissions of VFR flight plans that are not required by the FAA to enable operators to report deviations from those plans.

68. 69. Second, the monthly reporting requirements stand as an obstacle to Congress's intent to allow all aeronautical activities reasonable access to airports.

69. 70. After the enactment of S.B. 3272, HRS § 261-12(b) now provides: "Any other law to the contrary notwithstanding, no tour aircraft operation shall be permitted in any airport under the State's control without having a permit. The director shall adopt rules to

regulate tour aircraft operations by permit, which shall include but not be limited to: . . . (8) **Submission of monthly written reports to the department**. . . .ʺ (Emphasis added). The monthly reporting requirements authorized by Section 261-12(b)(8) impose an access restriction at all state-owned airports in Hawaiʻi, *i.e.*, by requiring air tour operators to fulfill its reporting requirements in order to obtain a permit enabling them to operate at those airports (a requirement incidentally not imposed on any other category of operator), subject to both the revocation of the permit pursuant to HAR § 19-34-8 as well as fines pursuant to HRS § 261-21(a)(2).

70.   ~~71.~~ The majority of airports in Hawaiʻi are state-owned, and the majority of air tours by HAI members are conducted at those state-owned airports.

71.   ~~72.~~ The monthly reporting requirements and the potential penalty of access restriction are contrary to the Federal Aviation Act and ANCA for multiple reasons, including that ANCA generally prohibits the imposition of access restrictions at publicly owned airports. *See* 49 U.S.C. § 47524; *see also, infra*, at ¶¶ 86-92, 127-32.

72. ~~73.~~ This is in conflict with the State regulations, which allow State authorities to deny permits or impose fines on operators that do not comply with the monthly reporting requirements.

73. ~~74.~~ In these ways, the monthly reporting requirements impose more stringent requirements than the FAA and stand as an "obstacle to the accomplishment" of Congress's intent.

74. ~~75.~~ Where administrative requirements overlap with and/or burden a federal area of regulation, the state requirements are preempted. *See, e.g., Gobeille v. Liberty Mutual Ins. Co.*, 577 U.S. 312, 323 (2016) (preemption of a state reporting requirement for employee benefit plans "is necessary to prevent the States from imposing novel, inconsistent, and burdensome reporting requirements on plans"); *United States v. Locke*, 529 U.S. 89, 116 (2000) ("Congress did not intend its reporting obligations to be cumulative to those enacted by each political subdivision whose jurisdiction a vessel enters"); *Congress of California Seniors v. Catholic HealthCare West*, 104 Cal.Rptr.2d 655, n.13 (App. 2001) ("[F]ederal Medicare law preempts the field of provider cost reporting.").

75. ~~76.~~ Because the FAA does not require reporting of the type of data required by the monthly reporting requirements, the monthly reporting requirements will burden air tour operators and are void under the conflict preemption doctrine.

## Section 216-12(b)(8) Is Preempted by the Airline Deregulation Act of 1978.

76. ~~77.~~ The Airline Deregulation Act of 1978 (49 U.S.C. § 41713(b)(1); "**ADA**") codified an express prohibition on states or localities "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier."

77. ~~78.~~ An "air carrier" is defined to be a person who engages directly or indirectly in air transportation. 49 U.S.C. § 40102(a)(2). "Air transportation" in turn includes "interstate air transportation," *id.* § 40102(a)(5), and "interstate air transportation" includes transportation between a place in "**Hawaii and another place in Hawaii through the airspace over a place outside Hawaii**," *id.* § 40102(a)(25)(A)(ii) (emphasis added).

78. 79. HAI members have authority to and do transport passengers or property by aircraft between a place in Hawaiʻi and another place in Hawaiʻi through the airspace over a place outside Hawaiʻi. *See, e.g.*, *Pac. Helicopter Tours, Inc. v. United States*, No. 06-613 C, 2007 WL 5171114, at \*20 (Fed. Cl. Jan. 12, 2007) (explaining flights that "travel from the earth of one part of Hawaii, to the earth of another part of Hawaii" would "meet the definition of 'interstate air transportation'").

79. 80. The air tour operators affected by S.B. 3272, including HAI's members that are air tour operators, are certificated by the FAA pursuant to Part 135.

