CADES SCHUTTE
A Limited Liability Law Partnership

CALVERT G. CHIPCHASE      7757
MALLORY T. MARTIN         10211
LISA K. SWARTZFAGER        10867
1000 Bishop Street, Suite 1200
Honolulu, Hawaiʻi 96813-4212
Telephone: (808) 521-9200
Email: cchipchase@cades.com
         mmartin@cades.com
         lswartzfager@cades.com

Attorneys for Plaintiffs
HELICOPTER ASSOCIATION
INTERNATIONAL and SAFARI
AVIATION, INC. d/b/a SAFARI
HELICOPTERS HAWAIʻI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| HELICOPTER ASSOCIATION INTERNATIONAL, SAFARI AVIATION, INC. d/b/a SAFARI HELICOPTERS HAWAIʻI<br><br>                    Plaintiffs,<br><br>          v.<br><br>STATE OF HAWAIʻI; DEPARTMENT OF TRANSPORTATION, STATE OF HAWAIʻI; and EDWIN SNIFFEN, in his official capacity as Director | Civil No. 1:23-cv-00083<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER FRCP RULES 12(b)(1) AND 12(b)(6)**<br><br>**DECLARATION OF LISA K. SWARTZFAGER**<br><br>**EXHIBITS 1–10**<br><br>**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT** |

of the Hawaiʻi Department of
Transportation,

              Defendants.

**CERTIFICATE OF SERVICE**

**<u>PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED COMPLAINT
UNDER FRCP RULES 12(b)(1) AND 12(b)(6)</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................ 1

II.   BACKGROUND ......................................................................... 6

    A.   The State Previously Attempted to Regulate Air Tour
        Operators. ......................................................................... 6

    B.   Act 311. ............................................................................ 7

    C.   HDOT Works Toward Promulgating Regulations for
        the Reporting Requirements. ............................................. 8

    D.   Plaintiffs' Claims. ............................................................ 10

III.  LEGAL STANDARD ................................................................. 10

IV.   ARGUMENT ............................................................................. 11

    A.   The Ex Parte Young Exception to Sovereign Immunity
        Applies to Director Sniffen. ............................................. 11

    B.   This Lawsuit Is Ripe. ....................................................... 15

        1.   Plaintiffs' Claims Are Constitutionally Ripe .............. 17

        2.   Plaintiffs' Claims Are Prudentially Ripe. ................... 25

    C.   Count V Should Not Be Dismissed. .................................. 25

        1.   This Court has ancillary jurisdiction to enforce
            the Stipulated Agreement. .......................................... 25

        2.   Count V Is Not Barred by the Eleventh Amend-
            ment. ........................................................................... 28

V.    CONCLUSION .......................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Exceptional Child Ctr.*,
  575 U.S. 320 (2015) ................................................................ 12

*Ass'n of Am. Med. Colls. v. U.S.*,
  217 F.3d 770 (9th Cir. 2000) ............................................ 6, 11

*Bd. Of Regents of Univ. Of Wisconsin Sys. v. Phoenix Int'l Software, Inc.*,
  653 F.3d 448 (7th Cir. 2011) ................................................. 29

*Blanchette v. Conn. Gen. Ins. Corps.*,
  419 U.S. 102 (1974) .............................................. 22, 23, 24

*Buckley v. Valeo*,
  424 U.S. 1 (1976) .................................................................. 17

*Burlington N. & Santa Fe Ry. Co. v. Vaughn*,
  509 F.3d 1085 (9th Cir. 2007) ............................................ 4, 13

*Cahill v. Liberty Mut. Ins. Co.*,
  80 F.3d 336 (9th Cir. 1996) ................................................. 11

*City & Cnty. of San Francisco v. Garland*,
  42 F.4th 1078 (9th Cir. 2022) ........................................ 17, 19

*Clark v. Barnard*,
  108 U.S. 436 (1883) .............................................................. 28

*Coal. to Defend Affirmative Action v. Brown*,
  674 F.3d 1128 (9th Cir. 2012) .............................................. 14

*Emrit v. Sec'y of State of Hawaii*,
  No. 1:17-cv-00504-DKW-RLP, 2017 WL 5147783 (D. Haw. Oct. 17, 2017) .......................................................................... 28

*Enriquez v. Countrywide Home Loans, FSB,*
    814 F. Supp. 2d 1042 (D. Haw. 2011)....................................................6

*Fed. Express Corp. v. Robrad, L.L.C.,*
    2016 WL 3660670 (N.D. Tex. June 16, 2016) ....................................27

*Freedom to Travel Campaign v. Newcomb,*
    82 F.3d 1431 (9th Cir. 1996)................................................................20

*Friends of the E. Hampton Airport, Inc. v. Town of E.
    Hampton,*
    841 F.3d 133 (2d Cir. 2016) ................................................................12

*Gardner v. N.J.,*
    329 U.S. 565 (1947)..............................................................................29

*Gov't Suppliers Consolidating Services, Inc. v. Bayh,*
    975 F.2d 1267 (7th Cir. 1992)......................................................*passim*

*Kessler v. Grand Cent. Dist. Mgmt. Ass'n,*
    960 F. Supp. 760 (S.D.N.Y. 1997), *aff'd,* 158 F.3d 92 (2d
    Cir. 1998) ..............................................................................................16

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S. 375 (1994) ...........................................................5, 26, 27, 30

