CADES SCHUTTE
A Limited Liability Law Partnership

CALVERT G. CHIPCHASE      7757
LISA K. SWARTZFAGER       10867
1000 Bishop Street, Suite 1200
Honolulu, Hawaiʻi 96813-4212
Telephone: (808) 521-9200
Email: cchipchase@cades.com
        lswartzfager@cades.com

Attorneys for Plaintiffs
HELICOPTER ASSOCIATION
INTERNATIONAL and SAFARI AVIATION,
INC. d/b/a SAFARI HELICOPTERS HAWAIʻI

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| HELICOPTER ASSOCIATION INTERNATIONAL, SAFARI AVIATION, INC. d/b/a SAFARI HELICOPTERS HAWAIʻI<br><br>                Plaintiffs,<br><br>        v.<br><br>STATE OF HAWAIʻI; DEPARTMENT OF TRANSPORTATION, STATE OF HAWAIʻI; and EDWIN SNIFFEN, in his official capacity as Director of the Hawaiʻi Department of Transportation,<br><br>                Defendants. | Civil No. 1:23-cv-00083<br><br>**PLAINTIFFS HELICOPTER ASSOCIATION INTERNATIONAL and SAFARI AVIATION, INC. d/b/a SAFARI HELICOPTERS HAWAIʻI'S OPPOSITION TO DEFENDANT EDWIN SNIFFEN'S MOTION FOR SUMMARY JUDGMENT**<br><br>**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**<br><br>**CERTIFICATE OF SERVICE** |

**PLAINTIFFS HELICOPTER ASSOCIATION INTERNATIONAL and SAFARI AVIATION, INC. d/b/a SAFARI HELICOPTERS HAWAIʻI'S OPPOSITION TO EDWIN SNIFFEN'S <u>MOTION FOR SUMMARY JUDGMENT</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

I.   UNDISPUTED FACTS ................................................................. 6

   A.   Act 311. ......................................................................... 6

   B.   The Monthly Reporting Requirements Impose Burdens. ..... 7

   C.   Air Tours in Hawaiʻi Operate Under a Federal Regulatory Regime. ........................................................................... 8

II.   ARGUMENT .............................................................................. 9

   A.   Act 311 Is Not a Valid Exercise of the State's Proprietary Power. ........................................................................ 9

   B.   The Monthly Reporting Requirements Are Preempted Pursuant to the Field Preemption Doctrine. ....................... 12

   C.   The Monthly Reporting Requirements Are Void Pursuant to Conflict Preemption. ................................................... 17

   D.   The Monthly Reporting Requirements Are Preempted by the Airline Deregulation Act of 1978. ............................ 23

   E.   The Monthly Reporting Requirements Are Preempted by the ANCA. ................................................................... 27

   F.   Expanding Reporting Requirements Does Not Shield the New Requirements from Preemption. ........................... 30

   G.   Defendant Is Improperly Relitigating the Questions of Sovereign Immunity. ...................................................... 30

III.   CONCLUSION ......................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                          **Page(s)**

*ABC Charters, Inc. v. Bronson*,
    591 F.Supp.2d 1272 (S.D. Fla. 2008) ..................................... 26-27, 27

*Air Evac EMS, Inc. v. Dodrill*,
    548 F.Supp.3d 580 (S.D. W.Va. 2021) ............................................. 27

*Air Evac EMS, Inc. v. Robinson*,
    486 F.Supp.2d 713 (M.D. Tenn. 2007) ............................................. 14

*Air Transp. Ass'n of Am., Inc. v. Cuomo*,
    520 F.3d 218 (2d Cir. 2008) ................................................. 4

*Arizona v. U.S*,
    567 U.S. 387 (2012) ....................................... 12, 17, 18, 23

*Bernstein v. Virgin America, Inc.*,
    3 F.4th 1127 (9th Cir. 2021) ....................................... 4, 13

*Blue Sky Entertainment, Inc. v. Town for Gardiner*,
    711 F.Supp. 678 (N.D.N.Y. 1989) ............................................. 13, 17

*British Airways Bd. v. Port Authority*,
    564 F.2d 1002 (2nd Cir. 1977) ........................................... 10

*Burbank v. Lockheed Air Terminal, Inc.*,
    411 U.S. 624 (1973) ................................................... 13, 21

*Congress of Cal. Seniors v. Catholic HealthCare West*,
    104 Cal.Rptr.2d 655, n.13 (App. 2001) ............................................. 22

*English v. General Electric Co.*,
    496 U.S. 72 (1990) ............................................................. 23

*Ex Parte Young*,
    209 U.S. 123 (1908) ............................................... 6, 30, 31

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*,
    841 F.3d 133 (2d Cir. 2016) ...................................... *passim*

*Gobeille v. Liberty Mutual Ins. Co.*,
577 U.S. 312 (2016) .................................................................... 22

*Int'l Aerobatics Club Chapter 1 v. City of Morris*,
76 F. Supp. 3d 767 (N.D. Ill. 2014) ................................................ 2, 14

*Kramer v. HTX Helicopters, LLC*,
2023 WL 4053898 (R.I. Super. June 12, 2023) ................................. 29

*Millard Refrigerated Services, Inc. v. FAA*,
98 F.3d 1361 (D.C. Cir. 1996) .......................................................... 28

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ......................................................... 5, 24, 25, 27

*Northwest Airlines, Inc. v. Minnesota*,
322 U.S. 292 (1944) .................................................................. *passim*

*San Francisco v. FAA*,
942 F.2d 1391 (9th Cir. 1991) .................................................. 10, 11

*U.S. v. Locke*,
529 U.S. 89 (2000) .......................................................................... 22

