IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HELICOPTER ASSOCIATION INTERNATIONAL; SAFARI AVIATION, INC. d/b/a SAFARI HELICOPTERS HAWAIʻI, | ) ) ) ) ) | Civil No. 23-00083 KJM<br><br>ORDER:  (1) GRANTING PLAINTIFFS HELICOPTER ASSOCIATION INTERNATIONAL AND SAFARI AVIATION, INC. d/b/a SAFARI HELICOPTERS HAWAIʻIʼS AMENDED MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING DEFENDANT EDWIN SNIFFENʼS MOTION FOR SUMMARY JUDGMENT |

Plaintiffs,

vs.

STATE OF HAWAIʻI; DEPARTMENT OF TRANSPORTATION, STATE OF HAWAIʻI; and EDWIN SNIFFEN, in his official capacity as Director of the Hawaiʻi Department of Transportation,

Defendants.

_____

ORDER:  (1) GRANTING PLAINTIFFS HELICOPTER
ASSOCIATION INTERNATIONAL AND SAFARI AVIATION,
INC. d/b/a SAFARI HELICOPTERS HAWAIʻIʼS AMENDED
MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING
DEFENDANT EDWIN SNIFFENʼS MOTION FOR SUMMARY JUDGMENT

On April 17, 2024, Plaintiffs Helicopter Association International ("Plaintiff

HAI") and Safari Aviation, Inc. d/b/a Safari Helicopters Hawaiʻi ("Plaintiff

Safari") (collectively, "Plaintiffs") filed a Motion for Summary Judgment.  ECF

No. 50.  On April 29, 2024, Plaintiffs filed an Amended Motion for Summary

Judgment ("Plaintiffs' Amended Motion").  ECF No. 58.  On May 24, 2024,

Defendant Edwin Sniffen, in his official capacity as the Director of the Hawaii

Department of Transportation ("Defendant"), filed a Memorandum in Opposition to Plaintiffs' Amended Motion.  ECF No. 62.  On May 31, 2024, Plaintiffs filed a Reply.  ECF No. 69.

On April 17, 2024, Defendant filed a Motion for Summary Judgment ("Defendant's Motion").  ECF No. 48.  On May 24, 2024, Plaintiffs filed an Opposition to Defendant's Motion.  ECF No. 64.  On May 29, 2024, Plaintiffs filed an Errata to their Opposition to Defendant's Motion.  ECF No. 66.  On May 31, 2024, Defendant filed a Reply.  ECF No. 68.

On June 21, 2024, the Court held hearings on Defendant's Motion and Plaintiffs' Amended Motion (collectively, the "Cross Motions for Summary Judgment").  ECF No. 71.  Calvert G. Chipchase, Esq., and Lisa K. Swartzfager, Esq., appeared on behalf of Plaintiffs.  Stuart N. Fujioka, Esq., and Megan A.C. Oka, Esq., appeared on behalf of Defendant.  After carefully considering the Cross Motions for Summary Judgment, applicable law, the record in this case, and arguments of counsel, the Court GRANTS Plaintiffs' Amended Motion and DENIES Defendant's Motion for the reasons set forth below.

## BACKGROUND

The parties submitted concise statements of facts in connection with the Cross Motions for Summary Judgment.  ECF No. 57 ("Def. CSOF"); ECF No. 65 ("Pltfs. Response to Def. CSOF"); ECF No. 59 ("Pltfs. CSOF"); ECF No. 63

("Def. Response to Pltfs. CSOF").  After carefully reviewing the various statements, and based on the parties' representations at the hearing, the Court finds that all material facts are undisputed for purposes of deciding the Cross Motions for Summary Judgment.

I.      Undisputed Material Facts

Plaintiff HAI is a non-profit membership organization and trade association that represents the interests of helicopter operators around the world.  ECF No. 20 at 5 ¶ 14.  Plaintiff HAI has approximately 10 members who conduct air tours in Hawaii.  *See* Pltfs. CSOF at 3 ¶ 1; Def. Response to Pltfs. CSOF at 2 ¶ 1.  Plaintiff Safari is a member of HAI.  Pltfs. CSOF at 3 ¶ 2; Def. Response to Pltfs. CSOF at 2–3 ¶ 2.  Plaintiff HAI's members generally operate helicopters for their air tours and conduct these tours in conformity with certain federal regulations such as 14 C.F.R. Parts 135 and 136.  *See* Pltfs. CSOF at 3 ¶ 3, 4 ¶ 7; Def. Response to Pltfs. CSOF at 3 ¶ 3, 4 ¶ 7.