80. 81. Part 135 operators are considered to be "air carriers." *See Air Evac EMS, Inc. v. Sullivan*, 8 F.4th 346, 352 (5th Cir. 2021) (Part 135 authority is authority to "operate as an air carrier and conduct common carriage operations").

81. 82. All operations of an air carrier are within the scope of the ADA, even if specific operations are intrastate. *See Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721 (E.D.N.C. 2008).

82. ~~83.~~ Because the monthly reporting requirements regulate the air tour operators that operate under Part 135, the requirements are related to the service and routes of air tour operators.

83. ~~84.~~ The monthly reporting requirements attempt to regulate in the area of aviation safety.

84. ~~85.~~ The purpose of the monthly reporting requirements assumes that "it is in the interest of the State to monitor and ensure that federal regulations are being followed" and, on that basis, "[r]equire[s] tour aircraft operators to file appropriate reports and disclosures so that the State can monitor their compliance with federal regulations." *See* S.B. 3272, § 1.

85. ~~86.~~ The monthly reporting requirements are preempted by the ADA. *See, e.g.*, *Weeks v. American Eagle Airlines, Inc.*, 2008 WL 11351284, *2 (S.D. Ohio Dec. 22, 2008) ("Air safety and the associated reporting requirements are inherently related to aircraft services–protecting passengers and crew by ensuring compliance thus cannot be too remote for preemption[.]"); *ABC Charters, Inc. v. Bronson*, 591 F.Supp.2d 1272, n.26 (S.D. Fla. 2008) ("[T]he imposition of . . . pervasive reporting requirements (including the release of trade

secrets) . . . is, on its face, related to the 'service' of tour operators and ticket agents, as well as their 'price' and 'routes.'"); *Air Evac EMS, Inc. v. Dodrill*, 548 F.Supp.3d 580, 590-91 (S.D. W.Va. 2021) (financial reporting requirements held to be preempted by Section 41713).

### The Monthly Reporting Requirements Are Preempted by the Aircraft Noise and Capacity Act of 1990.

86. ~~87.~~ ANCA generally prohibits the imposition of noise or access restrictions at publicly owned airports, unless the airport has complied with the procedural requirements set forth in 14 C.F.R. Part 161 ("**Part 161**") for the study, public comment on, and FAA review of the restrictions. *See* 49 U.S.C. § 47524.

87. ~~88.~~ The FAA has interpreted ANCA broadly to apply to both direct and indirect restrictions. *See, e.g.*, *Millard Refrigerated Services, Inc. v. FAA*, 98 F.3d 1361 (D.C. Cir. 1996); Notice and Approval of Airport Noise and Access Restrictions, 56 Fed. Reg. 48661, 48664 (September 25, 1991) (stating "the Act contemplates a broad review of such restrictions").

88. ~~89.~~ Air tour operations are within the scope of ANCA.

89. ~~90.~~ The legislative history of S.B. 3272 reflects that the monthly reporting requirements were enacted to address noise and safety hazards. *See supra*, at ¶¶ 49-51.

90. ~~91.~~ The monthly reporting requirements impose an access restriction at all state-owned airports in Hawai'i, *i.e.*, by requiring air tour operators to fulfill its reporting requirements in order to obtain a permit enabling them to operate at those airports (a requirement incidentally not imposed on any other category of operator), subject to both the revocation of the permit pursuant to HAR § 19-34-8 as well as fines pursuant to HRS § 261-21(a)(2).

91. ~~92.~~ The State, which is also the proprietor of the airports at which air tours operate, has not complied with the procedural requirements set forth in Part 161 for the study, public comment and FAA review of the restrictions.

92. ~~93.~~ The monthly reporting requirements violate ANCA and its implementing regulations and are preempted.

## **Prior Litigation Regarding the State's Attempt to Regulate Air Tours Safety and Operation.**

93. ~~94.~~ S.B. 3272 is not the State's first attempt to regulate helicopter operations.