*Kreps v. Michigan Unemployment Ins. Agency,*
    2023 WL 4494339 (E.D. Mich. July 12, 2023) ...................................30

*In re Lazar,*
    237 F.3d at 976......................................................................................28, 30

*Levine v. Fair Political Practices Commission,*
    222 F. Supp. 2d 1182 (E.D. Cal. 2002) ...............................................16

*Linebarger v. United States,*
    927 F.Supp. 1280 (N.D. Cal.1996)......................................................27

*Nat'l Audubon Soc'y, Inc. v. Davis,*
    307 F.3d 835 (9th Cir.), *amended on denial of reh'g,* 312
    F.3d 416 (2002)...............................................................................13, 14

*Norfolk & W. Ry. Co. v. Pub. Serv. Comm'n of W. Va.,*
    858 F. Supp. 1213 (Reg'l Rail Reorg. Ct. 1994) .................................. 16

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder,*
    676 F.3d 829 (9th Cir. 2012) ............................................................... 15

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation &*
    *Dev. Comm'n,*
    461 U.S. 190 (1983) ...................................................................... 20, 21

*Retail Indus. Leaders Ass'n v. Fielder,*
    475 F.3d 180 (4th Cir. 2007) ............................................ 3, 16, 20, 24

*Sayles Hydro Associates v. Maughan,*
    985 F.2d 451 (9th Cir. 1993) ............................................................... 21

*Warren v. Fox Family Worldwide, Inc.,*
    328 F.3d 1136 (9th Cir. 2003) ............................................................ 11

*Wilbur v. Locke,*
    423 F.3d 1101 (9th Cir. 2005), *abrogated on other grounds*
    *by Levin v. Commerce Energy, In*c., 560 U.S. 413 (2010) ................... 13

*Wisconsin Central, Ltd. v. Shannon,*
    539 F.3d 751 (7th Cir. 2008) ......................................................... 20, 21

*Ex Parte Young,*
    209 U.S. 123 .............................................................................. *passim*

## Statutes

28 U.S.C. § 1367(a) .................................................................................. 28

49 U.S.C. § 40116(b) ................................................................................. 9

Aircraft Noise and Capacity Act ............................................................. 10

Airline Deregulation Act ........................................................................... 6

Anti Head-Tax Act ..................................................................................... 9

Federal Aviation Act ....................................................................... *passim*

Hawaiʻi Revised Statutes § 261-12(b) ............................................... *passim*

Hawaiʻi Revised Statutes § 261-12 ...................................................25, 29

Hawaiʻi Revised Statutes § 261-13.6 ........................................................6

## Other Authorities

Eleventh Amendment ........................................................ *passim*

Federal Rule of Civil Procedure 12(b)(1) ....................................1, 6, 10, 11

Federal Rule of Civil Procedure 12(b)(6) ........................................1, 11

Hawaii Administrative Rules Chapter 19-34 ...............................8, 25, 29

Hawaii Administrative Rules § 19-34-13 ........................................8

Senate Bill 3272 .........................................................................1, 7

U.S. Constitution Supremacy Clause ......................................1, 2

Plaintiffs Helicopter Association International ("**HAI**") and Safari Aviation, Inc., dba Safari Helicopters Hawaiʻi ("**Safari**") (together, "**Plaintiffs**"), oppose the Motion to Dismiss First Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendants State of Hawaiʻi ("**State**"), State Department of Transportation ("**HDOT**"), and Edwin Sniffen, in his official capacity as Director of HDOT ("**Director Sniffen**" and collectively, "**Defendants**"), on May 12, 2023 ("**Motion**").

## I.   INTRODUCTION

Plaintiffs challenge the monthly reporting requirement imposed by the amendments to Hawaiʻi Revised Statutes ("**HRS**") § 261-12(b), as set forth in Senate Bill 3272 and adopted as Session Act 311 ("**Act 311**"). Act 311 is the law in Hawaiʻi. There is nothing uncertain or incomplete about the monthly reporting requirement set forth in the Act. The reporting requirement violates the Supremacy Clause of the U.S. Constitution because it is preempted by federal law (Counts I–IV). The reporting requirement is void for the additional reason that it violates a settlement agreement that was approved and ordered pursuant to a stipulated

agreement (the "**Stipulated Agreement**") in a prior federal lawsuit that was brought by Safari and other operators against Defendants (Count V).

Contrary to Defendants' repeated mischaracterization of Act 311 as "simply provid[ing] for rulemaking," the Act sets forth the reporting requirement and **mandates** that Director Sniffen implement the requirement. *See* HRS § 261-12(b) ("The director **shall adopt** rules to regulate tour aircraft operations by permit, which **shall include** but not be limited to: ... (8) **Submission of monthly written reports**[.]") (emphasis added). There is no way to implement the requirement to submit monthly reports without violating the Supremacy Clause.[1] Neither constitutional nor prudential ripeness require Plaintiffs to expend time and resources preparing to comply with rules implementing the reporting requirement where the governing statute creates and mandates the invalid requirement. *See Gov't Suppliers Consolidating Services, Inc. v. Bayh*, 975 F.2d 1267, 1275-76 (7th Cir. 1992) (rejecting ripeness objection to a challenge to a statute even though the implementing regulations had not