*U.S. v. State of New York*,
708 F.2d 92 (2d Cir. 1983) ............................................................... 32

*Weeks v. American Eagle*,
2008 WL 11351284 (S.D. Ohio Dec. 22, 2008) ........................... 26, 27

**Statutes**

49 U.S.C. § 40101 .............................................................................. 3
49 U.S.C. § 41713(b)(1) ............................................................ 1, 5, 24
49 U.S.C. § 47521 .............................................................................. 1
49 U.S.C. § 47521(2)–(3) .................................................................. 28
49 U.S.C. § 47524 ............................................................................ 23
49 U.S.C. § 47524(b) ..................................................................... 6, 28
49 U.S.C. § 47524(c) ........................................................................ 28
49 U.S.C. §§ 1302(a)(4), 1302(a)(9) .................................................. 24

HRS § 261-12(b) ........................................................... *passim*

HRS § 261-12(a)(2) ........................................................ 23, 29

HRS § 261-12(b) ........................................................... *passim*

HAR § 19-34-1.1 ................................................................ 16

HAR § 19-34-8 ............................................................... 23, 29

HAR § 19-34-13 ................................................................ 1, 2

## Other

14 C.F.R § 161.205(a) .......................................................... 28

14 C.F.R. Part 136 ...................................................... 8, 10, 28

14 C.F.R. § 161.205(a) .......................................................... 6

14 C.F.R. §§ 135.19(c), 135.23(f), 135.23(p)(2), 135.65, 136.1 .............. 19

24 C.F.R. § 136.73 ............................................................. 20

56 Fed. Reg. 48661, 48664 (Sept. 25, 1991) ................................... 29

HAR § 19-34-1.1 ................................................................ 16

HAR § 19-34-8 ............................................................... 23, 29

HAR § 19-34-13 ................................................................ 1, 2

Plaintiffs Helicopter Association International[1] and Safari Aviation, Inc. d/b/a Safari Helicopters Hawaiʻi ("**Safari**" and together with HAI, "**Plaintiffs**") oppose Defendant Edwin Sniffen's Motion for Summary Judgment [Dkt. 48] ("**Defendant's Motion**") filed on April 17, 2024.[2]

Defendant partially concedes preemption when he admits that "[Session Act 311 ("**Act 311**")] amended [Hawaiʻi Revised Statutes ("**HRS**")] § 261-12 to require tour aircraft operators to file certain reports and disclosures to aid the State in monitoring compliance with federal regulations." Dkt. 48-1 ("**Def. Mot.**"). Defendant completes the concession when he admits that Act 311 "expand[s] the reporting requirements that have been place for decades under HAR § 19-34-13" and that there

---

[1] After filing the Complaint, HAI changed its name to Vertical Aviation International. As used in these papers, HAI refers to Vertical Aviation International, formerly known as Helicopter Association International. Dkt. 59-5 (Clark Decl.) ¶¶5-7.

[2] Plaintiffs filed a Motion for Summary Judgment, which seeks summary judgment in their favor on their claims that the monthly reporting requirements imposed by the amendments to HRS § 261-12(b), as set forth in Act 311, are preempted pursuant to field preemption, conflict preemption, the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1) ("**ADA**"), and the Airport Noise and Capacity Act of 1990, 49 U.S.C. § 47521, *et seq.* ("**ANCA**"). Plaintiffs incorporate by reference the undisputed facts and arguments set forth in their Motion. *See* Dkt. 58.

are "consequences of enforcement" For operators who do not comply with the requirements. *Id.* at 7. Those consequences of enforcement for not complying with the requirements of Act 311 include denying federally approved operators the right to operate air tours. HRS § 261-12(b). A state cannot impose requirements on federally approved operators in aid of its monitoring of compliance with federal law under threat of enforcement for failing to follow those state requirements. because "**exclusive enforcement is an indispensable component of [the FAA's] plenary authority**." *Int'l Aerobatics Club Chapter 1 v. City of Morris*, 76 F. Supp. 3d 767, 783 (N.D. Ill. 2014) (emphasis added) (holding an ordinance that "purports to empower municipal officials not employed by the FAA to enforce FAA standards" is preempted and not enforceable). The requirements imposed under Act 311 are preempted.

In a futile fight against the effect of those admissions, Defendant makes several arguments. None of the arguments has merit.

First, Defendant argues that the monthly reporting requirements fall within the State's proprietary powers to control noise at state-owned airports. Def. Mot. at 8-15. The proprietary exception to preemption does not apply to the reporting requirements because they go beyond

2

regulating noise at the airport and its "immediate environs" and because they discriminate as to a specific category of airport users. *See Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 154 (2d Cir. 2016) ("***Friends***") ("[The proprietary] right … **is narrow**, vesting the proprietor 'only with the power to promulgate reasonable, nonarbitrary **and non-discriminatory regulations that establish acceptable noise levels for the airport and its immediate environs**.'") (citations omitted; emphasis added). Moreover, there is no proprietary exception for ANCA, which imposes certain procedures and federal review before enacting noise regulations. *Id.* at 153-54.

Second, Defendant argues that field preemption does not apply because the reporting requirements "do not address any field or subject matter already occupied by federal law." Def. Mot. at 7. The argument reflects a misunderstanding of preemption. The federal government exclusively occupies the field of aviation safety and efficiency, including through the Federal Aviation Act, 49 U.S.C. § 40101, *et seq.*, as amended ("**Federal Aviation Act**"). State regulations that attempt to regulate in that field are preempted. *See Northwest Airlines, Inc. v. Minnesota*, 322 U.S. 292, 303 (1944) (Jackson, J. concurring) ("Congress has recognized

3

the national responsibility for [regulating] air commerce. Federal control is intensive, and exclusive."); *Bernstein v. Virgin America, Inc.*, 3 F.4th 1127, 1138-39 (9th Cir. 2021) ("[C]ase law makes clear that field preemption generally applies to state regulations specifically in the field of aviation safety.").