On July 12, 2022, former Governor David Y. Ige signed Act 311 (originally introduced as Senate Bill No. 3272) into law.  2022 Haw. Sess. Laws Act 311.[1] Act 311 amended Hawaii Revised Statutes ("HRS") § 261-12(b) to require

---

[1]  The Court notes that the version of the act that Plaintiffs submitted was not signed into law.  ECF No. 59-6 at 5–6.

Defendant to adopt rules requiring air tour operators to file certain reports and disclosures:

> (b) Tour aircraft operations.  Any other law to the contrary notwithstanding, no tour aircraft operation shall be permitted in any airport under the State's control without having a permit.  The director shall adopt rules to regulate tour aircraft operations by permit, which shall include but not be limited to:  . . .
>
> (8) Submission of monthly written reports to the department, which shall be made available to the public, of each tour operation that occurred during the duration of the preceding month, including:
>
>> (A) The date and time that the aircraft took off and landed;
>>
>> (B) The number of individuals aboard the aircraft during the operation;
>>
>> (C) The flight path from takeoff through landing; and
>>
>> (D) Whether the aircraft deviated from its intended flight plan[.]

2022 Haw. Sess. Laws Act 311, sec. 2.

The stated purpose of Act 311 is twofold:  "(1)  Require tour aircraft to file appropriate reports and disclosures so that the State can monitor compliance with federal regulations; and (2) Formally establish the air noise and safety task force." *Id.* at sec. 1.  The legislative history supports this purpose.  The Committee on Consumer Protection and Commerce cites to concerns regarding "excessive noise and safety hazards posed by tour helicopters and small aircrafts operating in the

4

State."  Pltfs. CSOF at 5 ¶ 14; Def. Response to Pltfs. CSOF at 5–6 ¶ 14.[2]  The Committee on Conference expressed concerns about "noise from low-flying air-crafts over residential areas" causing "health issues and negatively impact[ing] quality of life."  Pltfs. CSOF at 5 ¶ 15; Def. Response to Pltfs. CSOF at 6 ¶ 15.  The Committee on Transportation mentioned "increasing concern with safety risks and community disruption arising from tour helicopter and small aircraft operations in the State."  Pltfs. CSOF at 5–6 ¶ 16; Def. Response to Pltfs. CSOF at 7 ¶ 16.

To date, Defendant has not adopted any rules with respect to the new monthly reporting requirements.  Def. CSOF at 3 ¶ 3; Pltfs. Response to Def. CSOF at 3 ¶ 3.

II.    Procedural Background

The operative complaint is Plaintiffs' First Amended Complaint filed against the State of Hawaiʻi ("State"), the Hawaiʻi Department of Transportation ("DOT"), and Defendant (collectively, "Defendants").  ECF No. 20.  Plaintiffs argue that federal law preempts the new monthly reporting requirements for air tour operators mandated by HRS § 261-12(b)(8).  *Id.*  Specifically, the First Amended Complaint asserts that the reporting requirements are preempted under

---

[2]  The Court takes judicial notice of all legislative committee reports that Plaintiffs rely upon (ECF Nos. 59-7, 59-8, 59-9, 59-10, 59-11).  *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 945 n.2 (9th Cir. 2013) (citation omitted).

field preemption (Count I), conflict preemption (Count II), the Airline Deregulation Act of 1978 ("ADA") (Count III), and the Airport Noise and Capacity Act of 1990 ("ANCA") (Count IV).  *Id.* at 31–38.  Plaintiffs seek, among other things, a declaratory judgment holding that federal law preempts the monthly reporting requirements and a permanent injunction barring enforcement of the monthly reporting requirements.  *Id.* at 5 ¶ 13, 39–40.