94. ~~95.~~ In 1988, the State enacted Act 397, which was compiled in HRS §§ 261-12(b) and 261-13.6 ("**Act 397**"), and promulgated rules that required air tour operators to apply for a Tour Aircraft Operators Permit ("**Permit**") to operate out of State airports. Pursuant to these authorities, operators were required to file charts and flight plans to show how they would avoid flying over noise-sensitive and residential areas. Operators who failed to apply for a Permit or adhere to submitted flight plans would face revocation of their Permit or fines up to $1,000. Flight plans and Permits were made publicly available, with the opportunity for public comment to be submitted to the HDOT Airports Division.

95. ~~96.~~ On May 7, 1990, a number of operators, including Safari, a party to the present action, filed a complaint in the U.S. District Court for the District of Hawaiʻi against the State of Hawaiʻi, Defendant HDOT, Edwin Y. Hirata, in his capacity as the Director of HDOT, and Owen Miyamoto, in his capacity as the Airports Administrator for the HDOT (the "**1990 Complaint**").

96.  ~~97.~~ The 1990 Complaint sought declaratory and injunctive relief, among other causes of action, on the ground that under the Supremacy Clause of the United States Constitution, art. VI, clause 2, Act 397 and its associated rules were preempted by the Federal Aviation Act of 1958, as amended, the Noise Control Act of 1972, as amended, the Airline Deregulation Act of 1978, and the Airport and Airway Development Act of 1982. Ex. 3 (1990 Complaint).

97.  ~~98.~~ On January 19, 1994, the Honorable Alan C. Kay approved and ordered all claims dismissed pursuant to the Stipulation for Dismissal signed and filed by the parties. Ex. 2 (1994 Stipulation).

98.  ~~99.~~ Settling all claims asserted in the 1990 Complaint, the 1994 Stipulation provides in pertinent part:

> that the State of Hawaiʻi shall promulgate agency rules amending Hawaii Administrative Rules, Chapter 19-34, and clarifying that Hawaii Revised Statutes, section 261-12 will not be applied in any manner that is inconsistent with, or contrary to, the Federal Aviation Act of 1958, as amended, together with the Federal Aviation Regulations promulgated thereunder.

Ex. 2 (Stipulation for Dismissal) at 2.

99.  ~~100.~~ The monthly reporting requirements and the preamble to S.B. 3272, which asserts that "the State has the option not to renew a tour aircraft operation permit for any company that repeatedly deviates

from flight plans over sensitive areas," are inconsistent with and contrary to the Federal Aviation Act of 1958, as amended, and its associated regulations. Accordingly, S.B. 3272 violates the 1994 Stipulation.

**COUNT I**
**(FIELD PREEMPTION)**
**(STATE OF HAWAIʻI , EDWIN SNIFFEN IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF HDOT)**

100. ~~101.~~ Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as though set forth at length.

101. ~~102.~~ The Court has authority to declare the rights and responsibilities of parties under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

102. ~~103.~~ There is a dispute between the parties whose interests are real and adverse, which is justiciable and ripe for adjudication as a question of law, respecting the exclusive sovereignty of the United States government over airspace of the United States and the legality of the State's actions in attempting to regulate such airspace by imposing monthly reporting requirements for air tour operators.

103. ~~104.~~ The monthly reporting requirements constitute an invalid exercise of the State's police power, as they attempt to legislate in the field of aviation safety and efficiency.

104. ~~105.~~ The field of aviation safety and efficiency is completely occupied by the Federal government based on the pervasive scheme of legislation enacted by Congress and regulation promulgated by the FAA.

105. ~~106.~~ Thus, Federal law preempts the monthly reporting requirements.

106. ~~107.~~ Plaintiffs have suffered and will suffer harm as a result of the monthly reporting requirements.

107. ~~108.~~ Plaintiffs are entitled to a judgment declaring that the monthly reporting requirements are preempted by Federal law under the Supremacy Clause of the United States Constitution, art. VI, clause 2, and that those requirements have no force and effect.

108. ~~109.~~ Plaintiffs are further entitled to a permanent injunction barring Defendants and their successors, agents, employees, representatives and other ~~acts~~actors in concert with them from enforcing the monthly reporting requirements.

## COUNT II
### (DECLARATORY JUDGMENT REGARDING CONFLICT PREEMPTION)
### (STATE OF HAWAIʻI , EDWIN SNIFFEN IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF HDOT)

109. ~~110.~~ Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as though set forth at length.