---

[1] HDOT has not been idle. Since at least October 2022, HDOT has been working toward promulgating rules to implement the reporting requirements, including receiving approval for proposed rules from the State Attorney General's office and creating and testing a website for submission of the reporting requirements. *See* Exs. 4-8.

been adopted because "what the statutes [in this case] authorize is clear"); *infra*, at section IV.B.1. Accordingly, Counts I–V are ripe for review.[2]

Sovereign immunity does not bar Counts I–IV against Director Sniffen.[3] In seeking dismissal, Defendants take the untenable position that where a statute requires implementing regulations, a court may not entertain a challenge to the statute itself before the regulations have been adopted. Dkt. 21-1 ("**Mot.**") at 19-22. This is not the law. On the contrary, where a statute mandates implementing regulations that will be invalid irrespective of how they are implemented and the plaintiffs will suffer harm from delayed adjudication, courts routinely reject arguments that the case is not ripe until the implementing regulations are in place. *See Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 188 (4th Cir. 2007) (rejecting argument that the issues are unripe because

---

[2] Defendants make the conclusory statement that "all of Plaintiffs' claims are unripe." Motion at 2, 18-23. Defendants make no effort to explain why Count V is not ripe. Nor could they reasonably do so. Count V asserts an actual controversy arising from the breach of the Stipulated Agreement. *See* section IV. B.

[3] The FAC does not bring Counts I–IV against HDOT. The State has asserted sovereign immunity as to those Counts. Accordingly, Plaintiffs do not oppose the dismissal of the State as to Counts I–IV.

regulations under the Act have not been promulgated because "[r]egulations could not alter the Act's provisions, which clearly establish the … requirements that [plaintiff] claims are invalid"); *infra*, at section IV. B. (citing cases).

Continuing to pretend that the implementing rules might change the validity of the statutory mandate, Defendants take the equally untenable position that the *Ex Parte Young* exception to Eleventh Amendment immunity for injunctive relief against state officials does not apply to Director Sniffen because the implementing rules have not been promulgated. Mot. at 12-13. Since the rules have not been promulgated, so the argument goes, Director Sniffen has no connection to enforcement of Act 311. This is nonsense. The Act **expressly requires Director Sniffen to implement the reporting requirement** through rules that he is required to enforce. *See* HRS § 261-12(b)(8). Thus, there is an unbroken connection between Director Sniffen and enforcement of the reporting requirement. Nothing more is required. *See Burlington N. & Santa Fe Ry. Co. v. Vaughn*, 509 F.3d 1085, 1092–93 (9th Cir. 2007) ("Because [the plaintiff] has alleged that [the defendant official] has 'direct authority over **and principal responsibility for enforcing**' the tax,

4

the *Ex Parte Young* exception applies[.]") (internal quotations omitted; emphasis added); *infra*, at section IV. A.

Turning to Count V, Defendants argue that the count is barred by the Eleventh Amendment and, if characterized as a federal claim, fails because the count does not give rise to a separate federal cause of action. Mot. at 15-18. Defendants are mistaken. The Court has ancillary jurisdiction to enforce the Stipulated Agreement because it was entered by the Court and conditions dismissal on the terms that Plaintiffs seek to enforce. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994) (district courts have ancillary jurisdiction to "manage its proceedings, vindicate its authority, and effectuate its decrees," including where a stipulation for dismissal incorporates terms of a settlement agreement). Defendants waived sovereign immunity in the prior lawsuit and for enforcement of the Stipulated Agreement by submitting the Stipulated Agreement to the Court on express terms for approval of the Agreement and dismissal of the lawsuit. *See infra*, at section IV. C.

For these reasons, the State should be dismissed as to Counts I–IV and Defendants' Motion should be denied in all other respects. The claims should be litigated on their merits.

## II.   BACKGROUND

### A.   The State Previously Attempted to Regulate Air Tour Operators.

In 1988, the State enacted Act 397, which was compiled in HRS §§ 261-12(b) and 261-13.6 ("**Act 397**"), and HDOT promulgated rules that required air tour operators to apply for a specific permit. Pursuant to these authorities, operators were required to file certain flight plans or risk revocation of their permit or fines.

In May 1990, several operators, including Safari, filed an action in federal court against the State, HDOT, the HDOT Director, and the Airports Administrator for HDOT. The complaint sought declaratory and injunctive relief on the ground that Act 397 and its associated rules were preempted by, *inter alia*, the Federal Aviation Act ("**FAA**") and the Airline Deregulation Act ("**ADA**"). Ex. 1.[4]

---

[4] The Court may consider the attached exhibits because Rule 12(b)(1) allows a party may submit "affidavits or any other evidence properly before the court." *Ass'n of Am. Med. Colls. v. U.S.*, 217 F.3d 770, 778 (9th Cir. 2000) (quotations omitted).

The Court may consider Exhibits 1 and 2 for the additional reason that the prior Complaint and Stipulated Agreement are attached to the FAC and incorporated by reference and thereby form part of the FAC. *Enriquez v. Countrywide Home Loans, FSB*, 814 F. Supp. 2d 1042, 1055 (D. Haw. 2011).

The parties entered into the Stipulated Agreement, which was approved and ordered by Judge Kay in March 1994. Ex. 2. The Stipulated Agreement provides in part that the claims are dismissed with prejudice, provided

> the State of Hawaiʻi shall promulgate agency rules amending Hawaii Administrative Rules [("**HAR**")], Chapter 19-34, and clarifying that [HRS], **section 261-12 will not be applied in any manner that is inconsistent with, or contrary to, the [FAA]**, as amended, together with the Federal Aviation Regulations promulgated thereunder.