Third, Defendant argues that "[a]lthough there is federal law concerning air tours flying over national parks and tribal lands, Act 311 on its face addresses airspace including those other than national parks and tribal lands." Def. Mot. at 7. There are two problems with this argument. One, air tours that fly over national parks are subject to the state reporting requirements. Two, the state reporting requirements conflict with the Federal Aviation Act and the regulations promulgated thereunder, which govern the nation's airspace. *See Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 224 (2d Cir. 2008) ("[T]he FAA was passed by Congress for the purpose of centralizing in a single authority … the power to frame rules for the safe and efficient use of the nation's airspace.") (internal quotations omitted).

Fourth, Defendant argues that the reporting requirements "do[] not address rates or services" and do not "govern routes." Def. Mot. at 8. The

4

argument mistakes the forest for two trees. The ADA broadly preempts all regulations "**related to** a price, route, **or** service of an air carrier." 49 U.S.C. § 41713(b)(1) (emphasis added). Act 311 requires reporting on, among other things, flight plans and deviations from intended flight plans and, therefore, "relates to" a price, route, or service of an air carrier. *See, e.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-90 (1992) (concluding the ADA preempts states from enforcing their deceptive practices laws against airline fare advertising and explaining "the key phrase" in the ADA is "relating to," which has a broad definition and "the words thus express a broad pre-emptive purpose").

Fifth, Defendant argues that the federal reporting requirements referred to in Plaintiffs' Amended Complaint do "not preclude the enactment or implementation of Act 311." Def. Mot. at 10. Even if we pretended that Act 311 did not impose reporting requirements in excess of federal law and further pretended that federal law did not occupy the field, ANCA broadly prohibits local proprietors from imposing any noise or access restrictions on Stage 2 aircraft, which includes most helicopters, unless the proprietor complies with specific procedural requirements that

the State indisputably did not follow with respect to Act 311. *See* 49 U.S.C. § 47524(b); 14 C.F.R. § 161.205(a).

Sixth, Defendant argues that the monthly reporting requirements are a valid expansion of existing state reporting requirements. This argument is as puzzling as it is mistaken. One, there is no exception to preemption where a new requirement expands on existing requirements. Two, there is nothing to indicate that the existing requirements are themselves valid.

Finally, Defendant reargues the claim to sovereign immunity. Def. Mot. at 6. This Court already determined that Plaintiffs' claims fall under the doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908) and, therefore, are not barred by the Eleventh Amendment. Dkt. 30 (Order Granting in Part Mot. to Dismiss) at 11-13.

The Court should deny Defendant's Motion.

## I.    UNDISPUTED FACTS

### A.    Act 311.

Act 311 amended HRS § 261-12(b) to provide in part as follows:

> [N]o tour aircraft operation shall be permitted in any airport under the State's control without having a permit. The

6

director shall adopt rules to regulate tour aircraft operations by permit, which shall include but not be limited to: ...

(8) Submission of monthly written reports to the department, which shall be made available to the public, of each tour operation that occurred during the duration of the preceding month, including:

(A) The date and time that the aircraft took off and landed;

(B) The number of individuals aboard the aircraft during the operation;

(C) The flight path from takeoff through landing; and

(D) Whether the aircraft deviated from its intended flight plan....

## B.   The Monthly Reporting Requirements Impose Burdens.

The monthly reporting requirements are burdensome and harmful to Safari and other HAI members who operate air tours in Hawai'i. HAI's members operate multiple flights a day, seven days a week. Dkts. 59-2 to 59-5 (Armenta Decl. ¶9; Dorn Decl. ¶6; Murphy Decl. ¶6). The reporting requirements will require operators to dedicate substantial time and resources to reporting data on flights every month that, absent HRS § 261-12(b), they are not required to collect and compile. Dkts. 59-2 to 59-5 (Armenta Decl. ¶¶10-11; Dorn Decl. ¶¶7-8; Murphy Decl. ¶8; Clark Decl. ¶14). The monthly reporting requirements will also require more work

from pilots, who will need to record flight plans and "deviations" from those plans. HRS § 261-12(b)(8)(C)-(D).

## C. Air Tours in Hawai'i Operate Under a Federal Regulatory Regime.

Various federal statutes and associated regulations govern national airspace and aviation, all of which fall under the purview of the FAA. In conjunction with 14 C.F.R. Part 136 ("**Part 136**"), air tour operators in Hawai'i operate under one or two regulations: (1) 14 C.F.R. Part 135 ("**Part 135**") with the associated Operations Specifications; and/or (2) 14 C.F.R. Part 91 ("**Part 91**") with an associated Letter of Authorization.

Safari and most, if not all, HAI members conduct air tours as Part 135 operations. Dkt. 59-2 to 59-5 (Armenta Decl. ¶¶14-15; Dorn Decl. ¶¶11-12; Murphy Decl. ¶¶12-13; Clark Decl. ¶¶10-11).

The FAA also requires air tour operators to abide by the Hawaii Air Tour Common Procedures Manual, which is a detailed 169-page document. *See* Dkt. 59-17 (Ex. 12 to Pls.' Mot at 4-5).[3]

---

[3] All numbered exhibits reference the exhibits filed in support of Plaintiffs' Motion for Summary Judgment [Dkt. 48] and attached to Plaintiffs' Amended Concise Statement of Facts [Dkt. 59].