On May 12, 2023, Defendants filed a Motion to Dismiss the First Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion to Dismiss").  ECF No. 21.  On October 17, 2023, the district court granted in part and denied in part the Motion to Dismiss.  ECF No. 30.  Among other things, the district court dismissed the claims against the State and DOT.  *Id.* at 8–11.  In addition, the district court found that Defendant was not entitled to sovereign immunity because Plaintiffs asserted viable claims under *Ex parte Young,* 209 U.S. 123 (1908).  *Id.* at 11–13.  Given the district court's ruling on the Motion to Dismiss, the remaining claims in this action are the preemption claims against Defendant.

On January 22, 2024, the district court approved the parties' consent to have the undersigned magistrate judge conduct all proceedings in this case.  ECF No. 45.  Trial is set for February 11, 2025.  ECF Nos. 46 at 1, 47 at 1.

In April 2024, the parties filed the Cross Motions for Summary Judgment. ECF Nos. 48, 58.

LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it could affect the outcome of the suit under the governing substantive law." *Miller v. Glenn Miller Prods., Inc*., 454 F.3d 975, 987 (9th Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)).

The moving party bears the initial burden of clearly establishing the lack of any triable issue of material fact by the record properly before the court, and supporting evidentiary material must be construed most favorably to the non-moving party. *Puletasi v. Wills*, CIVIL NO. 05-00291 HG-KSC, 2006 WL 8451351, at *3 (D. Haw. Nov. 21, 2016) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986)). Summary judgment must be entered if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (citing *Celotex*, 477 U.S. at 322).

When the parties have filed cross motions for summary judgment, "the standard does not change." *Hawaii Legal Short-Term Rental All. v. City & Cnty. of Honolulu*, Case No. 22-cv-00247-DKW-RT, 2023 WL 8850247, at *4 (D. Haw.

7

Dec. 21, 2023).  Rather, courts evaluate "each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences."  *Id.* (citing *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006)).

## DISCUSSION

The Cross Motions for Summary Judgment present two disputed issues: (1) whether Defendant is entitled to sovereign immunity, thus barring Plaintiffs' claims under the Eleventh Amendment; and (2) whether federal law preempts the monthly reporting requirements required for air tour operators under HRS § 261-12(b)(8).  The Court addresses sovereign immunity as a threshold issue and subsequently discusses the preemption claims.

## I.    Sovereign Immunity

Defendant argues that he is entitled to judgment as a matter of law based on sovereign immunity.  ECF No. 48-1 at 20–21.  Specifically, Defendant argues that "[a]side from making administrative rules, the Director has no other involvement with the challenged portion of Act 311" and, therefore, Defendant has sovereign immunity.  *Id.* at 20.  Plaintiffs argue that Defendant is not entitled to sovereign immunity because the district court has already determined that Plaintiffs assert viable claims against Defendant under *Ex parte Young*.  ECF No. 66-1 at 36–37 (citing ECF No. 30 at 11–13).  The Court agrees with Plaintiffs.

Defendant moves for summary judgment as to sovereign immunity on the same grounds that led to the district court's denial of the Motion to Dismiss.  "In general, '[t]he ruling on a motion to dismiss for failure to state a claim for relief is addressed solely to the sufficiency of the complaint and does not prevent summary judgment from subsequently being granted based on material outside the complaint.'"  *PDK Labs Inc. v. Ashcroft*, 338 F. Supp. 2d 1, 6–7 (D.D.C. 2004) (quoting 10A Wright, Miller & Kane, Federal Practice & Procedure:  Civil 3D § 2713 at 233 (2d. ed. 1998)) (footnote omitted).  "However, a summary judgment motion 'may not be made on the same grounds and with the same showing that led to the denial of a previous motion to dismiss.'"  *Id.* (some citations omitted) (citing *Mayer v. Distel Tool & Mach. Co.,* 556 F.2d 798 (6th Cir. 1977)).  If the same legal theory supports both motions, the disposition of the motion to dismiss may serve as the law of the case.  *Id.* (citing *In re Midwest Milk Monopolization Litig.,* 380 F. Supp. 880, 883 (W.D. Mo. 1974)); *see also Mansha Consulting LLC v. Alakai*, 2017 WL 3659163, at *5 (D. Haw. Aug. 23, 2017) ("Under the law of the case doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court . . . .'" (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)).