110. ~~111.~~ The monthly reporting requirements are preempted by Federal law based on a conflict between State law and the objectives of the Federal Aviation Act and the regulations and rules promulgated thereunder, 49 U.S.C. § 106, and ANCA.

111. ~~112.~~ The State law regarding monthly reporting requirements for safety purposes is inconsistent with Congress's express goal to provide a uniform regulatory framework for national airspace, including the operation, safety, equipment and reporting requirements for air tours conducted in the State. *See, e.g.*, 14 C.F.R. Part 136, Appendix A.

112. ~~113.~~ The State law regarding monthly reporting requirements also stands as an obstacle to Congress's intent to allow all aeronautical activities reasonable access to airports. *See* ANCA, 49 U.S.C. § 47524.

113. ~~114.~~ Thus, Federal law preempts the monthly reporting requirements.

114. ~~115.~~ Plaintiffs have suffered and will suffer harm as a result of the monthly reporting requirements.

115. ~~116.~~ Plaintiffs are entitled to a judgment declaring that the monthly reporting requirements are preempted by Federal law under the Supremacy Clause of the United States Constitution, art. VI, clause 2, and that those requirements have no force and effect.

116. ~~117.~~ Plaintiffs are further entitled to a permanent injunction barring ~~Defendants~~ the State of Hawai'i and the Director of HDOT and their successors, agents, employees, representatives and other acts in concert with them from enforcing the monthly reporting requirements.

## COUNT III
### (PREEMPTION PURSUANT TO ADA)
### (STATE OF HAWAI'I , EDWIN SNIFFEN IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF HDOT)

117. ~~118.~~ Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as though set forth at length.

118. ~~119.~~ State laws having a connection with, or reference to, aircraft prices, routes, or services are preempted under the ADA, even if the state law's effect is only indirect. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 386 (1992).

119. ~~120.~~ Private parties may challenge a state or local restriction that conflicts with the ADA as a matter of equity via the *Ex Parte Young* doctrine. *See, e.g.*, *EagleMed, LLC v. Wyoming ex rel. Dep't of Workforce Services, Workers' Comp. Div.*, 227 F.Supp.3d 1255, 1267 (D. Wyo. 2016), *aff'd sub nom.* 868 F.3d 893 (10th Cir. 2017).

120. ~~121.~~ The monthly reporting requirements seek to, among other things, directly or indirectly require operators to submit intended flight plans for air tours and record any deviations therefrom.

121. ~~122.~~ The monthly reporting requirements are invalid and unenforceable because they violate the express prohibition of the preemption provisions of the ADA, codified at 49 U.S.C. § 41713(b)(1), nor can they be justified by the ADA's extremely limited exemption for the exercise of proprietary powers, 49 U.S.C. § 41713(b)(3).

122. ~~123.~~ The monthly reporting requirements relate to and affect air tour operators' "prices, routes, or services" and are preempted by the ADA.

123. ~~124.~~ Thus, Federal law preempts the monthly reporting requirements.

124. ~~125.~~ Plaintiffs have suffered and will suffer harm as a result of the monthly reporting requirements.

125. ~~126.~~ Plaintiffs are entitled to a judgment declaring that the monthly reporting requirements are preempted by Federal law under the Supremacy Clause of the United States Constitution, art. VI, clause 2, and that those requirements have no force and effect.

126. ~~127.~~ Plaintiffs are further entitled to a permanent injunction barring ~~Defendants~~ the State of Hawai'i and the Director of HDOT and their successors, agents, employees, representatives, and other acts in concert with them, from enforcing the monthly reporting requirements.

### Count IV
### (PREEMPTION PURSUANT TO ANCA)
### (STATE OF HAWAI'I , EDWIN SNIFFEN IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF HDOT)

127. ~~128.~~ Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as though set forth at length.

128. ~~129.~~ ANCA expressly preempts access restrictions to airports. *See* 49 U.S.C. § 47524.

129. ~~130.~~ Private parties may challenge a state or local restriction that conflicts with ANCA as a matter of equity via the *Ex Parte Young*

doctrine. *See, e.g.*, *Friends of the East Hampton Airport, Inc. v. Town of East Hampton*, 841 F.3d 133, 144 (2016).