Ex. 2 at 2 (emphasis added).

## B.    Act 311.

On July 12, 2022, Governor Ige[5] signed Act 311, which amended HRS § 261-12(b) to provide in part as follows:

> Any other law to the contrary notwithstanding, no tour aircraft operation shall be permitted in any airport under the State's control without having a permit. The director **shall adopt rules** to regulate tour aircraft operations by permit, **which shall include** but not be limited to: . . .

> (8) Submission of monthly written reports to the department, which shall be made available to the public, of each tour

---

[5] Governor Ige initially included Senate Bill 3272 on his intent-to-veto list because, in his words, under "federal preemption, [HDOT] has no authority to impose or enforce regulations regarding air space and aircraft operations under the jurisdiction of the Federal Aviation Administration[.]" *See* Ex. 3 at 15 (Governor's June 27, 2022 Announcement).

operation that occurred during the duration of the preceding month, including:

(A) The date and time that the aircraft took off and landed;

(B) The number of individuals aboard the aircraft during the operation;

(C) The flight path from takeoff through landing; and

(D) Whether the aircraft deviated from its intended flight plan....

## C.   HDOT Works Toward Promulgating Regulations for the Reporting Requirements.

On November 30, 2022, HDOT asked a Deputy Attorney General ("**AG**") to review and approve as to form a draft of the Amendments to HAR Chapter 19-34. Ex. 4. The draft included proposed HAR § 19-34-13, which sets forth the preempted reporting requirements. *Id.*

On March 6, 2023, DOT sent another letter to the AG's office stating that it had received the completed review of the draft Amendments and incorporated those revisions and would submit the Amendment for final approval. Ex. 5. The revised draft of Section 19-34-13 includes the following new provision:

(b) All tour aircraft operators shall on or before the 20th day of the succeeding month, submit a monthly activity report into a designated file sharing site developed by the department in PDF format or similar non-editable format. The Tour aircraft operators shall file the monthly activity reports by assigned

8

identification number, by month, and year. The monthly activity reports will be made available to the public.

The report shall contain information of each tour operation including:

> i.  The date and time that the aircraft took off and landed;
>
> ii. The number of individuals aboard the aircraft during the operation;
>
> iii. The planned flight path;
>
> iv. Whether the aircraft deviated from its intended flight plan, and reason.

The director may collect additional fees for costs incurred in developing the online file sharing site, including costs associated with software licenses, maintenance fees and upgrades. The director shall provide a minimum sixty (60) days' prior written notice of any increase in fees, which shall be apportioned on a per aircraft basis between all permitted Tour Aircraft Operators by dividing the costs incurred by the department by the number of permitted aircraft. Any additional fees shall be calculated prior to the end of the calendar year under which the director's written notice of increase is provided and invoiced during January of the following calendar year.[6]

Ex. 5 at p. 16 of 17.

By October 2022, HDOT had created a webpage with links to different company's sharepoint pages to upload the monthly reporting

---

[6] Far from solving the preemption problem, the draft rules introduce new issues. For example, the provision imposing fees likely violates the Anti Head-Tax Act, which prevents the imposition of fees on air transportation and air commerce. *See* 49 U.S.C. § 40116(b).

9

requirements. Ex. 6; *see also* Ex. 7. The webpage included an access page where the public will be able to download the files. *Id.* By November 2022, HDOT was working with two air tour operators to test the reporting portal. Exs. 7-8.

**D.    Plaintiffs' Claims.**

The FAC asserts that the reporting requirement in Act 311 is preempted under field preemption (Count I), the FAA (Count II), the ADA (Count III), and the Aircraft Noise and Capacity Act ("**ANCA**") (Count IV). The FAC asserts a claim against all Defendants for breach of the Stipulated Agreement (Count V). *Id.* Plaintiffs seek (1) a declaratory judgment that federal law preempts the monthly reporting requirement, (2) a declaratory judgment that the reporting requirement violates the Stipulated Agreement, and (3) a permanent injunction barring enforcement of the reporting requirement.

### III.   LEGAL STANDARD

Defendants seek to dismiss Plaintiffs' FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim.

10

In opposing a Rule 12(b)(1) motion, the plaintiff may "'present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" *Ass'n of Am. Med. Colls.*, 217 F.3d at 778 (citation omitted). "Where jurisdiction is intertwined with the merits," the Court must assume "the truth of the allegations in a complaint unless controverted by undisputed facts in the record." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (quotations and ellipses omitted).

In ruling on a Rule 12(b)(6) motion to dismiss, the allegations in the complaint are taken as true and must be construed in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

## IV.   ARGUMENT

### A.   The Ex Parte Young Exception to Sovereign Immunity Applies to Director Sniffen.

Since *Ex Parte Young* was decided in 1908, it has been settled that a suit against a state official in his or her official capacity seeking prospective relief is not barred by the Eleventh Amendment. *See* 209 U.S. 123 (1908). In considering *Ex Parte Young,* the relevant inquiry is whether the plaintiff seeks to "enjoin[] state officials from taking official

11

action claimed to violate federal law." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 144 (2d Cir. 2016). That inquiry is satisfied with respect to Director Sniffen.[7]

Act 311 **mandates** that Director Sniffen promulgate rules containing the monthly reporting requirement. Plaintiffs allege that the requirement is preempted. An injunction will prevent Director Sniffen and his agency, HDOT, from imposing the unconstitutional reporting requirement set forth in Act 311.