## II.   <u>ARGUMENT</u>

Defendant's Motion fails because the monthly reporting require-ments are preempted. Defendant's argument that the reporting requirements are allowed as an exercise of proprietary power to control noise at airports fails because the requirements go beyond regulating noise at the airport and are discriminatory (Section A). Defendant's ar-guments with respect to field preemption (Section B), conflict preemption (Section C), the ADA (Section D) and ANCA (Section E) have no merit. Defendant's argument that the monthly reporting requirements are not preempted because they expand on existing requirements is unfounded in the law and calls the other reporting requirements into question (Sec-tion F). Finally, as this Court has already determined, sovereign immunity does not bar Plaintiffs' claims (Section G).

### A.   **Act 311 Is Not a Valid Exercise of the State's Proprie-tary Power.**

Defendant asserts that to the extent Act 311 "also addresses 'con-cern with safety risks and community disruption arising from tour helicopter and small aircraft operations'" and is not discriminatory, it is a valid exercise of proprietary powers. Mot. at 14.

9

Putting ANCA aside, the right of an airport proprietor to control noise at local airports "**is narrow**, vesting the proprietor 'only with the power to promulgate reasonable, nonarbitrary **and non-discriminatory regulations that establish acceptable noise levels for the airport and its immediate environs**.'" *Id.* at 154 (citations omitted; emphasis added). As the Ninth Circuit has explained, although "[t]he federal government regulates aircraft and airspace pervasively, preempting regulation of aircraft noise by state or local governments[,] … Congress reserved **a limited role** for local airport proprietors in regulating noise levels **at their airports**." *San Francisco v. FAA*, 942 F.2d 1391, 1394 (9th Cir. 1991) (emphasis added; citation omitted); *see British Airways Bd. v. Port Authority,* 564 F.2d 1002, 1010 (2nd Cir. 1977) (airport proprietors have an "**extremely limited role**" in the system of aviation regulation) (emphasis added).

The monthly reporting requirements do not fall within the State's proprietary rights for at least two reasons. First, the monthly reporting requirements are not narrowly restricted to controlling noise at the airport and its immediate environs. Rather, Act 311 requires the submission of a monthly reports for all tours from state-controlled airports regardless

of whether the tour stays within the immediate environs of the airport and requires information regarding, *inter alia*, "the flight path **from takeoff through landing**" and whether the aircraft deviated from the intended flight plan. HRS § 261-12(b)(8) (emphasis added). Thus, the reporting requirements are not restricted to regulating noise at the airport and its immediate vicinity. *See, e.g.*, *Friends*, 841 F.3d at 154.

Second, the monthly reporting requirements are discriminatory because they only apply to one category of airport users—air tour operators. Indeed, in its comments on S.B. 3272, the Hawaiʻi Department of Transportation ("**HDOT**") stated:

> The [FAA] … obligates [Hawaiʻi] DOT to make its airports available for public use on reasonable terms and without unjust discrimination to all aeronautical activities. **The bill proposes to affect a specific population of airports users, thus arguably, discriminates**. **The FAA has authority to regulate the air space and aircraft operations. The [Hawaiʻi] DOT has no authority to establish rules or offer contract terms that attempts to manage flight operations of helicopter operators**.

*See* Dkt. 59-12 (2/15/2022 Comments at 1 (emphasis added)). Noise regulations for airports that are discriminatory are not allowed. *See San Francisco,* 942 F.2d at 1396 (enjoining local noise regulation that prohibited one type of aircraft landing rights as unjustly discriminatory).

Bringing ANCA back into consideration adds another point of preemption because there is no proprietary exception for ANCA. *Friends*, 841 F.3d at 153-54.

### B. The Monthly Reporting Requirements Are Preempted Pursuant to the Field Preemption Doctrine.

Defendant asserts that field preemption does not apply because the monthly reporting requirements "do not address any field or subject matter already occupied by federal law." Mot. At 6. Defendant is wrong. The monthly reporting requirements address aviation safety and efficiency, which Congress has determined should be regulated exclusively by the federal government.

Under field preemption, "[s]tates are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance." *Arizona v. U.S*, 567 U.S. 387, 399 (2012). The Supreme Court has explained that "[t]he intent to displace state law altogether can be inferred from a framework of regulation 'so pervasive … that Congress left no room for the States to supplement it' or where there is a 'federal interest … so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" *Id*. (citation omitted).

Here, the FAA has exclusive authority to regulate how aircraft operate and all other matters related to aviation safety and efficiency. *See, Northwest Airlines*, 322 U.S. at 303 (Jackson, J. concurring) ("**Congress has recognized the national responsibility for [regulating] air commerce. Federal control is intensive, and exclusive**."); *Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 644 (1973) ("[t]he paramount concerns of Congress were to regulate federally all aspects of air safety … and, once aircraft were 'in flight,' airspace management") (citations omitted). Indeed, Ninth Circuit "case law makes clear that field preemption generally applies to state regulations specifically in the field of *aviation safety.*" *Bernstein*, 3 F.4th at 1138-39; *see also Blue Sky Entertainment, Inc. v. Town for Gardiner*, 711 F.Supp. 678, 692 (N.D.N.Y. 1989) ("[F]ederal law in the area of aviation is so pervasive that it preempts a municipal ordinance which attempts to govern the flight paths of aircraft using an airport which has no control tower, is not served by a certified carrier and has no regularly scheduled flights.").

Congress's intent regarding the FAA's role and authority in regulating safety and efficiency of the national airspace system in Hawaiʻi, including related to aviation noise reduction, is confirmed by Section 364

of the FAA Reauthorization Act of 2024 ("**Section 364**"). Among other things, Section 364 allows a Hawaiʻi noise and safety task force to make recommendations to the FAA and reserves to the FAA the exclusive responsibility thereafter to (1) issue an intent to proceed with a proposed rulemaking, (2) take other action sufficient to carry out feasible, consensus recommendations and (3) issue a statement determining that no such rule or other action is warranted. P.L. 118-63 (effective May 16, 2024) (Ex. A at 3-4).