Given that Defendant does not provide any new factual or legal bases that persuade the Court to deviate from the district court's previous analysis, the district

court's rulings stand as the law of the case.  For the reasons previously discussed by the district court, the Court finds that as a matter of law, Defendant is not entitled to sovereign immunity.  ECF No. 30 at 11–13.  Accordingly, the Court denies Defendant's Motion as to Defendant's request for summary judgment on all remaining claims based on sovereign immunity.

II.     Preemption Claims

The parties move for summary judgment on the preemption claims. Plaintiffs contend that they are entitled to summary judgment because federal law preempts the monthly reporting requirements pursuant to field preemption (Count I), conflict preemption (Count II), the ADA (Count III), and the ANCA (Count IV).  *See generally* ECF Nos. 58, 66, 69.  Plaintiffs argue that preemption under any of these four bases would render the monthly reporting requirements invalid. ECF No. 58 at 2.  Defendant argues that he is entitled to summary judgment because the reporting requirements are not preempted under any theory.  *See generally* ECF Nos. 48, 62, 68.

"A fundamental principle of the Constitution is that Congress has the power to preempt state law."  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (some citations omitted) (citing U.S. Const., art. VI, cl. 2).  Congress' power to preempt state law derives from the Supremacy Clause of the United States Constitution.  *Kurns v. R.R. Friction Prod. Corp.*, 565 U.S. 625, 630 (2012)

10

(citation omitted).  "The Supremacy Clause provides that federal law 'shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.'"  *Id.* (quoting U.S. Const., art. VI, cl. 2).

Congress can preempt state law either expressly through a preemption provision or impliedly through field or conflict preemption.  *Id.* at 630–31. Regardless of the type of preemption involved, whether Congress intended to preempt state law is the "ultimate touchstone" of the preemption analysis. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (citations omitted). There is a general presumption that Congress did not intend to supplant state law. *Tillison v. Gregoire*, 424 F.3d 1093, 1098 (9th Cir. 2005) (citing *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654 (1995)).  Because the federal interest is dominant in the field of aviation, however, courts more readily infer preemption in this context.  *Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 724 (9th Cir. 2016) (citations omitted).

A.     Field Preemption—Count I

Plaintiffs argue that the Federal Aviation Act preempts the monthly reporting requirements pursuant to the doctrine of field preemption.  ECF No. 58-1 at 14–20; ECF No. 66-1 at 18–23; ECF No. 69 at 8–10.  Under field preemption, "the States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive

governance." *Arizona v. United States*, 567 U.S. 387, 399 (2012) (citation omitted).  Congress' intent to displace state law can be "inferred from a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it' or where there is a 'federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'"  *Id.* (citations omitted).

"The essential field preemption inquiry is whether the density and detail of federal regulation merits the inference that any state regulation within the same field will necessarily interfere with the federal regulatory scheme."  *Nat'l Fed'n of the Blind*, 813 F.3d at 734.  The first step in determining whether field preemption exists is to determine the "pertinent regulatory field."  *Id.*  The second step is to "survey the scope of the federal regulation within that field."  *Id.*

With respect to the first step, the parties dispute the pertinent regulatory field for the reporting requirements.  Plaintiffs argue that the pertinent regulatory field is aviation safety and efficiency, which federal law preempts.  ECF No. 58-1 at 14; ECF No. 66-1 at 18; ECF No. 69 at 8.  Defendant argues that the reporting requirement is an acceptable condition of permit renewal and state-imposed permit requirements are not preempted by federal law.  ECF No. 62 at 5.  Defendant thus appears to argue that the relevant field is state-imposed permit requirements, which federal law does not preempt.  *See id.*

The Court agrees with Plaintiffs that the pertinent regulatory field is aviation safety and efficiency.  Based on the legislative history and express language in Act 311, Act 311 aimed to address the excessive noise and safety concerns from low-flying aircrafts over residential areas and national parks in Hawaii.  2022 Haw. Sess. Laws Act 311; Pltfs. CSOF at 5–6 ¶¶ 14–16; Def. Response to Pltfs. CSOF at 5–7 ¶ 14–16.  The Hawaii Legislature sought to impose reporting requirements so that the State could monitor compliance with federal regulations, given the apparent lack of action taken by the federal government to address these concerns. Pltfs. CSOF at 4–6 ¶¶ 12–18; Def. Response to Pltfs. CSOF at 5–8 ¶ 12–18; ECF No. 59-13; ECF No. 59-1 at 4–5 ¶ 9.  Placing the reporting requirement in the statutory section on air tour permitting does not change the relevant field.