130. ~~131.~~ The monthly reporting requirements impose an access restriction at all state-owned airports in Hawaiʻi, *i.e.*, by requiring air tour operators to fulfill its reporting requirements in order to obtain a permit enabling them to operate at those airports (a requirement incidentally not imposed on any other category of operator), subject to both the revocation of the permit pursuant to HAR § 19-34-8 as well as fines pursuant to HRS § 261-21(a)(2).

131. ~~132.~~ The monthly reporting requirements conflict with the requirements imposed by ANCA, which makes no exemption for the exercise of proprietary powers, *Friends*, 841 F.3d at 154.

132. ~~133.~~ Thus, Federal law preempts the monthly reporting requirements.

133. ~~134.~~ Plaintiffs are entitled to a judgment declaring that the monthly reporting requirements are preempted by Federal law under the Supremacy Clause of the United States Constitution, art. VI, clause 2, and that those requirements have no force and effect.

134. ~~135.~~ Plaintiffs are further entitled to a permanent injunction barring ~~Defendants~~ the State of Hawaiʻi and the Director of HDOT and their successors, agents, employees, representatives and other acts in concert with them from enforcing the monthly reporting requirements.

## COUNT V
### (BREACH OF THE 1994 STIPULATION TO DISMISS THE 1990 COMPLAINT)
### (ALL DEFENDANTS)

135. ~~136.~~ Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as though set forth at length.

136. ~~137.~~ Safari, the State, HDOT, the Director of HDOT, the HDOT Airports Administrator, and other operators entered into the 1994 Stipulation to dismiss the claims asserted by the 1990 Complaint.

137. ~~138.~~ Safari performed its obligations and duties pursuant to the 1994 Stipulation.

138. ~~139.~~ Under the terms of the 1994 Stipulation, Defendants are prohibited from applying HRS § 261-12(b)(8) in any manner that is inconsistent with or contrary to the Federal Aviation Act of 1958, as amended and recodified, together with the Federal Aviation Regulations promulgated under that act.

139. ~~140.~~ The monthly reporting requirements and preamble to S.B. 3272, which asserts that "the State has the option not to renew a tour aircraft operation permit for any company that repeatedly deviates from flight plans over sensitive areas," are inconsistent with and contrary to the Federal Aviation Act of 1958, as amended, and its associated regulations.

140. ~~141.~~ Safari would suffer irreparable harm in the absence of injunctive relief enjoining Defendants from violating the 1994 Stipulation.

141. ~~142.~~ The public interest supports granting injunctive relief enjoining Defendants from violating the 1994 Stipulation.

142. ~~143.~~ Safari is entitled to specific performance and/or a preliminary and permanent injunction preventing Defendants from violating the 1994 Stipulation.

WHEREFORE, Plaintiffs ask the Court to:

A.   Enter judgment in favor of Plaintiffs and against ~~Defendants~~ the State of Hawaiʻi and the Director of HDOT as to Counts I-IV.

B.   Enter judgment in favor of Plaintiffs and against Defendants as to Count V.

- 40 -

C. ~~B.~~ Enter judgment declaring that the monthly reporting requirements are preempted by federal law and that those requirements have no force and effect.

D. ~~C.~~ Enter judgment declaring that the monthly reporting requirements violate the 1994 Stipulation.

E. ~~D.~~ Enter a preliminary and permanent injunction barring Defendants and their successors, agents, employees, representatives and other acts in concert with them from enforcing the monthly reporting requirements.

F. ~~E.~~ Award Plaintiffs its attorneys' fees and costs of suit, as provided by law; and

G. ~~F.~~ Award Plaintiffs such other and further relief as the Court deems just and equitable.

DATED:  Honolulu, Hawaiʻi, ~~February 13~~April __, 2023.

CADES SCHUTTE
A Limited Liability Law Partnership

_____

/s/ ~~Calvert G. Chipchase~~
CALVERT G. CHIPCHASE
LISA K. SWARTZFAGER
~~MOLLY A. OLDS~~
Attorneys for Plaintiff
HELICOPTER ASSOCIATION
INTERNATIONAL and SAFARI
AVIATION, INC. d/b/a SAFARI
HELICOPTERS HAWAIʻI