Defendants argue that because regulations have not been promulgated, "Plaintiffs cannot establish the existence of a sufficient enforcement nexus with respect to Act 311." Mot. at 12. This argument is inconsistent with Ninth Circuit precedent and without merit.

---

[7] To the extent Defendants claim that there is no private right of action for field preemption or under the FAA, *see* Mot. at 11 & n.7, a private right of action is not necessary for Plaintiffs' preemption claims because the Court has the power to grant injunctive relief against state officers "who are violating, or planning to violate, federal law," *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 326 (2015). Plaintiffs allege that the Court has jurisdiction over this action due to, *inter alia*, its "inherent jurisdiction to grant equitable relief for violations of the United States Constitution." FAC ¶ 19. Equitable jurisdiction pursuant to *Ex Parte Young* applies to Counts I–IV.

The Ninth Circuit has refused to read "ripeness" or "imminence" requirements into the *Ex Parte Young* exception beyond those already imposed by a general ripeness analysis. *Nat'l Audubon Soc'y, Inc. v. Davis,* 307 F.3d 835, 847 (9th Cir.), *amended on denial of reh'g,* 312 F.3d 416 (2002). Applying those general ripeness requirements, the *Ex Parte Young* exception does **not** require a plaintiff to show that state officials **have enforced** the challenged statute. *Burlington*, 509 F.3d at 1092–93 ("Because [the plaintiff] has alleged that [the defendant official] has 'direct authority over **and principal responsibility for enforcing**' the tax, the *Ex Parte Young* exception applies[.]") (internal quotations omitted; emphasis added). Nor does the *Ex Parte Young* exception "'require a genuine threat of enforcement by a state official before a federal court' can hear a party's claims." *Nat'l Audubon Soc'y,* 307 F.3d at 846-47; *see Wilbur v. Locke,* 423 F.3d 1101, 1104–05, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy, In*c., 560 U.S. 413 (2010). On the contrary, Eleventh Amendment immunity does not bar suit against state officials where "the complaint allege[s] that the challenged statutes **authorize** the state to enter into agreements which violate federal law[.]" *Id.* (emphasis added)).

13

With Defendants' exaggerations stripped away, we turn to the "connection" requirement under the *Ex Parte Young* doctrine. The purpose of the connection requirement is merely to prevent parties from circumventing the Eleventh Amendment "by suing **any** **state executive** official." *Nat'l Audubon Soc'y*, 307 F.3d at 846 (bold emphasis added). Instead, the state official sued "must have **some connection** with the enforcement of the act." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (citation omitted; emphasis added). This connection must be "fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Id.* (citation omitted).

For example, in *Planned Parenthood of Idaho, Inc. v. Wasden*, the plaintiff sued a state attorney general and county prosecutor seeking an injunction barring the enforcement of a state statute regarding parental consent for abortions. 376 F.3d 908 (9th Cir. 2004). The court held that both defendants had a sufficient connection to the statute for purposes of *Ex Parte Young* even though **they were not obligated** to prosecute violations of the law at issue. *Id.* at 914. The connection requirement was satisfied because **they had the authority** to do so. *Id.*

14

Here, Act 311 **obligates** Director Sniffen to promulgate rules implementing the reporting requirements, HDOT is in the process of promulgating such rules, and, once promulgated, Director Sniffen will have the power and duty to enforce the rules against Plaintiffs. *See* HRS § 261-12(b) ("The **director** [of HDOT] **shall** adopt rules[.]") (emphasis added); Exs. 4-8. In these circumstances, Director Sniffen has a direct connection to the implementation and enforcement of the reporting requirement. Accordingly, the *Ex Parte Young* exception applies to the action against him for injunctive relief. *See Ex Parte Young*, 209 U.S. 123.

## B.    This Lawsuit Is Ripe.

Defendants argue that the case is not ripe because Director Sniffen has not promulgated the rules mandated by Act 311. Mot. at 19-20. The argument fails.

As the Ninth Circuit has explained, "[t]he 'basic rationale' of the ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 835 (9th Cir. 2012) (citation omitted). There is nothing abstract about Plaintiffs' challenge to the monthly reporting requirement under

15

Act 311 because the requirement is unconstitutional regardless of how it is implemented.

Where the challenged law is alleged to be unconstitutional regardless of the manner of implementation, the challenge is ripe for review before regulations have been promulgated by the enforcing agency. *See, e.g.*, *Fielder*, 475 F.3d at 188 (rejecting argument that the issues are unripe because regulations under the Act have not been promulgated because "[r]egulations could not alter the Act's provisions, which clearly establish the … requirements that [plaintiff] claims are invalid"); *Levine v. Fair Political Practices Commission*, 222 F. Supp. 2d 1182, 1187-88 (E.D. Cal. 2002) (rejecting ripeness objection to a constitutional challenge to California Government Code sections despite that the defendant agency had "not issued regulations specifying the enforcement parameters for these provisions"). *Norfolk & W. Ry. Co. v. Pub. Serv. Comm'n of W. Va.*, 858 F. Supp. 1213, 1216 (Reg'l Rail Reorg. Ct. 1994) (rejecting argument "that this suit is not ripe for adjudication since [the state agency] has yet to promulgate regulations" putting challenged act into effect as required by the act); *Kessler v. Grand Cent. Dist. Mgmt. Ass'n*, 960 F. Supp. 760, 770 (S.D.N.Y. 1997), *aff'd*, 158 F.3d 92 (2d Cir. 1998)

16

(noting that *Buckley v. Valeo*, 424 U.S. 1 (1976) held a "challenge to [a] statute's constitutionality ripe even though an administrative agency had not yet issued all implementing rules"). As those cases demonstrate, this case is constitutionally and prudentially ripe.