Field preemption is so strong that it applies even where a state law requirement is intended to parallel an FAA requirement. *See Air Evac EMS, Inc. v. Robinson*, 486 F.Supp.2d 713, 724 (M.D. Tenn. 2007) (rejecting argument that state "regulations merely supplement federal enactments" as "irrelevant to a finding of field preemption" and concluding rules pertaining to plaintiff's avionics equipment are preempted). As one court explained, "**exclusive enforcement is an indispensable component of [the FAA's] plenary authority**" and, thus, a local ordinance that "purports to empower municipal officials not employed by the FAA to enforce FAA standards" is preempted. *City of Morris*, 76 F. Supp. 3d at 783 (emphasis added).

14

The monthly reporting requirements regulate in the area of aviation safety, which area is exclusively within the province of the FAA. *See* Dkt. 59-6 (Ex. 1 to Pls.' Mot., § 1). Indeed, the safety purpose of S.B. 3272 was reiterated throughout the legislative hearing process:

- "Your Committee finds that, while there have been several efforts to address the excessive noise and **safety hazards** posed by tour helicopters and small aircrafts operating in the State, **community concerns over excessive noise and safety hazards continue to grow**. This measure will assist [HDOT] in its monitoring of tour aircraft operators to determine their compliance with federal and state laws. Dkt. 59-7 (Ex. 2 (Stand. Comm. Rep. 1900-22) at 1 (emphasis added)).

- "Your Committee on Conference finds that **the noise from low-flying aircrafts over residential areas can cause health issues and negatively impact quality of life**. Due to increasing concerns, this measure requires tour aircraft operations to file reports so that the State can monitor their compliance with federal regulations." Dkt. 59-8 (Ex. 3 (Conf. Comm. Rep. 208-22) at 1 (emphasis added)).

- "Your Committee finds that there is increasing **concern with safety risks** and community disruption arising from tour helicopter and small aircraft operations in the State. Although there have been collaborative efforts to **address increasing safety** and community disruption concerns, **this measure further ensures transparency and accountability for tour aircraft operators by establishing certain reporting requirement**s." Dkt. 59-9 (Ex. 4 (Stand. Comm. Rep. 1231-22) at 1-2 (emphasis added)).

- "Your Committee therefore finds that decisive action must be taken **to increase safety precautions**." Dkt. 59-10 (Ex. 5 (Stand. Comm. Rep. 2694) at 2 (emphasis added)).

- "Federal regulations have established rules to mitigate this problem, but is in the interest of the State **to monitor and ensure that these rules and regulations are being followed**." Dkt. 59-11 (Ex. 6 (Stand. Comm. Rep. 2790) at 1 (emphasis added)).

Tellingly, HDOT and state officials recognized the preemption problems with the reporting requirements. For example, former Governor Ige initially included S.B. 3272 on his intent-to-veto list because, in his words, under "federal preemption, [HDOT] has no authority to impose or enforce regulations regarding air space and aircraft operations under the jurisdiction of the Federal Aviation Administration[.]" Dkt. 59-16 (Ex. 11 (6/27/2022 Announcement)). Consistent with this statement, Hawai'i's Attorney General warned in testimony that a requirement that helicopter operators maintain and make available records about their operations would be "subject to challenge under the Supremacy Clause of the U.S. Constitution." Dkt. 59-14 (Ex. 9 (2/9/2021 Testimony) at 1); *see also* HAR § 19-34-1.1 (acknowledging that any air tour requirements that are contrary to federal law must yield thereto). And in commenting on S.B. 3272, HDOT acknowledged, "**The FAA has authority to regulate the air space and aircraft operations. The [Hawai'i] DOT has no authority to establish rules or offer contract terms that attempts to**

**manage flight operations of helicopter operators**.” Dkt. 59-12 (Ex. 7 (2/15/2022 Testimony) at 1 (emphasis added)). The Governor, the Attorney General and HDOT were right.

In contravention of these principles, S.B. 3272 expressly provides that “it is in the interest of **the State to monitor and ensure that federal regulations are being followed**” and, on that basis, “[**r]equire[s] tour aircraft operators to file appropriate reports and disclosures so that the State can monitor their compliance with federal regulations**.” *See* Dkt. 59-6 (Ex. 1 at § 1) (emphasis added). Monitoring compliance with federal regulations is within the exclusive province of the FAA. The State’s attempt to regulate in this area is preempted. *See Blue Sky Entertainment*, 711 F.Supp. at 692. Accordingly, the reporting requirements are void. *See Arizona,* 567 U.S. at 399; *Northwest Airlines*, 322 U.S. at 303.

### C. The Monthly Reporting Requirements Are Void Pursuant to Conflict Preemption.

The monthly reporting requirements are void pursuant to conflict preemption for two reasons. First, they are an obstacle to Congress’s intent to regulate the safety and operations of air tours in Hawaiʻi because they impose more onerous requirements than those imposed by the FAA.

17

Second, they stand as an obstacle to Congress's intent to allow all aeronautical activities reasonable access to airports.

Defendant's only arguments regarding conflict preemption are that "[a]lthough there is federal law concerning air tours flying over national parks and tribal lands, Act 311 on its face addresses airspace including those other than National Parks and tribal lands" and that the consequences of enforcement are not in conflict with any federal penalties. Mot. at 13. These arguments fail for at least four reasons.