With respect to the second step, the scope of federal regulation within the field of aviation safety and efficiency is pervasive and fully occupied by federal law.  The Ninth Circuit has held that "federal law occupies the entire field of aviation safety."  *Montalvo v. Spirit Airlines*, 508 F.3d 464, 473 (9th Cir. 2007). *Accord Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1138 (9th Cir. 2021) ("[O]ur case law makes clear that field preemption generally applies to state regulations specifically in the field of aviation safety." (emphasis omitted)).  The Ninth Circuit has explained that "Congress' intent to displace state law is implicit in the pervasiveness of the federal regulations, the dominance of the federal interest in

13

this area, and the legislative goal of establishing a single, uniform system of control over air safety." *Montalvo*, 508 F.3d at 473.

Specifically, "Congress intended to invest the Administrator of the Federal Aviation Administration [("FAA")] with the authority to enact exclusive air safety standards. . . . [T]he Administrator has chosen to exercise this authority by issuing such pervasive regulations that we can infer a preemptive intent to displace all state law on the subject of air safety." *Id.* at 472 (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153 (1982)).  These regulations include Title 14 of the Code of Federal Regulations, Parts 91, 135, and 136, which largely control air tour operations in Hawaii.  *See id.*

Section 364 of the FAA Reauthorization Act of 2024 ("Section 364"), recently enacted on May 16, 2024, further confirms the federal government's exclusive authority over aviation safety.  Pub. L. No. 118-63 (2024), sec. 364. Among other things, Section 364 allows a Hawaii noise and safety task force to make recommendations to the FAA.  *Id.* at sec. 364(b).  Section 364 also reserves to the FAA the exclusive responsibility to thereafter issue an intent to proceed with proposed rulemaking or take other action sufficient to carry out feasible, consensus recommendations.  *Id.*  The FAA did not delegate this power to the State.

Defendant asserts that the reporting requirements are not preempted because the collection of data in the monthly reports is essential to properly inform the

FAA in its rulemaking process.  ECF No. 68 at 4–5.  The record does not

substantiate this position.  Defendant does not offer any evidence showing that the

federal government is expecting or even requesting this information.  Without this

information, it is unclear whether or how this information fits within the pervasive

regulatory scheme regarding aviation safety.  The Court notes, however, that if

Defendant's assertion is correct, then the federal government can request this

information accordingly through new legislation or regulations.  Given that federal

law occupies the province of aviation safety, the State cannot enact laws relating to

this field, even if it is rooted in good intention to monitor federal compliance or

compliment federal law.  *See Arizona*, 567 U.S. at 401 (citation omitted) ("Where

Congress occupies an entire field, . . . even complementary state regulation is

impermissible.  Field preemption reflects a congressional decision to foreclose any

state regulation in the area, even if it is parallel to federal standards.").

Because Congress intended that federal law entirely occupy the field of

aviation safety and efficiency, the Court finds that federal law preempts the

reporting requirements in HRS § 261-12(b)(8) based on field preemption.  The

Court thus grants Plaintiffs' Amended Motion as to Count I and denies

Defendant's Motion as to Count I.

B.      Conflict Preemption—Count II

State law is preempted when it conflicts with a federal statute. *Hillman v. Maretta*, 569 U.S. 483, 490 (2013) (citations omitted). "Such a conflict occurs when compliance with both federal and state regulations is impossible, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citations and internal quotation marks omitted). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby*, 530 U.S. at 373 (citations omitted).[3]

Plaintiffs argue that the monthly reporting requirements are an obstacle to Congress' intent to regulate the safety and operations of air tours in Hawaii and to allow all aeronautical activities reasonable access to airports. ECF No. 58-1 at 21–27; ECF No. 66-1 at 23–29. This case thus raises a question of whether HRS § 261-12(b)(8) stands as an obstacle to the accomplishment and full execution of the purposes and objectives of Congress. To answer this question, the Court "must

---

[3] The Supreme Court has noted that field preemption may be understood as a species of conflict preemption because "purpose-conflict pre-emption*,* which occurs when state law is held to undermine a congressional decision in favor of national uniformity of standards, presents a situation similar in practical effect to that of federal occupation of a field." *Gade v. Nat'l Solid Wastes Mgmg. Ass'n,* 505 U.S. 88, 115–16 (1992) (Souter, J., dissenting) (citing L. Tribe, American Constitutional Law 486 (2d ed. 1988) (brackets and internal quotation marks omitted).

first ascertain the nature of the federal interest" to determine whether the state law impedes congressional purposes and objectives. *Hillman*, 569 U.S. at 491 (citation omitted).