### 1.   Plaintiffs' Claims Are Constitutionally Ripe.

"A dispute is ripe in the constitutional sense if it presents concrete legal issues, in actual cases, not abstractions." *City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078, 1086 (9th Cir. 2022) (internal quotations and ellipses removed). Here, Act 311 mandates that Director Sniffen promulgate rules requiring the preempted reporting requirements. He cannot comply with Act 311 without imposing a reporting requirement that is preempted by federal law.

Plaintiffs inaccurately assert that "[t]he relevant provision of Act 311 simply provides for HDOT to engage in rulemaking" and that "'the rulemaking process itself is just the sort of 'contingent future event,' *Wolfson*, 616 F.3d at 1064, that warrants dismissal on ripeness grounds." Mot. at 20. This assertion is inconsistent with the law, Act 311, the FAC's allegations, and HDOT's own documents.

Act 311 requires Director Sniffen to promulgate regulations to implement the expressly monthly reporting requirement. As the FAC alleges, "[a]ny regulation that HDOT could adopt to implement the reporting requirements of S.B. 3272 would be invalid because the reporting requirements are invalid." FAC ¶25. The FAC further alleges that "[t]he state intends to enforce the monthly reporting requirements" and that "[t]he state intends to adopt regulations implementing the reporting requirements." *Id.* ¶¶34, 35.

The documents produced to Plaintiffs by HDOT in response to a public records request confirm that that HDOT has taken multiple concrete steps to implement the reporting requirements, including drafting the regulations, receiving comments from the AG's office, implementing the comments, developing a website for the reporting requirements, and testing the website. *See* Exs. 4-8.

Given the express language and mandatory nature of Act 311 and the steps taken to implement the Act, this cases does not present an abstract controversy. The probability of being subject to the monthly reporting requirement of Act 311 is real and substantial and of sufficient immediacy and reality to warrant declaratory and injunctive relief. *See*

*Gov't Suppliers Consolidating Services, Inc. v. Bayh*, 975 F.2d 1267, 1275 (7th Cir. 1992) ("In order to protect against a feared future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (internal quotations omitted)).

Plaintiffs' reliance on *City & Cnty. of San Francisco v. Garland* is misplaced. *See* Mem. at 19-20. In *Garland*, states and municipalities challenged statutes regarding exchanging information with the Immigration and Naturalization Service regarding an individual's immigration status. 42 F.4th 1078, 1082-83 (9th Cir. 2022). Intervening precedent, however, dispelled any purported conflict between the statutes and state law. *Id.* at 1084-85. For this reason, the court concluded that the plaintiffs' statutory challenges "are no longer ripe." *Id.* at 1086. As the court explained, the remaining allegations reduce to the theory that the statute's existence interferes with state sovereignty. *Id.* "[T]he mere 'existence of [a] law' absent any threat of interference is not sufficient for ripeness." *Id.* (citation omitted).

In contrast to the allegations of an abstract threat to the plaintiffs' sovereignty from the statutes' existence, the reporting requirement is required by Act 311, in the process of being implemented, and preempted by federal law. Thus, the monthly reporting requirement poses a direct threat of interference to Plaintiffs. *See, e.g.*, *supra*, at IV.B.2. In these circumstances, the preemption claims are constitutionally ripe. *See Bayh*, 975 F.2d at 1275; *Fielder*, 475 F.3d 180, 188.

### 2.   Plaintiffs' Claims Are Prudentially Ripe.

Prudential ripeness turns on "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983). With respect to the fitness of the issues for judicial review, "[l]egal questions that require little factual development are more likely to be ripe." *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1434 (9th Cir. 1996). The question of preemption is generally a legal question that does not require factual development. *Pac. Gas. & Elec.*, 461 U.S. at 201; *see Wisconsin Central, Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) ("Issues of express or field preemption are generally purely legal questions, where the matter can

be resolved solely on the basis of the state and federal statutes at issue."). Moreover, the preemption claims are facial challenges to the statutory reporting requirements, which will be "essentially unaffected by further factual development." *Bayh,* 975 F.2d 1275.

Ignoring Act 311 and the law, Defendants argue that the claims do not satisfy this prong because "there has been no definitive statement of HDOT's position." Mot. at 22. The definitive statement of HDOT is contained in Act 311—HDOT must impose the monthly reporting requirement. No other statement is necessary. There are no unknown facts. The pure legal question before the Court can be decided solely on the terms of the Act. *See, e.g.*, *Wisconsin Central*, 539 F.3d at 759; *Sayles Hydro Associates v. Maughan*, 985 F.2d 451, 454 (9th Cir. 1993) (preemption issue is "purely legal" and "does not depend on what the State Board may do at the end of its process, so it is currently fit for judicial decision.").