First, conflicting penalties are not a prerequisite to conflict preemption. Rather, conflict preemption exists "where compliance with both federal and state regulations is a physical impossibility" or in "those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399 (internal quotations omitted). The full purpose and objective of Congress was to occupy the field of air commerce, including aviation safety. *Northwest Airlines*, 322 U.S. at 303. Yet the monthly reporting requirements impose more onerous requirements than those required by the FAA.

For example, as noted, the monthly reporting requirements direct Safari and HAI members to compile and report data that would not be otherwise compiled and reported. *See supra*, Section I.B.

In addition to the numerous generally applicable regulations for aircraft operations in Title 14, Chapter I of the Code of Federal Regulations, Part 135 is a comprehensive regulatory scheme for charter operations that includes various reporting requirements and Part 136 sets forth safety and operational rules for commercial air tours and national parks air tour management. *See* 14 C.F.R. §§ 135.19(c), 135.23(f), 135.23(p)(2), 135.65, 136.1.

HAI members operating in Hawai'i generally conduct air tours under Part 135 authority from the FAA, and most, if not all, their sightseeing flights are operated in conformity with Parts 135 and 136. *See supra*, at Section I.C. Appendix A to Part 136 includes additional specific safety and operational regulations that apply to air tours in Hawai'i.

Air tour operators also must report certain information regarding deviations from the requirements in the Hawai'i Air Tour Manual to the FAA. *See* Dkt. 59-17 (Ex. 12 at 4-5, 7). These federal regulations and requirements do not impose the data collection and reporting contemplated

19

by the monthly reporting requirements. Thus, the information requested by the monthly reporting requirements is not data that is currently compiled or maintained by air tour operators. *See supra*, at Sections I.B-C.

The monthly reporting requirement related to deviations from flight paths provides an example. Under FAA regulations, intended flight paths are not typically submitted to the FAA for air tours. Air tours in Hawaiʻi are generally conducted under visual flight rules ("**VFR**") as opposed to instrument rules. *See* 24 C.F.R. § 136.73; Dkt. 59-5 (Clark Decl. ¶16). The filing of VFR flight plans is optional and not typically done by Safari or HAI's other members. Dkts. 59-2 to 59-4 (Armenta Decl. ¶17; Dorn Decl. ¶3; Murphy Decl. ¶11). The FAA has the authority to require air tours in Hawaiʻi to file VFR flight plans, but it has chosen not to exercise it.

In contrast, the monthly reporting requirements, which apply to all air tours regardless of whether the tour is utilizing VFR or instrument rules, require operators to submit reports detailing the intended flight path from takeoff through landing and any deviations from such path. *See* HRS § 261-12(b)(8)(C)-(D). Consequently, monthly reporting requirements effectively impose obligations for submissions of VFR flight plans

that are not required by the FAA to enable reports of deviations from those plans.

Second, Act 311 does not have a carve out for flights over national parks. Rather, HRS § 261-12(b) and the monthly reporting requirements contained therein broadly apply to all air tours that operate from state-controlled airports. *See* HRS § 261-12(b). Since these reporting requirements are not required by the rules governing the Volcano National Park and Haleakala National Park, they conflict with the federal rules for the parks. *See, e.g.*, Dkt. 59-18 (Ex. 13); Dkt. 59-19 (Ex. 14); *supra*, at Section I.B.

Third, Defendant erroneously presumes that federal rules and regulations over aviation activities are limited to tribal lands and national parks. As the Supreme Court has explained, "Congress has recognized the national responsibility for [regulating] air commerce. Federal control is intensive, and exclusive." *Northwest Airlines,* 322 U.S. at 303 (1944) (Jackson, J. concurring). "The paramount concerns of Congress were to regulate federally all aspects of air safety … and, once aircraft were 'in flight,' airspace management." *Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 644 (1973) (internal citations omitted).

Finally, even where state reporting requirements merely overlap with or burden a federal area of regulation, the state requirements are preempted. *See Gobeille v. Liberty Mutual Ins. Co.*, 577 U.S. 312, 323 (2016) (preemption of a state reporting requirement for employee benefit plans "is necessary to prevent the States from imposing novel, inconsistent, and burdensome reporting requirements on plans"); *U.S. v. Locke*, 529 U.S. 89, 116 (2000) ("Congress did not intend its reporting obligations to be cumulative to those enacted by each political subdivision whose jurisdiction a vessel enters"); *Congress of Cal. Seniors v. Catholic HealthCare West*, 104 Cal.Rptr.2d 655, n.13 (App. 2001) ("[F]ederal Medicare law preempts the field of provider cost reporting.").

The State may enforce the reporting requirements by restricting access to state-owned airports. Specifically, HRS § 261-12(b) provides that "no tour aircraft operations **shall be permitted in any airport under the State's control** without having a permit." Defendant is required to implement the monthly reporting requirements to "**regulate tour aircraft operations by permit**." *Id.* (emphasis added). Thus, the monthly reporting requirements authorized by section 261-12(b)(8) impose an access restriction at all state-owned airports in Hawaiʻi. Air tour

22

operators are required to meet the reporting requirements to obtain a permit enabling them to operate at those airports (a requirement that is not imposed on any other category of operator), subject to the revocation of the permit pursuant to HAR § 19-34-8 and pursuant to HRS § 261-12(a)(2).