As previously explained, Congress intended federal law to occupy the field of aviation safety. *See Montalvo*, 508 F.3d at 473. The FAA Administrator "must balance considerations of safety, efficiency, technological progress, common defense and environmental protection in the process of formulating rules and regulations with respect to the use of the nation's airspace." *Lockheed Air Terminal, Inc. v. City of Burbank*, 457 F.2d 667, 672 (9th Cir. 1972), *aff'd*, 411 U.S. 624 (1973). "Congress has vested the [FAA] with the responsibility and concomitant authority to resolve the proper balance among the multiple purposes." *Id.* This is because state and local governments "might conceivably be overprotective of one of the multiple values and upset the delicate balance struck by the FAA under the aegis of federal law." *Id.*

This is precisely the case with Act 311. In passing this legislation, the Hawaii legislature appears to be overprotective—understandably so—of the safety of Hawaii residents with respect to the impact of low-flying aircrafts over residential areas and treasured national parks. The Hawaii legislature's efforts, however, have resulted in burdensome and harmful reporting requirements on Plaintiff HAI's members that clearly upset the delicate balance of interests struck

by the FAA.  Pltfs. CSOF at 8 ¶ 25; Def. Response to Pltfs. CSOF at 10–11 ¶ 25.

For this reason, the monthly reporting requirements frustrate Congress' deliberate

purpose to exclusively regulate aviation safety and efficiency in a uniform fashion.

*Montalvo* 508 F.3d at 473.  The reporting requirements, therefore, sufficiently

burden a federal area of regulation and are preempted.  *See Gobeille v. Liberty*

*Mut. Ins. Co.*, 577 U.S. 312, 323 (2016) (preemption of a state reporting

requirement for employee benefit plans "is necessary to prevent the States from

imposing novel, inconsistent, and burdensome reporting requirements on plans");

*United States v. Locke*, 529 U.S. 89, 116 (2000) (citation omitted) ("Congress did

not intend its reporting obligations to be cumulative to those enacted by each

political subdivision whose jurisdiction a vessel enters.  The State's reporting

requirement is a significant burden in terms of cost and the risk of innocent

noncompliance.").

    The Court thus finds that federal law preempts the reporting requirements in

HRS § 261-12(b)(8) based on conflict preemption.  Accordingly, the Court grants

Plaintiffs' Amended Motion as to Count II and denies Defendant's Motion as to

Count II.

    C.    Preemption Pursuant to the ADA—Count III

    Plaintiffs argue that the reporting requirements are preempted pursuant to

the ADA.  In 1978, Congress enacted the ADA, which amended the Federal

18

Aviation Act.  *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (citations omitted).  "To ensure that the States would not undo federal deregulation with regulation of their own," the ADA expressly prohibits states from enforcing any law "related to a price, route, or service" of any air carrier.  *Id.* at 378–79 (citation omitted); 49 U.S.C. § 41713(b)(1).

In considering the scope of the preemption provision, the Supreme Court explained that "the key phrase" is "relating to," which has a broad definition and "the words thus express a broad pre-emptive purpose."  *Morales*, 504 U.S. at 383 ("The ordinary meaning of these words is a broad one—'to stand in some relation; have bearing or concern; to pertain; refer, to bring into association with or connection with.'").  The Supreme Court further explained that preemption may occur even if the law is not specifically designed to affect federal law or if "the effect is only indirect."  *Id.* at 386 (citations omitted).

The Court finds that the monthly reporting requirements relate to, at the very least, routes and services.  Plaintiffs contend, and Defendant does not dispute, that Plaintiffs are air carriers for purposes of enforcing the ADA.  ECF No. 58-1 at 28–29.  With respect to routes, neither Congress nor the Ninth Circuit has defined the term "route" in the context of the ADA.  The Court thus looks to the "ordinary, contemporary, common meaning" of the term.  *Hum. Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1021 (9th Cir. 2010) (citations omitted).  The term

"route" is defined as "a traveled way," "a means of access," "a line of travel," "an established or selected course of travel or action" or "an assigned territory to be systematically covered." *Route*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/route (last accessed on July 22, 2024).