With respect to the hardship to the parties, withholding judicial review will cause Plaintiffs to suffer the injury that they filed suit to avoid. "One does not have to await the consummation of threatened injury to obtain preventative relief." *Pac. Gas & Elec.* 461 U.S. at 201. "Where the

21

inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974).

As explained in the FAC, "operators will have to dedicate substantial time and resources to reporting data on flights every month[.]" FAC ¶37. Plaintiffs must take action to comply with the reporting requirement before it is implemented, such as learning to use the reporting website, formulating plans on how to comply with the reporting requirement, and preparing pilots on recording flight plans and "deviations" from those plans. *See, e.g.*, FAC ¶¶37-39; Exs. 7-8 (website testing).

Safari and many of the HAI members who operate air tours in Hawaiʻi operate multiple flights a day, seven days a week, and, therefore, "will have to dedicate substantial time and resources to reporting data on flights every month that they currently are not required to collect and compile." FAC ¶¶36-37. If Plaintiffs are not able to assert their claims until the reporting requirement has been implemented through rules, they will have to spend time and resources preparing to comply with and potentially complying with the preempted reporting requirements.

In similar situations, courts have concluded that a suit is ripe. *See supra*, at 16-17. For example, in *Union Pacific Railroad Co. v. California Public Utilities Commission*, the state agency had adopted a 90-day timeframe for railroads to cooperate with others "to develop and implement, subject to Commission approval, performance-based standards for train configurations[.]" 346 F.3d 851, 871 n.21 (9th Cir. 2003). The plaintiffs alleged that state imposition of train configuration standards is unconstitutional. *Id.* at 870-71. The Ninth Circuit rejected the agency's ripeness objection "because it is clear that any standard required" by the agency would suffer the constitutional defect the plaintiffs alleged, even though "no standards [were] issued" at the time. *Id.* at n.22.

Similarly, in *Bayh,* the Seventh Circuit rejected a ripeness objection to a challenge to a statute requiring plaintiffs to post a surety bond and pay fees, even though the implementing regulations had not been adopted and the amount of the fees and bond and the time for payment were not established. 975 F.2d at 1275–76. The court noted that although, "[i]n some cases, the absence of implementing regulations may render the actual effect of the statute too uncertain to make review possible, ... **what the statutes [in this case] authorize is clear**." *Id.*

(emphasis added). Thus, there was "no need to wait for regulations or specific applications to evaluate and make a conclusive determination as to the legal issue presented." *Id.* (emphasis added).

Without exception, the cases regarding rulemaking relied on by Defendants do not involve a ripeness challenge to a statute that mandates an unconstitutional requirement. *See* Mot. at 20 (citing *In re Schmitz*, 270 F.3d 1254, 1255 (9th Cir. 2001), which did not involve a ripeness challenge and instead addresses whether fishing quota rights that were filed after a bankruptcy filing were property of the bankruptcy estate, and an out of context quote from *Oklevueha Native American Church of Hawaii*, 676 F.3d at 838, regarding "cases in which the courts are left to hypothesize about how the law might be applied").

In this case, Plaintiffs' claims challenge a statute that mandates an unconstitutional requirement. The claims are ripe for review. *See*, *Fielder*, 475 F.3d at 188; *Union Pacific Railroad*, 346 F.3d at 871 n.21, n.22.

24

**C.    Count V Should Not Be Dismissed.**

1.    <u>This Court has ancillary jurisdiction to enforce the Stip-ulated Agreement.</u>

Defendants contend that the Court did not retain federal jurisdic-tion to enforce the violations of the Stipulated Agreement. Mot. at 15-16. Their argument ignores the caselaw regarding ancillary jurisdiction and the content of the Stipulated Agreement.

In the prior suit, the parties did not merely submit a stipulation for dismissal. Rather, they submitted a stipulated agreement to dismiss the case **provided**, among other things, that Defendants are not permitted to apply HRS § 261-12 in any matter that is contrary to the FAA. *See* Ex. 2. Thus, they expressly incorporated terms of their agreement into the Stipulated Agreement and conditioned dismissal on such terms.

Consistent with the parties' incorporation of such terms into the Stipulated Agreement, the Court did not merely approve the Stipulated Agreement as to form. Rather, upon its receipt, the Court noted its con-cerns as to how certain proposed amendments to HAR chapter 19-34 "may affect the public welfare" and asked the parties to submit a "brief statement of the reason and purpose for the foregoing proposed amend-ments." Ex. 9. The Court also noted that "the FAA is currently conducting

public hearings on these and other matters of public concern." *Id.* Defendants responded to the Court's inquiry. Ex. 10. The Court entered its approval and order of the Stipulated Agreement only after receiving this correspondence. Ex. 2. Accordingly, the Court approved the substance of the proposed Stipulated Agreement and did not merely approve it as to form.

Defendants argue that the Stipulated Agreement is not a permanent injunction or a consent decree "where ongoing judicial management and enforcement can reasonably be expected." Mot. at 16. The argument is a red herring. Injunctions and consent decrees are not the only mechanisms for a court to enforce its orders. Among other things, district courts have ancillary jurisdiction to "manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994).