Most airports in Hawai'i are state-owned, and most air tours by HAI members are conducted at those state-owned airports. *See* Dkt. 58 at 21 n.5; Dkts. 59-2 to 59-5 (Armenta Decl. ¶18; Dorn Decl. ¶14; Murphy Decl. ¶14; Clark Decl. ¶9). For the reasons we have explained, the monthly reporting requirements and the penalties of access restriction and fines are contrary to the Federal Aviation Act and ANCA for multiple reasons. *See, e.g.*, 49 U.S.C. § 47524 (generally prohibiting the imposition of access restrictions at publicly owned airports); *supra*, at Section II.B; *infra*, at Section II.E. For the same reasons, the reporting requirements are void under the conflict preemption doctrine. *See English v. General Electric Co.*, 496 U.S. 72, 79 (1990); *Arizona*, 567 U.S. at 399.

### D.   The Monthly Reporting Requirements Are Preempted by the Airline Deregulation Act of 1978.

Congress enacted the ADA based on its determination that "maximum reliance on competitive market forces" would best further

efficiency, innovation, and low prices" as well as "variety [and] quality ... of air transportation services." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378–79 (1992) (citing former 49 U.S.C. §§ 1302(a)(4), 1302(a)(9)). "To ensure that the States would not undo federal deregulation with regulation of their own," *id.*, the ADA codified an express prohibition on states or localities "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law **related to a price, route, or service of an air carrier**." 49 U.S.C. § 41713(b)(1) (emphasis added).

Defendant defends Act 311 on the grounds that it "does not address rates or services" and does not "govern routes, since air tours in Hawai'i are generally conducted under visual flight rules ('**VFR**') as opposed to instrument rules and the filing of VFR flight plans is almost always optional." Def. Mot. at 14. The defense fails.

The ADA prohibits state regulations **related** to a price, **route, or service** of an air carrier without regard as to whether state regulations govern flights conducted under VFRs or instrument rules. *See* 49 U.S.C.

§ 41713(b)(1). Even a cursory review of Act 311 reveals that it relates to a route and service of an air carrier.[4]

In *Morales,* the Supreme Court held that the ADA preempts states from enforcing their deceptive practices laws against airline fare advertising. 504 U.S. at 383-390. In considering the scope of the ADA's preemption provision, the Court explained that "the key phrase" is "relating to," which has a broad definition and "the words thus express a broad pre-emptive purpose." *Id.* at 383. The Court adopted the same standard that it had set forth in considering the preemption provision of the ERISA with similar "relate to" language, which has a "broad scope," has an "expansive sweep," is "deliberately expansive" and is "conspicuous for its breadth." *Id.* (citations omitted). The Court further explained that "[s]tate enforcement actions **having a connection with or reference to** airline 'rates, routes, or services' **are pre-empted**" even if the challenged law is consistent with federal law and even if the law's effect "is only indirect." *Id.* at 383, 386-387 (emphasis added).

---

[4] As detailed in Plaintiffs' Motion, Safari and HAI members are air carriers. *See* Dkt. 58 at 23-24. Defendant has not argued otherwise.

As detailed above, the monthly reporting requirements attempt to regulate aviation safety by requiring Safari and HAI's members to report information on routes and services provided, including the date and time the aircraft took off and landed, the number of individuals aboard the aircraft during the operation, the flight path from takeoff through landing and whether the aircraft deviated from its intended flight plan. *See* HRS § 261-12(b)(8). These requirements are based on the assertion that "it is in the interest of the State to monitor and ensure that federal regulations are being followed" and to "[r]equire tour aircraft operators to file appropriate reports and disclosures so that the State can monitor their compliance with federal regulations." *See* Dkt. 59-6 (Ex. 1, § 1).

Courts consistently hold that state reporting requirements on air carriers are preempted by the ADA. For example, in *Weeks v. American Eagle Airlines, Inc.*, the court held "[**a]ir safety and the associated reporting requirements are inherently related to aircraft services**– protecting passengers and crew by ensuring compliance thus cannot be too remote for preemption." 2008 WL 11351284, *2 (S.D. Ohio Dec. 22, 2008) (emphasis added); *see also ABC Charters, Inc. v. Bronson*, 591 F.Supp.2d 1272, n.26 (S.D. Fla. 2008) ("[T]he imposition of … pervasive

26

reporting requirements … is, on its face, related to the 'service' of tour operators …, as well as their 'price' and 'routes[.]'"); *Air Evac EMS, Inc. v. Dodrill*, 548 F.Supp.3d 580, 590-91 (S.D. W.Va. 2021) (financial reporting requirements are preempted by Section 41713); Dkt. 59-15 (Ex. 10 (*Inspection Fee Proceeding*, Order 2012-1-18 (January 24, 2012)) at 21) (concluding ADA preempts Hawaii statute requiring air carriers to collect and report on a plant/animal inspection fee).

    In accord with those decisions, the monthly reporting requirements are preempted by the ADA because they impose constraints on operators' routes and services. *See Morales*, 504 U.S. at 383; *Weeks*, 2008 WL 11351284, *2; *ABC Charters*, 591 F.Supp.2d at 1272 n.26; *Air Evac EMS*, 548 F.Supp.3d at 590-91.

### E.   The Monthly Reporting Requirements Are Preempted by the ANCA.

    Defendant asserts that the monthly reporting requirements are not preempted by ANCA because certain federal reporting requirements identified in Plaintiffs' Amended Complaint do "not preclude the enactment or implementation of Act 311." Def. Mot. at 10. That is not the test for ANCA preemption. Rather, ANCA prohibits local proprietors from imposing any noise or access restriction on Stage 2 aircraft, which includes

27

most helicopters, unless the proprietor complies with the procedural requirements set forth in 14 C.F.R. Part 161 ("**Part 161**") for the study, public comment on and FAA review of the restrictions. *See* 49 U.S.C. § 47524(b); 14 C.F.R § 161.205(a).[5] ANCA does not contain an exception for proprietary authority. *Friends*, 841 F.3d at 153-54.