The monthly reporting requirements do not command any specific air carrier as to its routes and do not prohibit air carriers from deviating from their specific flight plans. HRS § 261-12(b)(8), however, explicitly requires that air tour operators report information regarding the flight path from takeoff through landing and any deviations from the intended flight plan. This requested information clearly relates to, at the very least, an aircraft's "traveled way," "line of travel," and "established or selected course of travel or action." *Id.* Based on the requested information, the plain meaning of "route," and the broad definition of "related to," the reporting requirements clearly relate to the routes of air carriers.

With respect to "services," the Ninth Circuit has adopted a relatively narrow definition of the term for purposes of ADA preemption, as the "prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail." *Ventress v. Japan Airlines*, 603 F.3d 676, 682 (9th Cir. 2010) (citing *Charas v. Trans World Airlines, Inc.,* 160 F.3d 1259, 1261 (9th Cir. 1998) (en banc); *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 336 (5th Cir. 1995) (adopting a

broader definition of "service," including "items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself")).  The requested information of the specific date and time of the take off and landing, the number of individuals aboard the aircraft, the intended flight plan, and any deviations thereto clearly falls within the categories of "schedules" and "origins and destinations of the point-to-point transportation of passengers" under the definition of "services."  Thus, preemption is clear.

Defendant's arguments do not change the analysis.  First, Defendant argues that the proprietary powers exception to the ADA preemption applies.  Under the proprietary powers exception, "Congress reserved a limited role for local airport proprietors in regulating noise levels at their airports."  *City & Cnty. of S.F. v. FAA*, 942 F.2d 1391, 1394 (9th Cir. 1991) (citations omitted).  Local airport proprietors are "vested only with the power to promulgate reasonable, nonarbitrary and non-discriminatory regulations that establish acceptable noise levels for the airport and its immediate environs."  *Id.* (citing *British Airways v. Port Auth. of New York (Concorde I),* 558 F.2d 75, 84 (2d Cir. 1977)).

The monthly reporting requirements do not fall within the ambit of the State's proprietary rights because the requirements are not narrowly restricted to controlling noise, let alone anything else, at airports and their immediate environs. Rather, HRS § 261-12(b)(8) requires the submission of monthly reports for all

tours from State-controlled airports regardless of whether the tour stays within the immediate environs of the airport.  The reporting requirements are, therefore, not restricted to regulating noise at airports and their immediate vicinity.  *City & Cnty. of S.F.*, 942 F.2d at 1394.  The reporting requirements thus cannot be a valid exercise of the State's proprietary rights.

Second, Defendant argues that the reporting requirements do not relate to routes because they are an expansion of statutory requirements "to provide a sectional aeronautical chart indicating routes and identify noise abatement procedures and the regulatory requirements to report revenue landings."  ECF No. 62 at 8; *see also* Haw. Rev. Stat. § 261-12(b).  This point does not change the Court's analysis either because, as Plaintiffs point out, Defendant fails to identify any such exception to preemption.  ECF No. 69 at 23.  The Court is also not aware of any such exception.

In addition, Defendant argues that the permit requirements "have been in place for many years, and have never been challenged."  ECF No. 62 at 7.  Even if the reporting requirements expanded on existing statutory requirements that have gone unchallenged, this does not prevent the Court from ascertaining whether preemption applies under the current circumstances.

Because the monthly reporting requirements relate to routes and services of air carriers, the Court finds that the ADA preempts the monthly reporting

requirements in HRS § 261-12(b)(8).  The Court thus grants Plaintiffs' Amended

Motion as to Count III and denies Defendant's Motion as to Count III.

       D.      Preemption Under the ANCA—Count IV

       Plaintiffs argue that the ANCA preempts the monthly reporting requirements

for failure to comply with the certain federal procedural requirements.  ECF No.

58-1 at 33–35; ECF No. 66-1 at 33–36; ECF No. 69 at 16–19.  The Court agrees.