Relevant here, the Supreme Court has recognized that when a party's obligation to comply with the terms of the settlement agreement is made part of the dismissal order, a breach of the agreement would be a "violation of the order" and ancillary jurisdiction to enforce the agreement would exist. *Id.* at 378. By submitting the Stipulated Agreement

with the settlement terms contained therein for Court to approval and enter, Defendants made the settlement terms part of the record as a Court order. The federal court retained jurisdiction to enforce it. *See, e.g.*, *Fed. Express Corp. v. Robrad, L.L.C.*, 2016 WL 3660670, at *2 (N.D. Tex. June 16, 2016), *report and recommendation adopted,* 2016 WL 3661471 (July 5, 2016) ("When a court makes an agreement part of its order, a breach of the agreement would be a violation of the order, and, thus, enforcement of the agreement would amount to enforcement of the order, an action that the court may take pursuant to its ancillary jurisdiction to manage its proceedings, vindicate its authority, and effectuate its decrees.") (internal quotations omitted); *Linebarger v. United States,* 927 F.Supp. 1280, 1281–82 (N.D. Cal.1996) ("[T]he order of dismissal plainly sets forth the obligations of the parties under the settlement agreement ... the terms were incorporated as part of the dismissal order and this court therefore retains jurisdiction to enforce the terms of the settlement agreement"). Accordingly, the Court has ancillary jurisdiction to enforce the Stipulated Agreement.[8] *See Kokkonen*, 511 U.S. at 378.

---

[8] Even if the Court did not have ancillary jurisdiction over the claim, the Court would have supplemental jurisdiction over the claim pursuant

2.   <u>Count V Is Not Barred by the Eleventh Amendment.</u>

Defendants argue that to the extent Count V is a breach of contract claim under state law, it is barred by the Eleventh Amendment. Mot. at 14. This argument fails.

Defendants rely on *Emrit v. Sec'y of State of Hawaii,* No. 1:17-cv-00504-DKW-RLP, 2017 WL 5147783 (D. Haw. Oct. 17, 2017), for the general proposition that the Eleventh Amendment immunizes states, state agencies and state officials sued in their official capacities from state law claims brought in federal court. *Id.* Defendants forget that sovereign immunity can be waived. *In re Lazar*, 237 F.3d at 976.

A state's sovereign immunity is "a personal privilege which it may waive at pleasure." *Clark v. Barnard,* 108 U.S. 436, 447 (1883); *see In re Lazar,* 237 F.3d at 976 ("[A] State may waive its sovereign immunity by consenting to suit."). The Ninth Circuit has explained that "[g]enerally, we will find a waiver either if the State voluntarily invokes our jurisdiction or else if the State makes a 'clear declaration' that it intends to submit itself to our jurisdiction." *In re Lazar,* 237 F.3d at 976 (citations

---

to 28 U.S.C. § 1367(a), because Count V forms part of the same case or controversy as the federal preemption claims (Counts I-IV).

omitted). Waiver of sovereign immunity can be demonstrated by a party's litigation conduct that is inconsistent with an assertion of sovereign immunity. *Bd. Of Regents of Univ. Of Wisconsin Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 467 (7th Cir. 2011); *see Gardner v. N.J.,* 329 U.S. 565, 573-574 (1947) (when a state files a claim, it waives any immunity regarding the adjudication of the claim).

Here, Defendants waived sovereign immunity for the prior Lawsuit and with respect to the Stipulated Agreement. The Stipulated Agreement provides the complaint is dismissed with prejudice "**provided**, that the State of Hawaii shall promulgate agency rules ... clarifying that [HRS], section 261-12 will not be applied in any manner that is inconsistent with, or contrary to, [the FAA]," and attaches proposed amendments to HAR chapter 19-34. Ex. 2 (emphasis added). By submitting the Stipulated Agreement with these terms to the Court for approval and entry, Defendants asked the Court to approve the dismissal, the terms for dismissal, and the resolution of all claims in the prior Lawsuit.

By expressly conditioning dismissal on the terms that Plaintiffs now seek to enforce in the Stipulated Agreement, Defendants consented to the District Court continuing to have jurisdiction to enforce the

Stipulated Agreement through ancillary jurisdiction. *See* section IV.C.1. These facts stand in sharp contrast to a situation where a state resolves litigation through a settlement agreement that is not part of a court order. In that situation, the reservation of a court's jurisdiction to enforce that settlement agreement or a statement of waiver of sovereign immunity is needed, because the claim is otherwise a mere state law breach of contract claim. *See Kreps v. Michigan Unemployment Ins. Agency*, 2023 WL 4494339, at *6 (E.D. Mich. July 12, 2023).

Here, the terms of the agreement were made part of a Court order and, therefore, the parties invoked the Court's enforcement authority and vested the Court with continuing jurisdiction to enforce the terms of its order. *See, e.g.*, *Kokkonen*, 511 U.S. at 378. Accordingly, Defendants waived sovereign immunity with respect to enforcement of the Stipulated Agreement. *See In re Lazar,* 237 F.3d at 976. The waiver did not go away simply because Defendants changed their collective mind.

## V.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied except as to the dismissal of the State as to Counts I–IV.

DATED: Honolulu, Hawai'i, September 8, 2023.

CADES SCHUTTE
A Limited Liability Law Partnership

*/s/ Calvert G. Chipchase*
CALVERT G. CHIPCHASE
MALLORY T. MARTIN
LISA K. SWARTZFAGER
Attorneys for Plaintiffs
HELICOPTER ASSOCIATION
INTERNATIONAL and SAFARI
AVIATION, INC. d/b/a SAFARI
HELICOPTERS HAWAI'I