"Congress promulgated ANCA based on findings that 'community noise concerns have led to uncoordinated and inconsistent restrictions on aviation that could impede the national air transportation system' and, therefore, 'noise policy *must* be carried out at the national level.'" *Friends*, 841 F.3d at 150 (quoting 49 U.S.C. § 47521(2)–(3)). Consistently, the FAA has interpreted ANCA broadly to apply to both direct and indirect restrictions. *See, e.g.*, *Millard Refrigerated Services, Inc. v. FAA*, 98 F.3d 1361 (D.C. Cir. 1996); Notice and Approval of Airport Noise and Access

---

[5]"Aircraft are classified roughly according to the amount of noise they produce, from Stage 1 for the noisiest to Stage 3 for those that are relatively quieter." *Friends*, 841 F.3d at 138–39 (citation omitted). In addition to restrictions on Stage 2 aircraft, ANCA also prohibits local proprietors from imposing noise or access restrictions on Stage 3 aircraft unless the restriction has been accepted by all aircraft operators or certain federal approval requirements have been met. *See* 49 U.S.C. § 47524(c). The aircraft operated by HAI members are generally Stage 2 aircraft. Dkts. 59-2 to 59-5 (Armenta Decl. ¶16; Dorn Decl. ¶3; Clark Decl. ¶6).

Restrictions, 56 Fed. Reg. 48661, 48664 (Sept. 25, 1991) (stating "the Act contemplates a broad review of such restrictions").

"Since the enactment of ANCA, courts have found that any attempt by an airport proprietor to impose a noise and access restriction on Stage 2 or 3 aircraft without strictly following the procedural requirements of ANCA is preempted by federal law." *See Kramer v. HTX Helicopters, LLC*, 2023 WL 4053898, at *11 (R.I. Super. June 12, 2023) (citing, *inter alia*, *Friends*, 841 F.3d at151-52).

As explained, the legislative history of S.B. 3272 reflects that the monthly reporting requirements were enacted to address noise and safety. *See supra*, at 15-16. The monthly reporting requirements impose an access restriction at all state-owned airports in Hawaiʻi by requiring air tour operators to meet the reporting requirements in order to operate at those airports (a requirement that is not imposed on any other category of operator), subject to the revocation of the permit pursuant to HAR § 19-34-8 and fines pursuant to HRS § 261-21(a)(2).

The State, which is the proprietor of the airports at which air tours operate, has not complied with the procedural requirements set forth in Part 161 for the study, public comment and FAA review of the

29

restrictions. Accordingly, the monthly reporting requirements violate ANCA and its implementing regulations and are preempted. *See Friends*, 841 F.3d 133, 151-52.

### F.   Expanding Reporting Requirements Does Not Shield the New Requirements from Preemption.

Defendant argues that the monthly reporting requirements are not preempted because they are an expansion of existing requirements. Def. Mot. at 14-16.

This argument is puzzling. Defendant does not cite a single authority supporting any such exception. Nor would any such exception make sense as the "expanded" portion of regulations could be preempted even if the prior regulations were not preempted or the prior regulations could be preempted (for reasons similar to those discussed here) even though no one has challenged them.

### G.   Defendant Is Improperly Relitigating the Questions of Sovereign Immunity.

Defendant argues that "[a]side from making administrative rules, the Director has no other involvement with the challenged portion of Act 311" and, therefore, Defendant has sovereign immunity. Def. Mot. at 16.

This Court has already determined, Plaintiffs' claims fall under doctrine set forth in *Ex Parte Young*, 209 U.S. 123 (1908) and are not

barred by the Eleventh Amendment. Dkt. 30 (Order Granting in Part Defendant's Motion to Dismiss) at 11-13. The Court was correct. Since *Ex Parte Young* was decided in 1908, it has been settled that a suit against a state official in his or her official capacity seeking prospective relief is not barred by the Eleventh Amendment. *See* 209 U.S. 123 (1908). In considering *Ex Parte Young,* the relevant inquiry is whether the plaintiff seeks to "enjoin[] state officials from taking official action claimed to violate federal law." *Friends*, 841 F.3d at 144.

That inquiry is satisfied with respect to Defendant. Act 311 mandates that Defendant promulgate rules containing the monthly reporting requirement. *See* HRS § 261-12(b) ("The **director** [of HDOT] **shall** adopt rules[.]") (emphasis added). Plaintiffs allege that the requirement is preempted. An injunction will prevent Defendant and his agency, HDOT, from imposing the unconstitutional reporting requirement set forth in Act 311. In these circumstances, Defendant has a direct connection to the implementation and enforcement of the reporting requirement. Accordingly, the *Ex Parte Young* exception applies to the action against him for injunctive relief. *See Ex Parte Young*, 209 U.S. 123; *Friends*, 841 F.3d at 144–45 (claims seeking to enjoin enforcement of local laws because

they were enacted in violation of ANCA "falls squarely within federal equity jurisdiction as recognized in *Ex Parte Young* and its progeny"); *U.S. v. State of New York*, 708 F.2d 92, 94 (2d Cir. 1983) (relying on *Ex Parte Young* to uphold preliminary injunction against nighttime ban on airport use).

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendant's Motion.

DATED: Honolulu, Hawaiʻi, May 24, 2024.

CADES SCHUTTE
A Limited Liability Law Partnership

*/s/ Lisa K Swartzfager*
CALVERT G. CHIPCHASE
LISA K. SWARTZFAGER
MALLORY T. MARTIN
Attorneys for Plaintiffs
HELICOPTER ASSOCIATION
INTERNATIONAL and SAFARI
AVIATION, INC. d/b/a SAFARI
HELICOPTERS HAWAIʻI