       In 1990, Congress passed the ANCA.  *See* Airport Noise & Capacity Act of

1990, Pub. L. No. 101-508, 104 Stat. 1388-378 (1990) (current version at 49

U.S.C. §§ 47521–47534).  "Congress promulgated [the] ANCA based on findings

that 'community noise concerns have led to uncoordinated and inconsistent

restrictions on aviation that could impede the national air transportation system'

and, therefore, 'noise policy *must* be carried out at the national level.'"  *Friends of*

*the E. Hampton Airport, Inc. v. Town of E. Hampton* ("*Friends*"), 841 F.3d 133,

150 (2d Cir. 2016) (citing 49 U.S.C. § 47521(2)–(3)).  In response, the FAA

promulgated 14 C.F.R. part 161, which together with the ANCA dictates how

airport proprietors may impose aircraft noise and access restrictions on Stage 2 and

Stage 3 aircrafts after October 1, 1990.  *See* 49 U.S.C. § 47524; 14 C.F.R. § 161.1;

*see also Friends*, 841 F.3d at 151–52 ("[T]he plain statutory text is fairly read to

mandate the identified procedural requirements for local noise and access

restrictions on Stage 2 and 3 aircraft at *any* public airport." (citation omitted)).

"Since the enactment of [the] ANCA, courts have found that any attempt by an airport proprietor to impose a noise and access restriction on Stage 2 or 3 aircraft without strictly following the procedural requirements of [the] ANCA is preempted by federal law." *Kramer v. HTX Helicopters, LLC*, No. WC-2018-0491, 2023 WL 4053898, at *11 (R.I. Super. June 12, 2023) (citing, *inter alia*, *Friends*, 841 F.3d at 151–52, for its holding that a noise restriction was preempted for failure to comply with the ANCA).

At the hearings on the Cross Motions for Summary Judgment, Defendant's counsel confirmed that the airport proprietor (the State) did not comply with the procedural requirements set forth in 14 C.F.R. part 161 before enacting HRS § 261-12(b)(8).  Based on this noncompliance, the Court finds that the ANCA preempts the monthly reporting requirements in HRS § 261-12(b)(8).  The Court thus grants Plaintiffs' Amended Motion as to Count IV and denies Defendant's Motion as to Count IV.

E.      Permanent Injunction

In addition to declaratory relief, Plaintiffs seeks a permanent injunction barring enforcement of the monthly reporting requirements set forth in HRS § 261-12(b)(8).  ECF No. 20 at 5 ¶ 13, 40.  In Plaintiffs' Amended Motion, Plaintiffs argue that a permanent injunction is an appropriate remedy.  ECF No. 58-1 at 35–37.  A party seeking a permanent injunction must establish:  (1) actual

success on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 32 (2008).

Defendant does not respond, and therefore concedes, to Plaintiffs' argument that a permanent injunction is an appropriate remedy. *Yonemoto v. McDonald*, Civil No. 11-00533 JMS/RLP, 2015 WL 1863033, at *7 (D. Haw. Apr. 22, 2015) (citing cases for the proposition that a party's failure to raise an issue in opposition to a motion for summary judgment operates as a waiver of that issue). The Court thus finds that a permanent injunction barring enforcement of the monthly reporting requirements is an appropriate remedy under the circumstances.

## CONCLUSION

Based on the foregoing, the Court GRANTS Plaintiffs' Amended Motion for Summary Judgment (ECF No. 58) and DENIES Defendant's Motion for Summary Judgment (ECF No. 48). The Court finds that federal law preempts the monthly reporting requirements in HRS § 261-12(b)(8). The Court also GRANTS Plaintiffs' request for a permanent injunction. Defendant is hereby ENJOINED from enforcing the monthly reporting requirements set forth in HRS § 261-12(b)(8). The permanent injunction shall take effect upon entry of this Order and shall remain in full force and effect unless otherwise ordered.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 22, 2024.



Kenneth J. Mansfield
United States Magistrate Judge

*Helicopter Ass'n Int'l, et al. v. State of Hawai'i, et al.*, Civil No. 23-00083 KJM; Order:  (1) Granting Plaintiffs Helicopter Association International and Safari Aviation, Inc. d/b/a Safari Helicopters Hawai'i's Amended Motion for Summary Judgment; and (2) Denying Defendant Edwin Sniffen's Motion for Summary Judgment